IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **APPLIED BIOKINETICS LLC** § | | |
| § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Civil Action No. | |
| § | | |
| **KT HEALTH, LLC,** § | JURY DEMANDED | |
| § | | |
| *Defendant.* § | | |
| § | | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Applied Biokinetics LLC ("ABK" or "Plaintiff") files this Complaint for patent infringement against KT Health, LLC ("KT" or "Defendant"), and states, all upon information and belief, as follows:

### THE PARTIES

1. Plaintiff ABK is a Texas limited liability company with a place of business in Spring, Texas.

2. KT is a limited liability company organized and existing under the laws of the State of Delaware, having a place of business at 584 E 1100 S., Suite 4, American Fork, Utah 84003.

3. KT may be served through its registered agent for service of process, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. §§1331 and 1338(a).

5. This Court has personal jurisdiction over KT because KT is a Delaware limited liability company.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b) because KT is a Delaware limited liability company.

## FACTUAL BACKGROUND

7. ABK was founded in 2008 by Donald P. Bushby, an engineer and prolific inventor who has invented and validated several innovative technology solutions.

8. In the early 2000's, Mr. Bushby had learned about the activity of "roller-skiing," a sport like rollerblading utilizing two inline wheels supporting an elongated ski-like structure. To slow down, users of the devices needed to squat down and pull upward on handles attached to cables. Mr. Bushby developed an improved braking approach that simulated a "snowplow" effect by rotating the binding to translate into a braking force, while the skis remained parallel. While developing and testing his invention, Mr. Bushby developed a muscular injury that persisted for weeks, and led to excruciating pain. In discussing his injury with his doctor, Mr. Bushby learned that he had a micro-tear in the fascia of his injured muscle resulting in inflammation and pain, the standard treatment for which was to receive cortisone injections. Mr. Bushby refused the injections, believing that such treatment was painful, expensive, and did not properly address the root issue involving the damaged fascia. Mr. Bushby went on to perform research at his local library to learn more about the body, biomechanics, stress, and the tough connective tissue known as fascia. He concluded that there was a need for a system to: treat pain, provide direct anatomical

support, and protect fascia from damaging stress, thus allowing tissue healing and rapid pain recover that was inexpensive, fast acting and easy to apply at home. This led Mr. Bushby to develop a novel system which included pre-cut parts with an adhesive layer and removable cover layer for ease of handling and self-application. The system includes a single woven support layer with high strength and low elongation in at least one direction, such that when it is applied to the body part it can provide support and reduce stress on the underlying fascia.

9. Mr. Bushby founded Applied BioKinetics to develop and commercialize his ideas.

10. ABK is an inventor-controlled entity.

11. ABK is a practicing entity that has commercialized its intellectual property through licensing and also through the development and sale of products. For example, ABK developed the FasciaDerm line of products as show here:



### ACCUSED PRODUCTS AND METHODS

12. The products and methods accused of infringement include those for treatment of fascia injury.

13. The products accused of infringement in this case include:

- KT Tape (original)
- KT Tape Gentle
- KT Tape Pro
- KT Tape Pro Extreme.

These four products are collectively referred to as "KT Tape."

14. The KT Tape products are marketed in different forms, such as in different widths, in different colors, with different graphics and themes (e.g., golf, U.S.A., Folds of Honor, etc.), in different packaging, and in different quantities. Hence the particular modes or configurations of the KT Tapes referenced below and in the attached Exhibits 6-25 are merely exemplary of the total universe of products made, used, offered for sale, sold or imported by KT which are within the scope of the asserted product claims identified below, and thus are referred to as "Exemplary Products."

15. The methods referenced below and in the attached Exhibits 6-21 are similarly exemplary of all the methods practiced by KT and KT's customers and other end-users, and, thus, are referred to as "Exemplary Methods."

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,414,511

16. ABK incorporates by reference the paragraphs above as if fully set forth herein.

17. On April 9, 2013, United States Patent No. 8,414,511 (the '511 Patent") entitled "System for Treatment of Plantar Fasciitis" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '511 Patent is attached as Exhibit 1.

18. The '511 Patent is valid and enforceable.

19. ABK advised KT of the '511 Patent and gave notice of infringement of the '511 Patent by letter of June 10, 2021.

20. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least product claims 1 - 4, 26, 31 - 34, and 36 of the '511 Patent in violation of 35 U.S.C. § 271(a) because KT makes, uses, offers for sale, sells, and/or imports at least the Exemplary Products as demonstrated in Exhibits 6-9.

21. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least method claims 20 - 21, 23 and 24 of the '511 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 6-9.

22. Direct infringement is demonstrated in Exhibits 6-9.

23. Further, since at least the date KT received ABK's June 10, 2021 letter, KT has indirectly infringed and continues to indirectly infringe the '511 Patent in violation of 35 U.S.C. § 271(b).  KT has actively induced product makers, distributors, retailers, customers and other end users of the Exemplary Products to directly infringe the '511 Patent throughout the United States by, among other things, inducing the third-parties to use the infringing products and practice the infringing methods, by advertising and promoting the use of the Exemplary Products and Exemplary Methods in various websites, including providing and disseminating product descriptions, product packaging, product instructions enclosed with the Exemplary Products, and other instructions on how to configure and/or use the Exemplary Products.  KT did so and does so knowing and intending that the third parties will commit these infringing acts, including infringement of claims 1 - 6, 12 - 21, 23, 24, 26 - 34 and 36 of the '511 Patent.  KT also continues to make, use, offer for sale, sell, and/or import the Exemplary Products, despite its knowledge of

the '511 Patent, thereby specifically intending for and inducing its third parties to infringe the '511 Patent through the customers' normal and customary use of the Exemplary Products.

24. In addition, since at least the date KT received ABK's June 10, 2021 letter, KT has indirectly infringed and continues to indirectly infringe the '511 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Exemplary Products with knowledge that they are especially designed or adapted to operate in a manner that infringes the '511 Patent and are not a staple article of commerce suitable for substantial non-infringing use.  In addition, the Exemplary Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '511 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use.  KT is aware that the Exemplary Products enable end-users to configure and/or use the product to infringe the '511 Patent, including claims 1 - 6, 12 - 21, 23, 24, 26 - 34, and 36.  In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the Exemplary Products teach that the Exemplary Products are especially made or especially adapted for use in an infringement of the '511 Patent.  KT continues to sell and offer to sell these products in the United States after receiving notice of the '511 Patent and how the products' use and/or configuration infringe that patent.  In addition, the infringing aspects of the Exemplary Products can be used only in a manner that infringes the '511 Patent and thus have no substantial non-infringing uses.

25. ABK has suffered damages as a result of KT's direct and indirect infringement of the '511 Patent.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,814,818

26. ABK incorporates by reference the paragraphs above as if fully set forth herein.

27. On August 26, 2014, United States Patent No. 8,814,818 (the '818 Patent") entitled "Disposable Two-Part Orthotic Foot Support, Strap System and Method" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '818 Patent is attached as Exhibit 2.

28. The '818 Patent is valid and enforceable.

29. ABK advised KT of the '818 Patent and gave notice of infringement by letter of June 10, 2021.

30. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least product claim 15 of the '818 Patent in violation of 35 U.S.C. § 271(a) because KT makes, uses, offers for sale, sells, and/or imports at least the Exemplary Products as demonstrated in Exhibits 10-13.

31. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least method claims 19 and 20 the '818 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 10-13.

32. Direct infringement is demonstrated in Exhibits 10-13.

33. Further, since at least the date KT received ABK's June 10, 2021 letter, KT has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. § 271(b). KT has actively induced product makers, distributors, retailers, customers and other end users of the Exemplary Products to directly infringe the '818 Patent throughout the United States

by, among other things, inducing third-parties to use the infringing products and practice the infringing methods, by advertising and promoting the use of the Exemplary Products and Exemplary Methods in various websites, including providing and disseminating product descriptions, product packaging, product instructions enclosed with the Exemplary Products, and other instructions on how to configure and/or use the Exemplary Products. KT did so and does so knowing and intending that such third-parties will commit these infringing acts, including infringement of claims 15, 19, and 20 of the '818 Patent. KT also continues to make, use, offer for sale, sell, and/or import the Exemplary Products, despite its knowledge of the '818 Patent, thereby specifically intending for and inducing its customers to infringe the '818 Patent through the customers' normal and customary use of the Exemplary Products.

34. In addition, KT has indirectly infringed and continues to indirectly infringe the '818 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Exemplary Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the Exemplary Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '818 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use. KT is aware that the Exemplary Products enable end-users to configure and/or use the product to infringe the '818 Patent, including claims 15, 19, and 20. In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the Exemplary Products teach that the Exemplary Products

are especially made or especially adapted for use in an infringement of the '818 Patent. KT continues to sell and offer to sell these products in the United States after receiving notice of the '818 Patent and how the products' use and/or configuration infringe that patent. In addition, the infringing aspects of the Exemplary Products can be used only in a manner that infringes the '818 Patent and thus have no substantial non-infringing uses.

35. ABK has suffered damages as a result of KT's direct and indirect infringement of the '818 Patent.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,834,398

36. ABK incorporates by reference the paragraphs above as if fully set forth herein.

37. On September 16, 2014, United States Patent No. 8,834,398 (the '398 Patent") entitled "System for Treatment of Plantar Fasciitis" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '398 patent is attached as Exhibit 3.

38. The '398 Patent is valid and enforceable.

39. ABK advised KT of the '398 Patent and gave notice of infringement by letter of June 10, 2021.

40. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least method claims 1, 2, 5, 6, 13-17 and 19 of the '398 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 14-17.

41. Direct infringement is demonstrated in Exhibits 14-17.

42. Since at least the date KT received ABK's June 10, 2021 letter, KT has indirectly infringed and continues to indirectly infringe the method claims of the '398 Patent in violation of 35 U.S.C. § 271(b), by actively inducing product makers, distributors, retailers, customers and other end users of the Exemplary Products to directly infringe the '398 Patent throughout the United States by, among other things, inducing the said third parties to practice the Exemplary Methods. The inducement includes advertising and promoting the Exemplary Methods in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to use the Exemplary Products in a manner that infringes the method claims of the '398 Patent. KT does so knowing and intending that the third parties will commit these infringing acts, including infringement of method claims 1, 2, 5, 6, 13-17, and 19 of the '398 Patent. KT also continues to make, use, offer for sale, sell, and/or import the Exemplary Products, despite its knowledge of the '398 Patent, thereby specifically intending for and inducing its customers and other third-parties to infringe the '398 Patent through the customers' normal and customary use of the Exemplary Products which results in the practice of the infringing Exemplary Methods.

43. KT has induced its customers or clients to perform all steps of the asserted claims of the '398 Patent.

44. In addition, KT has indirectly infringed and continues to indirectly infringe the '398 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Exemplary Products with knowledge that they are especially designed or adapted to operate in a manner that infringes the '398 Patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use. In addition, the Exemplary Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed

instructions is an apparatus for use in practicing the invention of the '398 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use.  KT is aware that the Exemplary Products enable end-users to configure and/or use the product to infringe the '398 Patent, including claims 1, 2, 5, 6, 13-17, and 19.  In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the Exemplary Products teach that the Exemplary Products are especially made or especially adapted for use in an infringement of the '398 Patent.  KT continues to sell and offer to sell these products in the United States after receiving notice of the '398 Patent and how the products' use and/or configuration infringe that patent.  In addition, the infringing aspects of the Exemplary Products can be used only in a manner that infringes the '398 Patent and thus have no substantial non-infringing uses.

45.     ABK has suffered damages as a result of KT's direct and indirect infringement of the '398 Patent.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 8,968,229

46.     ABK incorporates by reference the paragraphs above as if fully set forth herein.

47.     On March 3, 2015, United States Patent No. 8,968,229 (the '229 Patent") entitled "Disposable Two-Part Orthotic Foot Support Strap System and Method" was duly and legally issued after full and fair examination.  ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income.  A true copy of the '229 Patent is attached as Exhibit 4.

48.     The '229 Patent is valid and enforceable.

49. ABK advised KT of the '229 Patent and gave notice of infringement by letter of June 10, 2021.

50. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least method claims 12, 13, and 16 - 18 of the '229 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 18-21.

51. Direct infringement is demonstrated in Exhibits 18-21.

52. Since at least the date KT received ABK's June 10, 2021 letter, KT has indirectly infringed and continues to indirectly infringe the method claims of the '229 Patent in violation of 35 U.S.C. § 271(b), by actively inducing product makers, distributors, retailers, customers and other end users of the Exemplary Products to directly infringe the '229 Patent throughout the United States by, among other things, inducing the said third parties to practice the Exemplary Methods.  The inducement includes advertising and promoting the Exemplary Methods in various websites, including providing and disseminating product descriptions, product packaging, enclosed product instructions, and other instructions on how to use the Exemplary Products in a manner that infringes method claims 12, 13, and 16 - 18 of the '229 Patent.  KT does so knowing and intending that the third parties will commit these infringing acts, including infringement of method claims 12, 13, and 16 - 18 of the '229 Patent.  KT also continues to make, use, offer for sale, sell, and/or import the Exemplary Products, despite its knowledge of the '229 Patent, thereby specifically intending for and inducing its customers and other third-parties to infringe the '229 Patent through the customers' normal and customary use of the Exemplary Products which results in the practice of the infringing Exemplary Methods.

53. KT's inducement includes all steps of one or more of the claims of the '229 Patent, including at least claim 12.

54. In addition, KT has indirectly infringed and continues to indirectly infringe the '229 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Exemplary Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.  In addition, the Exemplary Products include instructions, both on the product packaging and separately included inside of the product packaging, wherein each of the printed instructions is an apparatus for use in practicing the invention of the '229 Patent, and wherein such instructions are a material part of the invention, and wherein such instructions are especially made or especially adapted for use in an infringement, are not a staple article or commodity of commerce, and are not suitable for substantial noninfringing use.  KT is aware that the Exemplary Products enable end-users to use the Products to infringe the '229 Patent, including practicing the method of claims 12, 13, and 16 - 18.  In particular, the product descriptions, product packaging, enclosed product instructions, and other instructions for the Exemplary Products teach that the Exemplary Products are especially made or especially adapted for use in an infringement of the '229 Patent. KT continues to sell and offer to sell these products in the United States after receiving notice of the '229 Patent and how the products' use and/or configuration infringe that patent.  In addition, the infringing aspects of the Exemplary Products can be used only in a manner that infringes the '229 Patent and thus have no substantial non-infringing uses.

55. ABK has suffered damages as a result of KT's direct and indirect infringement of the '229 Patent.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 10,212,987

56. ABK incorporates by reference the paragraphs above as if fully set forth herein.

57. On February 26, 2019, United States Patent No. 10,212,987 (the '987 patent") entitled "Method of Manufacturing an Anatomical Support System" was duly and legally issued after full and fair examination. ABK is the owner of all right, title, and interest in and to the patent by assignment, with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income. A true copy of the '987 patent is attached as Exhibit 5.

58. The '987 patent is valid and enforceable.

59. ABK advised KT of the '987 Patent and gave notice of infringement by letter of June 10, 2021.

60. KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least method claims 18, 19 and 22 - 31 of the '987 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 22-25.

61. Direct infringement is demonstrated in Exhibits 22-25.

62. Further, KT has infringed claims 18, 19 and 22 - 31 of the '987 Patent under 35 U.S.C. § 271(g) by importing into the United States or offering to sell, selling, or using within the United States the Exemplary Products which were made by the methods of claims 18, 19 and 22 - 31 of the '987 Patent during the term of the '987 Patent. The products made by or for KT according to claims 18, 19 and 22 - 31 of the '987 Patent have not been materially changed by any subsequent processes; or become a trivial and nonessential component of another product.

63. ABK has suffered damages as a result of KT's direct and indirect infringement of the '987 Patent.

## KNOWLEDGE, WILLFULNESS, AND MARKING

64. ABK incorporates by reference the paragraphs above as if fully set forth herein.

65. The patents identified above are collectively known as the Asserted Patents.

66. To the extent any marking or notice was required by 35 U.S.C. § 287, ABK has complied with the applicable marking and/or notice requirements of 35 U.S.C. § 287.

67. KT's infringement has been and continues to be willful and deliberate. Upon information and belief, KT deliberately infringed the Asserted Patents and acted recklessly and in disregard to the Asserted Patents by making, having made, using, importing, and offering for sale products that infringe the Asserted Patents. Upon information and belief, the risks of infringement were known to KT and/or were so obvious under the circumstances that the infringement risks should have been known. Upon information and belief, KT has no reasonable non-infringement theories. Upon information and belief, KT has not attempted any design/sourcing change to avoid infringement. KT has acted despite an objectively high likelihood that its actions constituted infringement of the Asserted Patents. In addition, this objectively-defined risk was known or should have been known to KT. Upon information and belief, KT has willfully infringed and/or continues to willfully infringe the Asserted Patents. KT's actions of being made aware of its infringement, not developing any non-infringement theories, not attempting any design/sourcing change, and not ceasing its infringement constitute egregious behavior beyond typical infringement.

WHEREFORE, Plaintiff Applied Biokinetics LLC prays for judgment that:

1. A judgment that KT has infringed and continues to infringe, one or more claims of the Asserted Patents;

2. A judgment for an accounting of all damages sustained by ABK as a result of the acts of infringement by KT;

3. A permanent injunction against KT, its subsidiaries, or anyone acting on their behalf from making, using, selling, offering to sell, or importing any products that infringe the Asserted Patents, and any other injunctive relief the Court deems just and equitable;

4. A judgment and order requiring KT to pay ABK damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

5. A judgment and order requiring KT to pay ABK pre-judgment and post-judgment interest on the damages awarded;

6. A judgment and order finding this to be an exceptional case and requiring KT to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

7. Such other and further relied as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented in this Complaint.

Dated: May 13, 2022  Respectfully submitted,

/s/ George Pazuniak
George Pazuniak (DE Bar 478)
O'KELLY & O'ROURKE, LLC
824 N Market St, Ste 1001A
Wilmington, DE 19801
Direct: (207) 359-8576
gp@del-iplaw.com

***Attorneys for Plaintiff,
Applied Biokinetics LLC***