**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLIED BIOKINETICS LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>KT HEALTH, LLC<br><br>            Defendant. | C.A. No. 22-0638-RGA<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT KT HEALTH, LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF APPLIED BIOKINETICS LLC'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant KT Health, LLC ("KT Health" or "KT"), by and through its undersigned counsel, hereby submits its Answer, Affirmative Defenses, and Counterclaims ("Answer") to the Plaintiff's First Amended Complaint for Patent Infringement ("Complaint") filed by Plaintiff Applied Biokinetics LLC's ("ABK" or "Plaintiff") dated August 1, 2022 (D.I. 10).

KT Health responds below to the allegations contained in the numbered paragraphs of Plaintiff's Complaint. KT Health denies all allegations in the Complaint unless expressly admitted in the following paragraphs. Any factual allegation admitted below is admitted only as to the specific admitted facts, and not as to any purported conclusions, characterizations, or implications that might follow from the admitted facts.

KT Health repeats the headings set forth in the Complaint to simplify comparison of the Complaint and this Answer. In doing so, KT Health makes no admissions regarding the substance of the headings or any allegations of the Complaint. Unless otherwise stated, to the extent a particular heading can be construed as an allegation, KT Health denies all such allegations.

## THE PARTIES

1.      KT Health lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint, and therefore denies them.

2.      KT Health admits that KT Health, LLC is a Delaware limited liability company and that it has a place of business at 584 E 1100 S., Suite 4, American Fork, Utah 84003.

3.      KT Health admits that it may be served with process through its registered agent, Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.      KT admits that Plaintiff purports to bring a patent infringement action under 35 U.S.C. §101, *et seq*. KT further admits that 28 U.S.C. §§ 1331 and 1338(a) confer jurisdiction as to claims arising under the patent laws and claims arising under the laws of the United States upon this Court.  KT denies that it infringes or has infringed any claim of the Asserted Patents,[1] directly or indirectly, literally or under the doctrine of equivalents, in this District or in any other district.

5.      KT does not contest, for purposes of this action only, whether this Court has personal jurisdiction over it. KT denies all of the remaining allegations of paragraph 5 of the Complaint.

6.      For purposes of this action only, KT does not contest that venue is proper in this District.  KT denies that it has committed acts of direct or indirect infringement in this District or any other District.

---

[1] U.S. Patent No. 8,414,511 (the "'511 Patent"), U.S. Patent No. 8,814,818 (the "'818 Patent"), U.S. Patent No. 8,834,398 (the "'398 Patent"), U.S. Patent No. 8,968,229 (the "'229 Patent"), U.S. Patent No. 10,212,987 ("the '987 Patent") (collectively, the "Asserted Patents")

2

## FACTUAL BACKGROUND

7.      To the extent any referenced invention or "innovative technology solutions" are allegedly embodied in any of the Asserted Patents (as defined herein), KT denies that the subject matter was new, novel, inventive, or innovative. KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint, and therefore denies them.

8.      To the extent the "system" referenced in Paragraph 8 refers to the subject matter of any of the Asserted Patents, KT denies that this subject matter was new, "novel," or otherwise patentable as of the applicable priority date(s). KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint, and therefore denies them.

9.      KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint, and therefore denies them.

10.     KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint, and therefore denies them.

11.     KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint, and therefore denies them.

## ACCUSED PRODUCTS AND METHODS

12.     KT admits that Plaintiff is accusing several products, which are advertised for use related to various conditions and/or for use in multiple applications, including but not limited to certain types of fascia injury. KT denies that such products infringe any of the Asserted Patents.

3

13.     KT admits that Plaintiff has accused the products listed in Paragraph 13 of infringement.  KT denies any and all allegations of infringement of any kind.

14.     KT admits that its products are marketed in different forms, such as in different widths, in different colors, with different graphics and themes, in different packaging, and in different quantities. KT denies that the products listed in paragraph 13 of the Complaint and in the attached Exhibits 12-43 are representative of, or exemplary of, "the total universe of products made, used, offered for sale, sold or imported by KT," which Plaintiff asserts are within the scope of the asserted product claims identified below, which Plaintiff refers to in the Complaint as "Exemplary Products." KT denies any and all remaining allegations set forth in paragraph 14 of the Complaint.

15.     KT denies that the methods referenced below and in Exhibits 12-43 to the Complaint are similarly exemplary of all methods practiced by KT and KT's customers and other end-users, which Plaintiff refers to in the Complaint as "Exemplary Methods. KT denies any and all remaining allegations set forth in paragraph 14 of the Complaint.

## COUNT I

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,414,511

16.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

17.     KT admits that the first page of the '511 Patent reflects a title of "System for Treatment of Plantar Fasciitis."  KT further admits that the '511 Patent, on its face, purports to have an issue date of April 9, 2013.  KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest in and to the

4

patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 17 of the Complaint.

18.     KT denies that the '511 Patent is valid or enforceable.

19.     KT admits that Plaintiff gave KT notice of the '511 Patent and asserted that certain KT products allegedly infringed the '511 Patent by letter on or around June 10, 2021.

20.     KT denies all of the allegations in paragraph 20 of the Complaint.

21.     KT denies all of the allegations in paragraph 21 of the Complaint.

22.     KT admits that certain Exhibits to the Complaint contain charts purporting to compare certain claims of the '511 Patent with certain products listed in paragraph 13 of the Complaint. KT denies any and all allegations of infringement of any kind. KT denies any and all remaining allegations in paragraph 22 of the Complaint.

23.     KT denies all of the allegations in paragraph 23 of the Complaint.

24.     KT denies all of the allegations in paragraph 24 of the Complaint.

25.     KT denies all of the allegations in paragraph 25 of the Complaint.

## COUNT II

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,814,818

26.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

27.     KT admits that the first page of the '818 Patent reflects a title of "Disposable Two-Part Orthotic Foot Support, Strap System and Method."  KT further admits that the '818 Patent, on its face, purports to have an issue date of August 26, 2014. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title,

and interest in and to the patent," and those allegations are therefore denied.  KT denies all of the remaining allegations in paragraph 27 of the Complaint.

28.     KT denies that the '818 Patent is valid or enforceable.

29.     KT admits that Plaintiff gave KT notice of the '818 Patent and asserted that certain KT products allegedly infringed the '818 Patent by letter on or around June 10, 2021.

30.     KT denies all of the allegations in paragraph 30 of the Complaint.

31.     KT denies all of the allegations in paragraph 31 of the Complaint.

32.     KT admits that Exhibits 16-19 to the Complaint contain charts purporting to compare certain claims of the '818 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 32 of the Complaint.

33.     KT denies all of the allegations in paragraph 33 of the Complaint.

34.     KT denies all of the allegations in paragraph 34 of the Complaint.

35.     KT denies all of the allegations in paragraph 35 of the Complaint.

## COUNT III

### [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,834,398

36.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

37.     KT admits that the first page of the '398 Patent reflects a title of "System for Treatment of Plantar Fasciitis."  KT further admits that the '398 Patent, on its face, purports to have an issue date of September 16, 2014. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest in and

6

to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 37 of the Complaint.

38.      KT denies that the '398 Patent is valid or enforceable.

39.      KT admits that Plaintiff gave KT notice of the '398 Patent and asserted that certain KT products allegedly infringed the '398 Patent by letter on or around June 10, 2021.

40.      KT denies all of the allegations in paragraph 40 of the Complaint.

41.      KT admits that Exhibits 20-23 to the Complaint contain charts purporting to compare certain claims of the '398 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 41 of the Complaint.

42.      KT denies all of the allegations in paragraph 42 of the Complaint.

43.      KT denies all of the allegations in paragraph 43 of the Complaint.

44.      KT denies all of the allegations in paragraph 44 of the Complaint.

45.      KT denies all of the allegations in paragraph 45 of the Complaint.

## COUNT IV

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 8,968,229

46.      KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

47.      KT admits that the first page of the '229 Patent reflects a title of "Disposable Two-Part Orthotic Foot Support Strat System and Method."  KT further admits that the '229 Patent, on its face, purports to have an issue date of March 3, 2015. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title,

and interest in and to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 47 of the Complaint.

48.     KT denies that the '229 Patent is valid or enforceable.

49.     KT admits that Plaintiff gave KT notice of the '229 Patent and asserted that certain KT products allegedly infringed the '229 Patent by letter on or around June 10, 2021.

50.     KT denies all of the allegations in paragraph 50 of the Complaint.

51.     KT admits that Exhibits 24-27 to the Complaint contain charts purporting to compare certain claims of the '229 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 51 of the Complaint.

52.     KT denies all of the allegations in paragraph 52 of the Complaint.

53.     KT denies all of the allegations in paragraph 53 of the Complaint.

54.     KT denies all of the allegations in paragraph 54 of the Complaint.

55.     KT denies all of the allegations in paragraph 55 of the Complaint.

## COUNT V

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 10,212,987

56.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

57.     KT admits that the first page of the '987 Patent reflects a title of "Method of Manufacturing an Anatomical Support System." KT further admits that the '987 Patent, on its face, purports to have an issue date of February 26, 2019. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest

8

in and to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 57 of the Complaint.

58.     KT denies that the '987 Patent is valid or enforceable.

59.     KT admits that Plaintiff gave KT notice of the '987 Patent and asserted that certain KT products infringed the '987 Patent by letter on or around June 10, 2021.

60.     KT denies all of the allegations in paragraph 60 of the Complaint.

61.     KT admits that Exhibits 28-31 to the Complaint contain charts purporting to compare certain claims of the '987 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 61 of the Complaint.

62.     KT denies all of the allegations in paragraph 62 of the Complaint.

## COUNT VI

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 10,229,953

63.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

64.     KT admits that the first page of the '953 Patent reflects a title of "Material Including Pre-Cut Anatomical Supports." KT further admits that the '953 Patent, on its face, purports to have an issue date of May 28, 2019. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest in and to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 64 of the Complaint.

65.     KT denies that the '953 Patent is valid or enforceable.

66.     KT admits that Plaintiff gave KT notice of the '953 Patent and asserted that certain KT products infringed the '953 Patent by letter on or around June 10, 2021.

67.     KT denies all of the allegations in paragraph 67 of the Complaint.

68.     KT admits that Exhibits 32-35 to the Complaint contain charts purporting to compare certain claims of the '953 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 68 of the Complaint.

69.     KT denies all of the allegations in paragraph 69 of the Complaint.

70.     KT denies all of the allegations in paragraph 70 of the Complaint.

71.     KT denies all of the allegations in paragraph 71 of the Complaint.

72.     KT denies all of the allegations in paragraph 72 of the Complaint.

## COUNT VII

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 11,096,815

73.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

74.     KT admits that the first page of the '815 Patent reflects a title of "Material Including Elongate Strap Support." KT further admits that the '815 Patent, on its face, purports to have an issue date of August 24, 2021. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest in and to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 74 of the Complaint.

75.     KT denies that the '815 Patent is valid or enforceable.

76.     KT admits that Plaintiff gave KT notice of the '815 Patent and asserted that certain KT products infringed the '815 Patent by letter on or around June 10, 2021.

77.     KT denies all of the allegations in paragraph 77 of the Complaint.

78.     KT admits that Exhibits 36-39 to the Complaint contain charts purporting to compare certain claims of the '815 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 78 of the Complaint.

79.     KT denies all of the allegations in paragraph 79 of the Complaint.

80.     KT denies all of the allegations in paragraph 80 of the Complaint.

81.     KT denies all of the allegations in paragraph 81 of the Complaint.

## COUNT VIII

## [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 11,206,894

82.     KT restates and incorporates the preceding paragraphs of this Answer herein by reference.

83.     KT admits that the first page of the '894 Patent reflects a title of "Anatomical Support Method Using Elongate Strap Support." KT further admits that the '894 Patent, on its face, purports to have an issue date of December 28, 2021. KT lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding ABK's alleged "right, title, and interest in and to the patent," and those allegations are therefore denied. KT denies all of the remaining allegations in paragraph 83 of the Complaint.

84.     KT denies that the '894 Patent is valid or enforceable.

85.     KT denies all of the allegations in paragraph 85 of the Complaint.

11

86.     KT admits that Exhibits 40-43 to the Complaint contain charts purporting to compare certain claims of the '894 Patent with certain products listed in Paragraph 13. KT denies any and all allegations of infringement of any kind. KT denies all of the remaining allegations in paragraph 86 of the Complaint.

87.     KT denies all of the allegations in paragraph 87 of the Complaint.

88.     KT denies all of the allegations in paragraph 88 of the Complaint.

89.     KT denies all of the allegations in paragraph 89 of the Complaint.

90.     KT denies all of the allegations in paragraph 90 of the Complaint.

**ADDITIONAL PLEADING RELATING TO
THE 953, 815, AND 894 PATENTS**

91.     KT lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 91 of the Complaint, and therefore denies them.

**[ALLEGED] KNOWLEDGE, WILLFULNESS, AND MARKING**

92.     To the extent Paragraph 92 is to be understood as a statement of ABK's intent to refer to United States Patent Nos. 8,414,511, 8,814,818, 8,834,398, 8,968,229, 10,212,987, 10,299,953, 11,096,815, and 11, 206, 894 as "the Asserted Patents" for purposes of this Complaint, this Paragraph is admitted.  Otherwise, KT denies all of the allegations in paragraph 92 of the Complaint, including that these patents are "known as" "the Asserted Patents."

93.     KT denies all of the allegations in paragraph 93 of the Complaint.

94.     KT denies all of the allegations in paragraph 94 of the Complaint.

**RESPONSE TO ABK'S PRAYER FOR RELIEF**

The next section of the Complaint beginning with "WHEREFORE, Plaintiff Applied Biokinetics LLC prays for judgment that:" sets forth the statement of relief requested by Plaintiff,

12

to which no response is required. To the extent a response is required, KT denies that Plaintiff is entitled to any of the relief sought in its prayer for relief or any other relief, and requests that the Court deny all such relief to Plaintiff in its entirety and with prejudice.

## JURY DEMAND

This paragraph contains a demand for a jury trial to which no response is required. KT similarly demands a trial by jury on all issues so triable.

## AFFIRMATIVE AND OTHER DEFENSES

95.     KT incorporates by reference as if fully set forth herein its responses to Paragraphs 1 through 94 of Plaintiff's Complaint. Without admitting or acknowledging that it bears the burden of proof except those imposed by law and without reducing or removing Plaintiff's burden of proof on its affirmative claims, KT alleges and asserts the following defenses in response to Plaintiff's Complaint. KT reserves the right to amend its answer with additional defenses as further information is obtained.

## FIRST DEFENSE
## NON–INFRINGEMENT

1.     KT has not and does not infringe, contribute to the infringement of, or actively induce others to infringe, either literally, indirectly, or by the application of the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

2.     Neither KT, nor customers of the '511 Accused Products, directly infringe claims 1-4, 26, 31-34, and 36 the '511 patent at least because the '511 Accused Products do not practice every element of any of the asserted claims of the '511 patent.

3. To the extent ABK contends that the Asserted Patents are not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the Asserted Patents according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations, and limitations similar thereto:

- "stretch-resistant"/"stretch resistant"/"sufficiently stretch-resistant"/"substantially stretch-resistant";

- "device";

- "excessive or damaging tensile stress in a plantar fascia is prevented"/"preventing excessive tensile stress in a plantar fascia"/ "preventing excessive stress on a plantar fascia"/"prevention of excessive tensile stress in a plantar fasciitis";

- "ratio of elongation to tensile strength (lb/in-width) that is less than 0.9"/"ration of elongation to tensile strength (lb/in-width) that is less than 0.9";

- "less than 15% elongation when subjected to a tensile load approximately equivalent to 25 pounds"/"less than 15% elongation when subjected to a tensile load equivalent to 25 pounds"/"less than 15 percent elongation when subjected to a 25 lb tensile load";

- "tension forces applied to a plantar fascia are shared with an outer skin tissue"/"tension forces applied to a plantar fascia are shared with said outer skin surface"/"said adhesive layer and said sole engaging surface to restrict extension and stretching of a plantar fascia"/"such that tension forces applied to the plantar fascia are shared with said device outer skin tissue"

- "extending laterally outward from opposite sides of said stretch-resistant sole member"; extending laterally outward from a side of said sole member";

- "at least one heel strap or heel tab"; and

- "a front strap".

4. Neither KT, nor customers of the '818 Accused Products, directly infringe any of the claims of the '818 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '818 Accused Products.

14

5. In addition, the '818 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '818 patent is not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the '818 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations, and limitations similar thereto:

- "reducing tensile loads and stresses"/ "to reduce fascia stress";

- "having a tensile strength of at least 25 lb/in-width";

- "adhering said heel portion to the skin surfaces along the back and lateral sides of the heel of the foot";

- "wherein adhering said arch support strap comprises adhering transversely over said sole support strap and at least a portion of skin surfaces of opposed sides of a midfoot portion of a longitudinal arch between the ball and the heel of the foot"; and

- "a ratio of elongate-to-tensile strength that is less than 0.9".

6. Neither KT, nor customers of the '398 Accused Products, directly infringe any of the claims of the '398 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '398 Accused Products.

7. In addition, the '398 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '398 patent is not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the '398 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations, and limitations similar thereto:

- "method of self-treatment or prevention";

- "prevention";

15

- "the patient adheres"/"the patient removing"/"the patient adhesively attaching"/ "the user adhesively attaches"/"the user adhesively attaching";

- "by the user"/"by a user"/"by the patient";

- "the user removes";

- "that is stretch resistant in at least one direction"; and

- "a ratio of elongation to tensile strength (lb/in-width) of less than 0.9".

8.     Neither KT, nor customers of the '229 Accused Products, directly infringe any of the claims of the '229 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '229 Accused Products.

9.     In addition, the '229 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the Asserted Patents are not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the Asserted Patents according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations, and limitations similar thereto:

- "said arch support strap having a tensile strength greater than 15 lb/in-width";

- "ratio of elongation-to-tensile strength that is less than 0.9"; and

- "such that said arch support strap, in the adhered condition, functions to provide support to the arch of the user's foot".

10.     Neither KT, nor customers of the '987 Accused Products, directly infringe any of the claims of the '987 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '987 Accused Products.

11.     In addition, the '987 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '987 patent is not anticipated by, or obvious

16

in view of, the prior art summarized below, then the Accused Products cannot infringe the '987 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations, and limitations similar thereto:

- "a method of manufacturing";

- "acquiring a sheet of material";

- "shaped for interchangeable application to either a right or a left foot"

- "forming said sheet of material into a plurality of separate pre-cut support portions each having substantially straight sides and rounded corners and all of substantially a same size and shape, wherein the forming comprises cutting said sheet of material to form the pre-cut support portions, wherein the pre-cut support portions are sized and shaped for adhesive engagement simultaneously with a sole, a side and a top of a foot of the user";

- "ratio of elongation to tensile strength (lb/in-width) that is less than 0.9";

- "sized and shaped to encircle a foot of the user"; and

- "a tensile strength of greater than 20 lb/in-width".

12.     Neither KT, nor customers of the '953 Accused Products, directly infringe any of the claims of the '953 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '953 Accused Products.

13.     In addition, the '953 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '953 patent is not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the '953 patent according to ABK's allegations.

14.     Neither KT, nor customers of the '815 Accused Products, directly infringe any of the claims of the '815 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '815 Accused Products.

15.     In addition, the '815 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '815 patent is not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the '815 patent according to ABK's allegations.

16.     Neither KT, nor customers of the '894 Accused Products, directly infringe any of the claims of the '894 patent at least because neither KT, nor its customers, perform any method of manufacture with respect to the '894 Accused Products.

17.     In addition, the '894 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '894 patent is not anticipated by, or obvious in view of, the prior art summarized below, then the Accused Products cannot infringe the '894 patent according to ABK's allegations.

18.     Through ABK's and its licensee's actions and course of conduct, ABK has admitted that kinesiology tape products are not covered by any claims of the Asserted Patents and KT therefore does not infringe the Asserted Patents.

## SECOND DEFENSE
## INVALIDITY

19.     Each Asserted claim of the Asserted Patents is invalid for failing to comply with one or more provisions of the Patent Laws, Title 35 U.S.C., including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 251.

20.     One or more asserted claims of each of the Asserted Patents is anticipated under at least 35 U.S.C. § 102(b) by one or more printed publications, including without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

18

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 (Video).

21. One or more asserted claims of each of the Asserted Patents is anticipated under at least 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape, Leukotape, and/or similar kinesiology or other adhesive body tape products.

22. One or more asserted claims of each of the Asserted Patents is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same.

23. The subject matter of one or more asserted claims of each of the Asserted Patents is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same.

24. One or more asserted claims of each of the Asserted Patents is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

25. One or more asserted claims of each of the Asserted Patents is invalid for failure to comply with the disclosure requirements of 35 U.S.C. § 112. By way of example only, and not limitation, the asserted claims of the Asserted Patents are rendered indefinite by one or more of the following claim terms:

- "thin";

19

- "ultrathin";

- "stretch-resistant"/"substantially stretch resistant"/"sufficiently stretch-resistant";

- "sufficient adhesion to maintain said stretch-resistant sole member in adhesive engagement with an outer skin tissue on the sole of the foot"/"sufficient adhesion to maintain said sole member on an outer skin surface of a sole of a foot"/"sufficient adhesion to maintain said device in place on the outer skin surface on the sole of the foot"/"an adhesive strength sufficient to prevent slippage of said arch support strap when secured to skin surfaces of the foot";

- "sufficient to encircle the foot of a user"; "sufficient to encircle the foot of the user", and sufficient length to encircle a foot of the user";

- "excessive or damaging tensile stress in a plantar fascia is prevented"/"preventing excessive tensile stress in a plantar fascia"/"preventing excessive stress on a plantar fascia"/"prevention of excessive tensile stress in a plantar fasciitis";

- "restrict extension and stretching of an outer skin tissue of a sole of a wearer's foot"/"preventing extension and stretching of tissue on a bottom of the wearer's foot"; and

- "a ratio of elongation to tensile strength (lb/in-width) that is less than 0.9"/ "a ratio of elongation-to-tensile strength that is less than 0.9."

- "tensile strength sufficient to prevent stretching and elongation of said sole support strap and said arch support strap in a longitudinal or transverse dimension";

- "a peel strength sufficient to prevent slipping or creeping of said [sole / arch] support strap when secured to a skin surface of the foot";

- "a ratio of elongate-to-tensile strength that . . . is sufficient to prevent stretching and elongation of said sole support strap";

- "wherein said sole support strap . . . provides stability and support to the musculoskeletal system and arch of the user's foot to reduce fascia stress throughout a walking gait cycle";

- "strap supports . . . sized to encircle of a human foot.";

- "substantially uniform thickness";

- "substantially stretch resistant";

- "substantially disconnected";

20

- "a ratio of elongation to tensile strength (lb/in-width) that is less than 0.9";

- "contiguous"; and

- "encircles"/"at least partially encircles"/"sized to encircle".

### THIRD DEFENSE
### FAILURE TO MARK

26.     To the extent ABK or any predecessor-in-interest to the Asserted Patents, or its licensee(s), failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise give proper notice that KT's actions allegedly infringe the Asserted Patents, KT is not liable to ABK for any acts alleged to have been performed before KT received actual notice that it was allegedly infringing the Asserted Patents.

### FOURTH DEFENSE
### NO INDIRECT INFRINGEMENT

27.     To extent that ABK asserts that KT indirectly infringes, either by contributory infringement or inducement, KT is not liable to ABK for any acts alleged to have been performed before KT knew of the Asserted Patents and that its alleged actions would result in alleged direct infringement.

### FIFTH DEFENSE
### NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

28.     To the extent ABK relies on the doctrine of equivalents to allege infringement, ABK's claims are barred because the asserted scope of the equivalency encompasses or ensnares prior art.

### SIXTH DEFENSE
### LIMITATION ON DAMAGES

29.     Any recovery of damages by Plaintiff is limited in whole or in part by 35 U.S.C. §§ 286 and/or 287.

21

**SEVENTH DEFENSE**
**NO ENHANCED DAMAGES**

30.     In the event KT were found to infringe any valid, enforceable claim of the Asserted

Patents, ABK is precluded from recovering increased or enhanced damages under 35 U.S.C. § 284.

**EIGHTH DEFENSE**
**NO WILLFULNESS**

31.     In the event KT were found to infringe any valid, enforceable claim of the Asserted

Patents, such infringement was not willful.

**NINTH DEFENSE**
**NO ATTORNEYS' FEES**

32.     ABK is precluded from recovering its reasonable attorneys' fees and/or costs under

35 U.S.C. §285.

**TENTH DEFENSE**
**NO COSTS**

33.     ABK is precluded from recovering costs associated with this action under 35

U.S.C. § 288.

**ELEVENTH DEFENSE**
**NO INJUNCTIVE RELIEF**

34.     ABK is not entitled to any injunctive relief under any theory, including without

limitation, because: any alleged injury to ABK is not immediate or irreparable; in the unlikely

event ABK prevails, ABK has an adequate remedy at law; and/or public policy concerns weigh

against any and all injunctive relief.

**TWELFTH DEFENSE**
**WAIVER, ESTOPPEL, UNCLEAN HANDS**

35.     ABK's attempted enforcement of the Asserted Patents against KT is barred by one

or more of the equitable doctrines of waiver, estoppel, and unclean hands.

## THIRTEENTH DEFENSE
## <u>PROSECUTION HISTORY ESTOPPEL</u>

36.     ABK is estopped from asserting any interpretations of any claims of the Asserted Patents that were surrendered during, or are inconsistent with any statements, representations, or admissions made during, prosecution of the patent applications that resulted in the Asserted Patents or any applications related thereto.

## FOURTEENTH DEFENSE
## <u>PATENT MISUSE</u>

37.     The Asserted Patents are unenforceable due to patent misuse.  By way of example only, despite admitting kinesiology tape, including Kinesio Tex® tape as prior art during prosecution of the Asserted Patents, and characterizing the alleged invention as an improvement over such taping techniques for treating plantar fasciitis, ABK identifies the '511 Accused Products, the '818 Accused Products, the '398 Accused Products, , the '229 Accused Products, and the '987 Accused Products—all examples of conventional kinesiology tape—as infringing articles or articles used to perform infringing methods.

## FIFTEENTH DEFENSE
## <u>INEQUITABLE CONDUCT</u>

38.     The Asserted Patents, and the entire family of the Asserted Patents are unenforceable due to infectious inequitable conduct.  Such inequitable conduct is related to ABK's and Donald Bushby's intent to mislead the United States Patent Office by providing, or directing his attorneys to provide, materially false and misleading statements to the Examiner during prosecution of the patent family, including the Asserted Patents in an ultimate effort to capture prior art, and conventional kinesiology tape products, in particular, in claims issued from later prosecution.

23

39.     Mr. Bushby made material omissions to the USPTO intending to deceive the Examiner into disregarding prior art kinesiology tape products that he knew were material to the examination of his purported invention in an ultimate effort to capture that prior art in later prosecution. Indeed, the Accused Products are kinesiology tape products of the same type that Mr. Bushby distinguished in prosecution.

40.     Mr. Bushby claims that his purported invention is directed to stretch-resistance, elongation, and tensile strength properties in both the lengthwise and widthwise directions, but, through a series of misrepresentations, led the Examiner to believe that such properties were only relevant in the lengthwise direction.

41.     The Asserted Patents are directed, generally, to stretch-resistant plantar fascia support systems adhesively applied to the bottom and arch surfaces of the foot for reducing stress on the plantar fascia.

42.     For example, the '511 patent identifies the plantar fascia as 110, and states that the support system includes a foot sole support 410, an adhesive layer 411, indicia 415, arch straps 420, heel strap 430, heel strap tabs 432, toe strap 440, toe strap tab 442, front straps 450, and heel tabs 460. A human foot depicting plantar fascia 110 is provided at FIG. 1, with Mr. Bushby's purported invention shown at FIG. 3 and applied to the human foot at FIG. 5.

24



FIG. 1                    FIG. 3                    FIG. 5

43.     During prosecution, in an August 3, 2007 Office Action, Mr. Bushby argued that

the benefit of this structure was to provide support to the plantar fascia region of the foot so as to

"sufficiently restrict extension and stretching of the outer skin tissue when adhered thereto such

that tension forces applied to the plantar fascia from forces on the arch of the foot which push the

bones of the foot downwardly are shared with the device to restrict stretching of, and reduce

tension in, the plantar fascia."

44.     This was to distinguish prior art that was capable of stretching in the longitudinal

direction.

45.     Other Asserted Patents include different embodiments of the purported invention.

For example, the '818 patent states that the system includes a sole support strap 10 and arch support

strap 20 removably adhered to a rectangular release liner sheet 30 in laterally spaced relation. The

'818 patent depicts a variety of configurations of the support straps and liner sheets shown, *e.g.*, at

FIGs. 3, 5 and 6:

25



FIG. 3                    FIGs. 5A-5D                    FIGs. 6A-6C

46.     The '818 patent narrates application of the support straps of the alleged invention. For example, stating that the front or ball portion of the sole support strap 10 is pressed onto the ball of the foot.

47.     The '818 patent further teaches that with the sole support strap in place, the arch support strap 20 is applied such that the mid portion of the strap is placed transversely over the outside of the foot sole support strap member 10 near the middle of the arch and pressed down and the outer sides of the outer ends of the arch support strap are wrapped at least partially over the sides of the arch.



FIG. 7A                FIG. 7B                FIG. 7C                FIG. 7D

48.     Mr. Bushby characterized the alleged invention as an improvement over conventional prior art taping techniques, stating:

26

Another typical example of treatment for plantar fasciitis includes medical personnel strapping strips of tape to the bottom of an injured foot. Strips of tape are applied at various angles across the bottom of the foot. The tape is difficult to remove from the rolls and bunches up during the taping process. Thus, care must be exercised during the application of the tape to avoid blister-causing wrinkles in the tape and other problems. As the patient walks with the taped foot, the tape works loose and stretches with time. In addition, the tape cannot be effectively applied by the patient to the patient's own foot and requires application by another individual such as a trained medical technician. Consequently, taping the foot is cumbersome, inefficient, and ineffective in preventing excessive stretching of the plantar fascia.

'511 Patent. 2:34-48.

49.    Consistent with this statement, throughout prosecution of the '511 patent, Mr. Bushby characterized his purported invention, and distinguished the cited prior art, based on its stretch resistance, elongation, and tensile properties in the lengthwise direction—omitting any mention of such properties in the transverse (widthwise) direction.

50.    Although Mr. Bushby characterized his purported invention as an improvement over prior art taping techniques, such prior art products and techniques are precisely what ABK accuses in the above-captioned action.

51.    Indeed, the Accused Products are conventional kinesiology tape—in both structure and intended function.

52.    During prosecution of the '511 patent—the first application in the family of Asserted Patents—Mr. Bushby characterized the alleged invention as an improvement over prior art taping techniques.

53.    In particular, Mr. Bushby repeatedly characterized the invention as a stretch-resistant device for providing support to the plantar fascia region of the foot so as to sufficiently restrict extension and stretching of the outer skin tissue when adhered thereto such that tension forces applied to the plantar fascia from forces on the arch of the foot which push the bones of the

27

foot downwardly are shared with the device to restrict stretching of, and reduce tension in, the plantar fascia.

54.     Specifically, he represented that the pertinent stretch, elongation, and tensile properties of the alleged invention are in the lengthwise direction (to share forces on the arch of the foot and restrict stretching of the plantar fascia).

55.     Mr. Bushby, by way of his attorney, Kenneth A Roddy as "Agent for Applicant," made this representation, for example, in the August 3, 2007, Office Action Response, to distinguish the alleged invention from a resilient foot protector that allowed for increased mobility and flexing of the foot during walking or running movements without inhibiting foot movement.

56.     Mr. Bushby characterized this prior art as teaching "the opposite" of the alleged invention, "which is to restrict stretching and reduce tension in the plantar fascia."

57.     Bushby made similar remarks in a subsequent January 22, 2008, Office Action Response.

58.     Mr. Bushby's multiple representations to the USPTO were that the pertinent stretch properties are in the lengthwise direction, omitting any mention of the prior art's stretch properties in the widthwise direction.

59.     In addition, in an Office Action dated September 23, 2008, rejecting certain then-pending claims in view of the combination of Burgess, Holden, and Desnoyers, the Examiner found that Desnoyers taught a pressure sensitive tape having a ratio of elongation to tensile strength ratio of about 3 to 1.

60.     On December 3, 2008, in response to that Office Action, Mr. Bushby, by way of his attorney, Glenn L Webb as "Agent for Applicant", argued "Desnoyers fails to disclose, suggest

28

or teach an orthotic device that has a stretch resistant sole member having an adhesive layer that restricts stretching and extension of an outer skin tissue to prevent excessive damaging tensile stress in plantar fascia."

61.     Mr. Bushby went on to emphasize in bold and underline: "**Desnoyers actually teaches away from such a device as shown in column 4, lines 67 – 70 'These tapes, preferably, have an extensibility at break of 45% or more in the lengthwise direction'. Further, as disclosed in claim 1 of Desnoyers, column 7, lines 3 – 4, 'tape having a relatively high longitudinal extensibility', Desnoyers clearly teaches away from the presently claimed invention.**"

62.     This further illustrates Mr. Bushby's representation to the USPTO that the pertinent stretch properties are in the lengthwise direction and that prior art "having a relatively high longitudinal extensibility" teaches away from the purported invention.

63.     Mr. Bushby consistently made such arguments all the way through appeal to issuance of the '511 patent.

64.     Later, during prosecution of the application that resulted in the '818 patent, which also claimed priority to the '511 patent, Mr. Bushby expanded his criticisms of prior art taping techniques for treating plantar fasciitis, stating in background:

> A common example of non-surgical treatment for plantar fasciitis is medical personnel strapping strips of adhesive tape to the bottom of an injured foot. Strips of tape are applied at various angles across the bottom of the foot. The adhesive tape is sold on rolls and is difficult to remove from the rolls and must be customized for application according to the imagination and skill of the person applying the tape. Typically, the tape cannot be effectively applied by the patient to the patient's own foot and usually requires application by another individual or a trained medical technician. The person applying the tape must cut off a section of the tape from a roll, cut the length of tape further into a therapeutic shape, and apply it to the patient. The cutting, shaping and positioning (tensioning) of the tape piece are left to the

29

complete discretion of the person applying the tape, and it is a trial and error process. Even a trained medical technician must estimate a position, length, shape and degree of tension that will cause a subjective improvement in range of motion and pain relief in the patient. If the tapes are stretchable, this further complicates the application and decreases the likelihood of consistent and repeatable self-application. Care must also be exercised during the application of the tape to avoid blister-causing wrinkles in the tape and other problems. The tape, when subject to the cyclic tensile loads, looses [sic] effectiveness quickly as the materials elongate and the glue layers slip or creep. Multiple layers of material, glued to each other increase the opportunity for each or any of the glue layers to allow slippage as high tensile loads are applied. As the patient walks with the taped foot, the tape often works loose and stretches with time. Consequently, taping the foot is cumbersome, inefficient, and ineffective in preventing excessive stretching of the plantar fascia.

65.     In connection with this background, Mr. Bushby identified the prior art Kinesio Tex® product, noting its "140% elasticity":

A popular commercially available high-stretch elastic adhesive tape known as KINESIO TEX™, is manufactured by Kinesio Co., Ltd. of Japan and disclosed in U.S. Pat. Nos. 5,861,348 and 7,902,420. This elastic tape is designed for maximum range of motion and provides 140% elasticity (about same as basic elasticity found in skin and muscles), allowing it to work with the body. It does not limit range of motion and ineffective in preventing excessive stretching of the plantar fascia. It is sold in rolls and also has the same disadvantages and tapping [sic] difficulties of other adhesive tapes as discussed above.

66.     Notably, Mr. Bushby only provided the elasticity of the Kinesio Tex® tape in the lengthwise direction, omitting any mention of its elasticity in the widthwise direction.

67.     The combination of the identified statements misdirected the evaluation of the patentability of the Asserted Patents.

68.     Mr. Bushby characterized the purported invention in terms of its ability to restrict lengthwise extension, distinguished prior art such as Desnoyers as being capable of extension in the lengthwise direction, and noted Kinesio Tex® tape's "140% elasticity" (a reference to stretch in the lengthwise direction), all to convince the Examiner that the pertinent stretch, elongation, and tensile properties of the alleged invention are in the lengthwise direction.

30

69.     The Examiner clearly had this understanding since no office action issued against any claim based on conventional prior art kinesiology tape, despite kinesiology tape and Kinesio Tex® tape being discussed and cited in the background of the Asserted Patents and such tape having known properties that Mr. Bushby omitted.

70.     Through these exemplary statements, Mr. Bushby therefore misrepresented the claimed invention as requiring the recited stretch, elongation, and tensile properties in the lengthwise direction and deceived the Examiner into disregarding conventional kinesiology tape as material prior art on the premise that conventional kinesiology tape lacks the recited properties in the lengthwise direction.

71.     Moreover, having intentionally thrown the Examiner off the scent of material prior art by distinguishing conventional prior art kinesiology tape and other orthotics and treatment apparatuses capable of stretching in the lengthwise direction in the first application in the family, Mr. Bushby intentionally acted to capture such prior art, and conventional kinesiology tape, in particular, in claims issued from later prosecution.

72.     For example, on February 2, 2012 (nearly 8 years after its first application), in its application for the '818 patent, Mr. Bushby introduced the notion that the pertinent stretch, elongation, and tensile properties of the alleged invention are not limited to the lengthwise direction, but are also relevant in the transverse (width) direction.

73.     Never before in prosecution of any patent in the family had the applicant mentioned such properties as being pertinent in the transverse (width) direction.

74.     The application for the '818 patent also included claims reciting one or more of the properties in the "longitudinal or transverse" dimension.

31

75.     Consideration of the elongation, tensile strength, or extensibility in a transverse (width) orientation is counter to how such properties were discussed by Mr. Bushby throughout prosecution.

76.     For example, the '818 patent specification defines "elongation" as "the state of being elongated or lengthened," which is not an intuitive way to characterize a property of tape in its transverse (width) direction.

77.     Further, Mr. Bushby's statements during prosecution of the '511 patent characterizing the invention as operating such that "tension forces applied to the plantar fascia from forces on the arch of the foot which push the bones of the foot downwardly are shared with the device to restrict stretching of, and reduce tension in, the plantar fascia" give no indication that this could be accomplished using conventional kinesiology tape having pertinent stretch, elongation, and tensile properties in its transverse (width) direction, rather than its lengthwise direction.

78.     Through intentional and material misrepresentations that the claimed invention differed from prior art tape by being longitudinally stretch-resistant, omissions of known contrary information, and the subsequent deliberate recapture of claim scope through broadening of the disclosure in subsequent applications and the inclusion of claims encompassing stretch-resistance in either the longitudinal or transverse (width) direction without any mention of the stretch resistant properties of the prior art products in the width direction, Mr. Bushby committed inequitable conduct that infects and renders unenforceable the entire family of Asserted Patents.

**SIXTEENTH DEFENSE**
**LIMITATION ON REMEDIES FOR INFRINGEMENT OF PROCESS PATENT**

79.     ABK's remedies are limited by 35 U.S.C. 271(g).

32

## SEVENTEENTH DEFENSE
## LACK OF STANDING

80.     On information and belief, ABK lacks standing to sue for alleged infringement of the Asserted Patents.

## EIGHTEENTH DEFENSE
## EQUITABLE DEFENSES

81.     On information and belief, Plaintiff's claims are barred, in whole or in part, under the equitable doctrines of waiver, estoppel, and unclean hands.

## NINETEENTH DEFENSE
## LICENSE AND PATENT EXHAUSTION

82.     Plaintiff's claims for patent infringement are barred, in whole or in part, (a) to the extent that any allegedly infringing products or components thereof are or were imported, sold by, offered for sale by, made by, or made for, any entity or entities having express or implied licenses to the Patents-in-Suit and/or (b) under the doctrine of patent exhaustion.

## TWENTIETH DEFENSE
## USE/MANUFACTURE BY/FOR UNITED STATES GOVERNMENT

83.     To the extent that any accused product or method has been used or manufactured by or for the United States, Plaintiff's claims and demands for relief are barred by 28 U.S.C. § 1498.

## TWENTY-FIRST DEFENSE
## FAILURE TO STATE A CLAIM

84.     Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

33

**TWENTY-SECOND DEFENSE**
**OTHER DEFENSES BASED ON LATER DISCOVERED EVIDENCE**

85.     KT's investigation of its defenses is continuing, and KT expressly reserves the right to allege and assert any additional defenses under Rule 8 of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case.

**KT'S COUNTERCLAIMS**

For its counterclaims against Counterclaim Defendant ABK, Counterclaim Plaintiff KT, by and through its undersigned attorneys, alleges as follows:

**NATURE OF ACTION**

1.     This is a complaint for declaratory judgment of patent invalidity, non-infringement, and unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq,

**THE PARTIES**

2.     KT is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 584 East 1100 South # 4, American Fork, Utah 84003.

3.     On information and belief based solely on Paragraph 1 of the Complaint, ABK is a Texas limited liability company with a place of business in Spring, Texas.

**JURISDICTION AND VENUE**

4.      An actual case or controversy exists between KT and ABK as to whether KT has infringed or is infringing, directly or indirectly, one or more valid and enforceable claims of the Asserted Patents.

5.      The Court has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

6.      The Court has personal jurisdiction over ABK at least because ABK consented to the jurisdiction of this Court by filing the Complaint.

7.      Based solely on the filing of this action, venue is proper in this Judicial District under at least 28 U.S.C. § 1400(b).

**BACKGROUND**

8.      On May 13, 2022, ABK filed a Complaint in this Judicial District, alleging infringement by KT of the Asserted Patents.

9.      An actual and justiciable controversy has thus arisen between ABK and KT concerning the alleged infringement, validity, and enforceability of the Asserted Patents.

**The '511 Patent**

10.      In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1-4, 26, 31-34, and 36 of the '511 patent in violation of 35 U.S.C. § 271(a) "because KT makes, uses, offers for sale, sells, and/or imports the Exemplary Products as demonstrated in Exhibits 6-9)" ('511 Accused Products').

35

11.     Further in its Complaint, ABK alleges that KT "has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least method claims 20-21, 23 and 24 of the '511 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 12-15."

12.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringe claims 1-6, 12-21, 23, 24, 26-34, and 36 of the '511 patent in violation of 35 U.S.C. § 271(b) and (c) based on conduct allegedly with respect to the '511 Accused Products.

13.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '511 patent, directly or indirectly, and further that the '511 patent is invalid and unenforceable.

14.     ABK does not allege that the '511 Accused Products comprise a sole member that is stretch-resistant in the longitudinal direction.

15.     ABK does not allege that the '511 Accused Products comprise a sole member having a ratio of elongation to tensile strength (lb/in-width) that is less than 0.9 in the longitudinal direction.

### The '818 Patent

16.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claim 15 of the '818 patent in violation of 35 U.S.C. § 271(a) "because KT makes, uses, offers for sale, sells, and/or imports at least the Exemplary Products as demonstrated in Exhibits 16-19" the ("'818 Accused Products").

17.     ABK further alleges that "KT has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents at least method claims 19 and 20 the '818 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 10-13."

18.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringe claims 15, 19, and 20 of the '818 patent in violation of 35 U.S.C. § 271(b) and (c) based on conduct allegedly with respect to the '818 Accused Products.

19.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '818 patent, directly or indirectly, and further that the '818 patent is invalid and unenforceable.

20.     ABK does not allege that the '818 Accused Products comprise an arch support strap having a ratio of elongate-to-tensile strength (lb/in-width) that is less than 0.9 in the longitudinal direction.

## The '398 Patent

21.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1, 2, 5, 6, 13-17, and 19 of the '398 patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 20-23" (the "'398 Accused Products")."

22.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringe claims 1, 2, 5, 6, 13-17, and 19 of the '398 patent in violation of 35 U.S.C. § 271(b) and (c) based on conduct allegedly with respect to the '398 Accused Products.

23.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '398 patent, directly or indirectly, and further that the '398 patent is invalid and unenforceable.

24.     ABK does not allege that the '398 Accused Products comprise a support layer that is stretch-resistant in the longitudinal direction.

25.     ABK does not allege that the '398 Accused Products comprise a support layer having a ratio of elongation to tensile strength (lb/in-width) of less than 0.9 in the longitudinal direction.

### The '229 Patent

26.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least method claims 12, 13, and 16 - 18 of the '229 Patent in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 24-27" (the "'229 Accused Products").

27.     ABK also alleges that KT has indirectly infringed and continues to indirectly infringe claims 12, 13, and 16 - 18 of the '229 patent in violation of 35 U.S.C. § 271(b) and (c).

28.     KT has denied ABK's claims of infringement, and contends that it has not and does not directly or indirectly infringe the '229 patent, and further that the '229 patent is invalid and unenforceable.

### The '987 Patent

29.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 18, 19, and

38

22-31 of the '987 patent "in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 28-31" (the "'987 Accused Products").

30.     ABK also alleges that KT has infringed claims 18, 19 and 22 - 31 of the '987 Patent under 35 U.S.C. § 271(g) by importing into the United States or offering to sell, selling, or using within the United States the Exemplary Products which were made by the methods of claims 18, 19 and 22-31 of the '987 Patent during the term of the '987 Patent.

31.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '987 patent, directly or indirectly, and further that the '987 patent is invalid and unenforceable.

## The '953 Patent

32.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1-2, 4-8, 10-13, 15-17, and 19 of the '953 patent "in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 32-35" (the "'953 Accused Products").

33.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringed the '953 patent in violation of 35 U.S.C. § 271 (b) and (c) based on conduct allegedly with respect to the '953 Accused Products.

34.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '953 patent, directly or indirectly, and further that the '953 patent is invalid and unenforceable.

39

## **The '815 Patent**

35.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 1-7, 9-10, 12-18, 20-23, 25-34, 37-40, 54-59, 61, 63-68, 72-74, 76, and 78-80 of the '815 patent "in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 36-39" (the "'815 Accused Products").

36.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringed the '815 patent in violation of 35 U.S.C. § 271(b) based on conduct allegedly with respect to the '815 Accused Products.

37.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '815 patent, directly or indirectly, and further that the '815 patent is invalid and unenforceable.

## **The '894 Patent**

38.     In its Complaint, ABK alleges that KT has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claims 35-40, and 42 of the '894 patent "in violation of 35 U.S.C. § 271(a) by practicing at least the Exemplary Methods as demonstrated in Exhibits 40-43" (the "'894 Accused Products").

39.     Further in its Complaint, ABK alleges that KT has indirectly infringed and continues to indirectly infringed the '894 patent in violation of 35 U.S.C. § 271(b) and (c) based on conduct allegedly with respect to the '894 Accused Products.

40

40.     KT has denied ABK's claims of infringement, and contends that it has not and does not infringe the '894 patent, directly or indirectly, and further that the '894 patent is invalid and unenforceable.

### Adhesive Body Tape and Related Taping Techniques

41.     Adhesive body tape and related taping techniques have been used to treat plantar fasciitis and other foot injuries for decades.

42.     Prior to the earliest priority date of the Asserted Patents, adhesive body tape and related taping techniques were publicly known and used to provide support for the plantar fascia and to provide pain relief from plantar fasciitis.

43.     Such adhesive body tape and taping techniques are intended to reduce tension and pressure on the plantar fascia, thereby providing both pain relief and opportunity for tissue repair and recovery.

44.     A variety of tapes with different physical and mechanical properties have been known to be useful for such taping techniques.

45.     Dr. Kenzo Kase co-authored a book called "Clinical Therapeutic Applications of the Kinesio Taping® Method" (hereinafter "Kase").

46.     Kase published prior to the earliest priority date of the Asserted Patents.

47.     Kase discloses a specific kinesiology tape, Kinesio Tex® Tape ("Prior Art Kinesio Tex Tape").

48.     Kase discloses that Prior Art Kinesio Tex Tape is designed to allow for a longitudinal stretch of 55-60% of its resting length.

41

49.     Kase discloses that Prior Art Kinesio Tex Tape is not designed to stretch horizontally.

50.     Kase discloses that the thickness of Prior Art Kinesio Tex Tape is approximately the same as the epidermis of the skin.

51.     Kase discloses that Prior Art Kinesio Tex Tape comprises of a polymer elastic strand wrapped by 100% cotton fibers.

52.     Kase discloses that Prior Art Kinesio Tex Tape is adhered to a paper substrate prior to application, with the paper substrate covering adhesive on the underside surface of the tape.

53.     Kase discloses that Prior Art Kinesio Tex Tape is attached to skin using a 100% acrylic adhesive applied in a wave-like pattern to mimic the qualities of the fingerprint on the fingertip.

54.     Kase discloses the use of Prior Art Kinesio Tex Tape in a variety of "corrective techniques" to address a variety of injuries and other painful and/or debilitating conditions affecting different parts of the body.

55.     One such condition is plantar fasciitis, for which Kase discloses a taping technique that involves applying two strips of Prior Art Kinesio Tex Tape to the plantar and arch surfaces of the foot, as shown in the images below.

42











43

56.     Kase states:

"Two strips are applied to the plantar surface of the foot. Strip one, using a fan cut, will be placed along the length of the plantar aponeurosis with full tension removed. On the plantar surface, full tension can be removed with little or no irritation to the skin, due to skin thickness. Strip two, using a mechanical correction technique, will be placed across the mid-arch to assist with metatarsal arch support. It is highly recommended that both strips be used."

57.     Kase also discloses other techniques for supporting the foot with kinesiology tape. For example, as shown in the images below, Kase discloses techniques involving the application of strips of tape to the ball and sides of the foot across the width of the foot.



58.     In 1999, under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 (Video), James Wallis, a co-author of Kase, appears in a video titled "Clinical Kinesio Taping" (the "Prior Art Kinesio Taping Video").

59.     In the Prior Art Kinesio Taping Video, Dr. Wallis demonstrates application of the taping method for treating plantar fasciitis disclosed in Kase.

60.     With respect to the strip of Prior Art Kinesio Tex Tape placed on the plantar surface, Dr. Wallis states that "we are going to take all of the stretch out of the tape" and "we will pull all of the stretch out of the tape" and demonstrates the same.

44

61.     The following still image of the Prior Art Kinesio Taping Video depicts Dr. Wallis "tak[ing] all of the stretch out" of the Prior Art Kinesio Tex Tape placed on the plantar surface of the foot.



62.     With respect to the strip of Prior Art Kinesio Tex Tape placed on the arch surface, Dr. Wallis states in the Prior Art Kinesio Taping Video to "pull across at an angle. . . removing all tension of the tape" and demonstrates the same.

63.     The following still image of the Prior Art Kinesio Taping Video depicts Dr. Wallis "removing all tension" of the Prior Art Kinesio Tex Tape placed on the arch surface of the foot.



45

64.     Since Dr. Kase first developed kinesiology tape in the 1970s, numerous variations of kinesiology tape with different mechanical properties have been created and commercialized in various forms, such as rolls of different lengths.

65.     Kase is prior art to the Asserted Patents.

66.     Prior Art Kinesio Tex Tape is prior art to the Asserted Patents.

67.     Prior Art Kinesio Taping Video is prior art to the Asserted Patents.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent NO. 8,414,511)

68.     KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

69.     The asserted claims of the '511 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

70.     Upon information and belief, one or more asserted claims of each of the '511 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

71.     One or more asserted claims of each of the '511 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

46

72.     One or more asserted claims of each of the '511 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

73.     The subject matter of one or more asserted claims of each of the '511 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

74.     One or more asserted claims of each of the '511 patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

75.     The asserted claims of the '511 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

76.     Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '511 patent is invalid.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Patent NO. 8,414,511)

77.     KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

47

78.   Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '511 patent.

79.   Neither KT, nor customers of the '511 Accused Products, directly infringe claims 1-4, 26, 31-34, and 36 the '511 patent at least because the '511 Accused Products do not practice every element of at least one claim of the '511 patent. To the extent ABK contends that the '511 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '511 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations:

- "stretch-resistant"/"stretch resistant"/"sufficiently stretch-resistant"/"substantially stretch-resistant";

- "device";

- "excessive or damaging tensile stress in a plantar fascia is prevented"/"preventing excessive tensile stress in a plantar fascia"/ "preventing excessive stress on a plantar fascia"/"prevention of excessive tensile stress in a plantar fasciitis";

- elongation to tensile strength (lb/in-width) that is less than 0.9";

- "less than 15% elongation when subjected to a tensile load approximately equivalent to 25 pounds"/"less than 15% elongation when subjected to a tensile load equivalent to 25 pounds"/"less than 15 percent elongation when subjected to a 25 lb tensile load";

- "so that tension forces applied to a plantar fascia are shared with said outer skin surface"/"said adhesive layer and said sole engaging surface to restrict extension and stretching of a plantar fascia"/"such that tension forces applied to the plantar fascia are shared with said device outer skin tissue";

- "extending laterally outward from opposite sides of said stretch-resistant sole member"/"extending laterally outward from a side of said sole member";

48

- "at least one heel strap or heel tab"; and

- "a front strap".

80.     KT has not and does not indirectly infringe the '511 patent. KT does not induce infringement of the '511 patent because there is no direct infringement of the '511 patent.

81.     In addition, KT has not and does not induce infringement of the '511 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

82.     KT does not know the claimed physical and material characteristics of the '511 Accused Products. For example, and without limitation, KT lacked knowledge of whether any alleged "sole member" met at least the following limitations: "stretch-resistant", "sufficiently stretch-resistant", "a ratio of elongation to tensile strength (lb/in-width) that is less than 0.9"; "a uniform thickness of less than 30 mils (0.762 mm)"; and "less than 15% elongation when subjected to a tensile load approximately equivalent to 25 pounds in accordance to ASTM D3759."

83.     KT does not contributorily infringe the '511 patent at least because KT did not know that any '511 Accused Product was especially made or adapted for use in a manner that would infringe the '511 patent when it sold or offered the '511 Accused Product for sale.

84.     In addition, KT does not contributorily infringe the '511 patent because the '511 Accused Products have substantial non-infringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; and the KT Tape product packaging and instructions indicate over 10 distinct applications.

85.     The '511 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

## THIRD COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 8,814,818)

86.      KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

87.     Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '818 patent.

88.     The asserted claims of the '818 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

89.     Upon information and belief, one or more asserted claims of the '818 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

90.     One or more asserted claims of the '818 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

50

91.     One or more asserted claims of the '818 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

92.     Upon information and belief, the subject matter of one or more asserted claims of the '818 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

93.     Upon information and belief, one or more asserted claims of the '818 Patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

94.     The asserted claims of the '818 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

95.     Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '818 Patent is invalid.

51

## FOURTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Pat. No. 8,814,818)

96.     KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

97.     Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '818 patent.

98.     Neither KT, nor customers of the '818 Accused Products, directly infringe any of claims 15, 19, and 20 of the '818 patent at least because the '818 Accused Products do not practice every element any of the asserted claims of the '818 patent. To the extent ABK contends that the '818 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '818 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations:

- "reducing tensile loads and stresses"/ "to reduce fascia stress";
- "having a tensile strength of at least 25 lb/in-width";

- "adhering said heel portion to the skin surfaces along the back and lateral sides of the heel of the foot";

- "wherein adhering said arch support strap comprises adhering transversely over said sole support strap and at least a portion of skin surfaces of opposed sides of a midfoot portion of a longitudinal arch between the ball and the heel of the foot"; and

- "a ratio of elongate-to-tensile strength that is less than 0.9".

99.     KT has not and does not indirectly infringe the '818 patent. KT does not induce infringement of the '818 patent at least because there is no direct infringement of the '818 patent.

100.     In addition, KT has not and does not induce infringement of the '818 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

101.     KT does not know the claimed physical and material characteristics of the '818 Accused Products. For example, and without limitation, KT lacked knowledge of whether any alleged "flexible material" met at least the following limitations: "having a tensile strength of at least 25 lb/in-width"; and "ratio of elongate-to-tensile strength that is less than 0.9 in a longitudinal or transverse dimension."

102.     KT does not contributorily infringe the '818 patent at least because KT did not know that any '818 Accused Product was especially made or adapted for use in a manner that would infringe the '818 patent when it sold or offered the '818 Accused Product for sale.

103.     In addition, KT does not contributorily infringe the '818 patent because the '818 Accused Products have substantial noninfringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; and the KT Tape product packaging and instructions indicate over 10 distinct applications.

104.     The '818 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

## FIFTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Pat. No. 8,834,398)

105.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

106.    Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '398 patent.

107.    The asserted claims of the '398 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

108.    Upon information and belief, one or more asserted claims of the '398 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and
- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

109.    One or more asserted claims of the '398 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology or other adhesive body tape products.

110.    One or more asserted claims of the '398 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

54

111.   Upon information and belief, the subject matter of one or more asserted claims of the '398 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

112.   One or more asserted claims of the '398 patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

113.   The asserted claims of the '398 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the following terms: "a tensile strength of greater than 10 lb./in-width in at least one direction"; and "stretch-resistant."

114.   Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '398 patent is invalid.

## SIXTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Pat. No. 8,834,398)

115.   KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

116.   Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '398 patent.

55

117.    Neither KT, nor customers of the '398 Accused Products, directly infringe any of claims 1, 2, 5, 6, 13-17, and 19 of the '398 patent at least because the '398 Accused Products do not practice every element of any of the asserted claims of the '398 patent. To the extent ABK contends that the '398 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '398 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations:

- "method of self-treatment or prevention"/"method of home or self-treatment for prevention;

- "prevention";

- "the patient adheres"/"the patient removing"/"the patient adhesively attaching"/ "the user adhesively attaches"/"the user adhesively attaching";

- "by the user"/"by a user"/"by the patient";

- "the user removes";

- "that is stretch resistant in at least one direction"; and

- "a ratio of elongation to tensile strength (lb/in-width) of less than 0.9".

118.    KT has not and does not indirectly infringe the '398 patent. KT does not induce infringement of the '398 patent because there is no direct infringement of the '398 patent. In addition, KT did not know of the '398 patent until the service of the Complaint.

119.    In addition, KT has not and does not induce infringement of the '398 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

56

120.    KT does not know the claimed physical and material characteristics of the '398 Accused Products. For example, KT lacked knowledge of whether any alleged "adhesive supports" or any part or portion thereof had "a tensile strength of greater than 10 lb./in-width"; or "a ratio of elongation to tensile strength (lb/in-width) of less than 0.9."

121.    KT does not contributorily infringe the '398 patent at least because KT did not know that any '398 Accused Product was especially made or adapted for use in a manner that would infringe the '398 patent when it sold or offered the '398 Accused Product for sale.

122.    In addition, KT does not contributorily infringe the '398 patent because the '398 Accused Products have substantial noninfringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; the KT Tape product packaging and instructions indicate over 10 distinct applications. In addition, neither the KT Tape Product, nor the KT Tape Product, instructs self-treatment.

123.    The '398 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

## SEVENTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Pat. No. 8,968,229)

124.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

125.    Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '229 patent.

57

126. Claims 12, 13, and 16-18 of the '229 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

127. Claims 12, 13, and 16-18 of the '229 patent are anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

128. One or more asserted claims of each of the '229 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products, including KT Tape products.

129. One or more asserted claims of each of the '229 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

130. Upon information and belief, the subject matter of one or more asserted claims of each of the '229 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

58

131.    Upon information and belief, one or more asserted claims of each of the '229 patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

132.    The asserted claims of the '229 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

133.    Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '229 patent is invalid.

## EIGHTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Pat. No. 8,968,229)

134.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

135.    Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '229 patent.

136.    Neither KT, nor its customers of the '229 Accused Products directly infringe claim 12, 13, and 16 – 18 of the '229 patent at least because the '229 Accused Products do not practice every element of at least one claim of the '229 patent. To the extent ABK contends that the '229 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '229 patent according to ABK's

59

allegations, including for example, and not by way of limitation, not possessing the following claim limitations:

- "preventing excessive tensile stress in a plantar fascia";

- "ratio of elongation-to-tensile strength that is less than 0.9"; and

- "such that said arch support strap, in the adhered condition, functions to provide support to the arch of the user's foot".

137.   KT has not and does not indirectly infringe the '229 patent. KT does not induce infringement of the '229 patent because there is no direct infringement of the '229 patent.

138.   In addition, KT has not and does not induce infringement of the '229 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

139.   KT does not know the claimed physical and material characteristics of the '229 Accused Products. For example, KT lacked knowledge of whether any alleged "arch support strap" had "a ratio of elongation-to-tensile strength that is less than 0.9."

140.   KT does not contributorily infringe the '229 patent at least because KT did not know that any '229 Accused Product was especially made or adapted for use in a manner that would infringe the '229 patent when it sold or offered the '229 Accused Product for sale.

141.   In addition, KT does not contributorily infringe the '229 patent because the '229 Accused Products have substantial non-infringing uses. For example, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; the KT Tape product packaging and instructions indicate over 10 distinct applications.

142.   The '229 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

60

## NINTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Pat. No. 10,212,987)

143.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

144.    Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '987 patent.

145.    The asserted claims of the '987 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

146.    Upon information and belief, one or more asserted claims of the '987 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

147.    One or more asserted claims of the '987 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

148.    One or more asserted claims of the '987 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in

a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

149.   The subject matter of one or more asserted claims of the '987 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

150.   One or more asserted claims of the '987 patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

151.   The asserted claims of the '987 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

152.   Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '987 patent is invalid.

## TENTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Pat. No. 10,212,987)

153.   KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

154.   Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '987 patent.

155.    Neither KT, nor customers of the '987 Accused Products, directly infringe any asserted claim of the '987 patent at least because the '987 Accused Products do not practice at least one element of each of these claims. To the extent ABK contends that the '987 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '987 patent according to ABK's allegations, including for example, and not by way of limitation, not possessing the following claim limitations:

- "a method of manufacturing";

- "acquiring a sheet of material";

- "shaped for interchangeable application to either a right or a left foot";

- "forming said sheet of material into a plurality of separate pre-cut support portions each having substantially straight sides and rounded corners and all of substantially a same size and shape, wherein the forming comprises cutting said sheet of material to form the pre-cut support portions, wherein the pre-cut support portions are sized and shaped for adhesive engagement simultaneously with a sole, a side and a top of a foot of the user";

- "ratio of elongation to tensile strength (lb/in-width) that is less than 0.9";

- "sized and shaped to encircle a foot of the user"; and

- "a tensile strength of greater than 20 lb/in-width".

156.    KT has not and does not indirectly infringe the '987 patent. KT does not induce infringement of the '987 patent at least because there is no direct infringement of the '987 patent.

157.    In addition, KT has not and does not induce infringement of the '987 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

63

158.    KT does not know the claimed physical and material characteristics of the '987 Accused Products. For example, and without limitation, KT lacked knowledge of whether any alleged "support layer" or any part or portion thereof met at least the following limitations: "having a tensile strength greater than 20 lb/in-width"; "ratio of elongation to tensile strength (lb/in-width) that is less than 0.9"; and "thickness of less than 30 mils."

159.    KT does not contributorily infringe the '987 patent at least because KT did not know that any '987 Accused Product was especially made or adapted for use in a manner that would infringe the '987 patent when it sold or offered the '987 Accused Product for sale.

## ELEVENTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 10,299,953)

160.     KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

161.    Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '953 patent.

162.    The asserted claims of the '953 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

163.    Upon information and belief, one or more asserted claims of the '953 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

64

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

164. One or more asserted claims of the '953 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

165. One or more asserted claims of the '953 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

166. Upon information and belief, the subject matter of one or more asserted claims of the '953 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

167. Upon information and belief, one or more asserted claims of the '953 Patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

168. The asserted claims of the '953 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with

reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

169.    Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '953 Patent is invalid.

## TWELFTH COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement of U.S. Pat. No. 10,299,953)

170.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

171.    Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '953 patent.

172.    Neither KT, nor customers of the '953 Accused Products, directly infringe any of claims of the '953 patent at least because the '953 Accused Products do not practice every element any of the asserted claims of the '953 patent. To the extent ABK contends that the '953 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '953 patent.

173.    KT has not and does not indirectly infringe the '953 patent. KT does not induce infringement of the '953 patent at least because there is no direct infringement of the '953 patent.

174.    In addition, KT has not and does not induce infringement of the '953 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

66

175.   KT does not know the claimed physical and material characteristics of the '953 Accused Products.

176.   KT does not contributorily infringe the '953 patent at least because KT did not know that any '953 Accused Product was especially made or adapted for use in a manner that would infringe the '953 patent when it sold or offered the '953 Accused Product for sale.

177.   In addition, KT does not contributorily infringe the '953 patent because the '953 Accused Products have substantial noninfringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; and the KT Tape product packaging and instructions indicate over 10 distinct applications.

178.   The '953 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

## THIRTEENTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 11,096,815)

179.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

180.   Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '815 patent.

181.   The asserted claims of the '815 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

67

182.    Upon information and belief, one or more asserted claims of the '815 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

183.    One or more asserted claims of the '815 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

184.    One or more asserted claims of the '815 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

185.    Upon information and belief, the subject matter of one or more asserted claims of the '815 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

186.    Upon information and belief, one or more asserted claims of the '815 Patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art,

68

including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

187.    The asserted claims of the '815 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

188.    Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '815 Patent is invalid.

### FOURTEENTH COUNTERCLAIM
**(Declaratory Judgment of Non-Infringement of U.S. Pat. No. 11,096,815)**

189.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

190.    Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '815 patent.

191.    Neither KT, nor customers of the '815 Accused Products, directly infringe any of claims of the '815 patent at least because the '815 Accused Products do not practice every element any of the asserted claims of the '815 patent. To the extent ABK contends that the '815 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '815 patent.

69

192.    KT has not and does not indirectly infringe the '815 patent. KT does not induce infringement of the '815 patent at least because there is no direct infringement of the '815 patent.

193.    In addition, KT has not and does not induce infringement of the '815 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

194.    KT does not know the claimed physical and material characteristics of the '815 Accused Products.

195.    KT does not contributorily infringe the '815 patent at least because KT did not know that any '815 Accused Product was especially made or adapted for use in a manner that would infringe the '815 patent when it sold or offered the '815 Accused Product for sale.

196.    In addition, KT does not contributorily infringe the '815 patent because the '815 Accused Products have substantial noninfringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; and the KT Tape product packaging and instructions indicate over 10 distinct applications.

197.    The '815 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

## FIFTEENTH COUNTERCLAIM
### (Declaratory Judgment of Invalidity of U.S. Patent No. 11,206,894)

198.     KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

199.    Based on the filing of this action and at least KT's Second Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to the validity of the '894 patent.

200.    The asserted claims of the '894 patent are invalid for failure to comply with the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

201.    Upon information and belief, one or more asserted claims of the '894 patent is anticipated under 35 U.S.C. § 102(b) by one or more printed publications, including, without limitation:

- "Clinical Therapeutic Applications of the Kinesio Taping® Method" by Kenzo Kase, Jim Wallis, and Tsuyoshi Kase (First Edition 1999 and Second Edition 2003) ("Kase"); and

- "Clinical Kinesio Taping," under the supervision of the Kinesio Taping Association NATABOC Approved Provider #P2293 ("Prior Art Kinesio Taping Video").

202.    One or more asserted claims of the '894 patent is anticipated under 35 U.S.C. § 102(b) by sales and/or offers for sale of prior art products, including without limitation, Kinesio Tex® Tape and/or similar kinesiology tape products, Leukotape, or other adhesive body tape products.

203.    One or more asserted claims of the '894 patent is anticipated under 35 U.S.C. § 102(a) as having been known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

204.    Upon information and belief, the subject matter of one or more asserted claims of the '894 patent is invalid under 35 U.S.C. § 102(g) as having been made in this country by

71

another inventor who had not abandoned, suppressed, or concealed it, prior to Mr. Bushby's alleged invention of the same, including without limitation by Dr. Kenzo Kase and Dr. James Wallis.

205.    Upon information and belief, one or more asserted claims of the '894 Patent is minimally rendered invalid under 35 U.S.C. § 103 as obvious in view of the prior art, including, without limitation, the above-referenced § 102(a), (b), and (g) art alone or in combination.

206.    The asserted claims of the '894 patent are invalid under 35 U.S.C. § 112 at least for failure to satisfy the definiteness requirement. The asserted claims recite several terms that fail to inform the person of ordinary skill in the art about the scope of the claims with reasonable certainty. By way of example only, the asserted claims recite and are rendered indefinite by one or more of the terms identified in KT's Second Affirmative Defense.

207.    Pursuant to 28 U.S.C. § 2201 et seq., KT respectfully requests a declaration from the Court that the '894 Patent is invalid.

**SIXTEENTH COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement of U.S. Pat. No. 11,206,894)**

208.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

209.    Based on the filing of this action and at least KT's First Affirmative Defense, an actual controversy has arisen and presently exists between the parties as to whether KT infringes the '894 patent.

210.    Neither KT, nor customers of the '894 Accused Products, directly infringe any of claims of the '894 patent at least because the '894 Accused Products do not practice every

72

element any of the asserted claims of the '894 patent. To the extent ABK contends that the '894 patent is not anticipated by, or obvious in view of, the prior art summarized above, then the Accused Products cannot infringe the '894 patent.

211.   KT has not and does not indirectly infringe the '894 patent. KT does not induce infringement of the '894 patent at least because there is no direct infringement of the '894 patent.

212.   In addition, KT has not and does not induce infringement of the '894 patent because KT lacked any intent to cause the acts alleged by ABK and did not know and should not have known that the acts alleged by ABK would induce actual infringement.

213.   KT does not know the claimed physical and material characteristics of the '894 Accused Products.

214.   KT does not contributorily infringe the '894 patent at least because KT did not know that any '894 Accused Product was especially made or adapted for use in a manner that would infringe the '894 patent when it sold or offered the '894 Accused Product for sale.

215.   In addition, KT does not contributorily infringe the '894 patent because the '894 Accused Products have substantial noninfringing uses. For example, and without limitation, the KT Tape Product packaging and instructions indicate at least 20 distinct applications; and the KT Tape product packaging and instructions indicate over 10 distinct applications.

216.   The '894 Accused Products are customizable for application according to the imagination and skill of the person applying the tape.

73

## SEVENTEENTH COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of Asserted Patents Due to Inequitable Conduct)

217.    KT incorporates by reference the foregoing Paragraphs as if fully set forth herein.

218.    The Asserted Patents, and the entire family of the Asserted Patents, are unenforceable due to infectious inequitable conduct. Such inequitable conduct is related to ABK's and Donald Bushby's ("Bushby") intent to mislead the United States Patent Office by providing, or directing his attorneys to provide, materially false and/or misleading statements to the Examiner during prosecution of the patent family, including the Asserted Patents, in an ultimate effort to capture prior art, and conventional kinesiology tape products, in particular, in claims issued from later prosecution.

219.    During prosecution of the Asserted Patents, Bushby characterized the alleged invention as an improvement over prior art taping techniques. For example, the background sections of the '511, '398, and '987 patents state:

> Another typical example of treatment for plantar fasciitis includes medical personnel strapping strips of tape to the bottom of an injured foot. Strips of tape are applied at various angles across the bottom of the foot. The tape is difficult to remove from the rolls and bunches up during the taping process. Thus, care must be exercised during the application of the tape to avoid blister-causing wrinkles in the tape and other problems. As the patient walks with the taped foot, the tape works loose and stretches with time. In addition, the tape cannot be effectively applied by the patient to the patient's own foot and requires application by another individual such as a trained medical technician. Consequently, taping the foot is cumbersome, inefficient, and ineffective in preventing excessive stretching of the plantar fascia.

220.    During prosecution of the application that resulted in U.S. Patent No. 8,414,511 ("the '511 patent")—i.e., the first application in the family and to which the Asserted Patents

74

claim priority—the applicant repeatedly characterized the invention as a stretch-resistant device for providing support to the plantar fascia region of the foot so as to sufficiently restrict extension and stretching of the outer skin tissue when adhered thereto such that tension forces applied to the plantar fascia from forces on the arch of the foot which push the bones of the foot downwardly are shared with the device to restrict stretching of, and reduce tension in, the plantar fascia.

221.    Applicant made this representation, for example, in its August 3, 2007 Office Action Response, to distinguish the alleged invention from a resilient foot protector that allowed for increased mobility and adjusted for flexing of the foot during normal walking or running movements without inhibiting foot movement. Applicant characterized the prior art apparatus as teaching "just the opposite" of the alleged invention, "which is to restrict stretching and reduce tension in the plantar fascia." The applicant made similar remarks in a subsequent January 22, 2008 Office Action Response.

222.    In an Office Action dated September 23, 2008 rejecting then-pending claims 45, 72, 75, 76, 78, and 80 in view of the combination of Burgess, Holden, and Desnoyers, the Examiner found that Desnoyers taught a pressure sensitive tape having a ratio of elongation to tensile strength ratio of about 3 to 1.

223.    On December 3, 2008, in response to the September 23, 2008 Office Action, the applicant noted that the then-pending claims at issue included "the limitations of an orthotic foot support device having a thin flexible substantially stretch-resistant sole member having an adhesive layer that restricts stretching and extension of an outer skin tissue to

75

prevent excessive damaging tensile stress in a plantar fascia as well as the sole member having a ration of elongation to tensile strength that is less than .9."

224.    Applicant argued that "Desnoyers fails to disclose, suggest or teach an orthotic device that has a stretch resistant sole member having an adhesive layer that restricts stretching and extension of an outer skin tissue to prevent excessive damaging tensile stress in plantar fascia."

225.    Applicant went on to emphasize in bold and underline: "**<u>Desnoyers actually teaches away from such a device as shown in column 4, lines 67 – 70 These tapes, preferably, have an extensibility at break of 45% or more in the lengthwise direction.</u>**" Further, as disclosed in claim 1 of Desnoyers, column 7, lines 3 - 4, 'tape having a relatively high longitudinal extensibility', Desnoyers clearly teaches away from the presently claimed invention." Applicant consistently made such arguments all the way through appeal to issuance of the '511 patent.

226.    Later, during prosecution of the application that resulted in U.S. Patent No. 8,814,818 ("the '818 patent"), which also claimed priority to the '511 patent, the applicant expanded its criticisms of prior art taping techniques for treating plantar fasciitis, stating in background:

> A common example of non-surgical treatment for plantar fasciitis is medical personnel strapping strips of adhesive tape to the bottom of an injured foot. Strips of tape are applied at various angles across the bottom of the foot. The adhesive tape is sold on rolls and is difficult to remove from the rolls and must be customized for application according to the imagination and skill of the person applying the tape. Typically, the tape cannot be effectively applied by the patient to the patient's own foot and usually requires application by another individual or a trained medical technician. The person applying the tape must cut off a section of the tape from a roll, cut the length of tape further into a therapeutic shape, and apply it to the patient. The cutting, shaping and

76

positioning (tensioning) of the tape piece are left to the complete discretion of the person applying the tape, and it is a trial and error process. Even a trained medical technician must estimate a position, length, shape and degree of tension that will cause a subjective improvement in range of motion and pain relief in the patient. If the tapes are stretchable, this further complicates the application and decreases the likelihood of consistent and repeatable self-application. Care must also be exercised during the application of the tape to avoid blister-causing wrinkles in the tape and other problems. The tape, when subject to the cyclic tensile loads, looses [sic] effectiveness quickly as the materials elongate and the glue layers slip or creep. Multiple layers of material, glued to each other increase the opportunity for each or any of the glue layers to allow slippage as high tensile loads are applied. As the patient walks with the taped foot, the tape often works loose and stretches with time. Consequently, taping the foot is cumbersome, inefficient, and ineffective in preventing excessive stretching of the plantar fascia.

227.    In connection with this background, the applicant identified the prior art Kinesio Tex® product, noting its "140% elasticity":

A popular commercially available high-stretch elastic adhesive tape known as KINESIO TEX™, is manufactured by Kinesio Co., Ltd. of Japan and disclosed in U.S. Pat. Nos. 5,861,348 and 7,902,420. This elastic tape is designed for maximum range of motion and provides 140% elasticity (about same as basic elasticity found in skin and muscles), allowing it to work with the body. It does not limit range of motion and ineffective in preventing excessive stretching of the plantar fascia. It is sold in rolls and also has the same disadvantages and tapping difficulties of other adhesive tapes as discussed above.

228.    The combination of the aforementioned statements, which are merely exemplary, misled and misdirected the evaluation of the patentability of the Asserted Patents, and the entire family of the Asserted Patents. In particular, the combination of the aforementioned statements, which are only exemplary, led the Examiner to ignore and disregard conventional kinesiology tape as material prior art.

229.    Characterizing the invention in terms of its ability to restrict extension and share the tensile strain of the plantar fascia, distinguishing prior art such as Desnoyers as being capable of extension in the lengthwise direction, and noting Kinesio Tex® tape's "140%

77

elasticity" (a reference to stretch in the lengthwise direction) suggest that the pertinent stretch, elongation, and tensile properties of the alleged invention are in the lengthwise direction. The Examiner clearly had this understanding since no office action ever issued against any claim based on conventional kinesiology tape, despite kinesiology tape and Kinesio Tex® tape being cited in the background of the Asserted Patents.

230.    Having intentionally thrown the Examiner off the scent of material prior art by distinguishing conventional kinesiology tape and other orthotics and treatment apparatuses capable of stretching in the lengthwise direction, applicant intentionally acted to capture such prior art, and conventional kinesiology tape, in particular, in claims issued from later prosecution.

231.    Between December 10, 2010, and August 18, 2011, the applicant allowed U.S. Patent Application No. 11/165,304, issued as the '162 patent, to go statutorily abandoned. On August 18, 2011, the applicant responded to a Notice of Non-Compliant Amendment issued on December 10, 2010, and did not, in that response or in any other, inform the Patent Office that the '304 application had gone abandoned.

232.    For example, on February 2, 2012 (nearly 8 years after its first application), in its application for the '818 patent, applicant introduced the notion that the pertinent stretch, elongation, and tensile properties of the alleged invention are not limited to the lengthwise direction, but also relevant in the transverse (width) direction. Never before in prosecution of any patent in family had the applicant mentioned such properties as being pertinent in the transverse (width) direction. Indeed, as discussed above, the applicant had required the

invention to have pertinent stretch, elongation, and tensile properties in the lengthwise direction.

233.    To avoid this requirement, the applicant introduced claim language that states that the pertinent stretch, elongation, and tensile properties of the alleged inventions are not required in the lengthwise direction. For example, claim 1 of the '818 patent includes the language "arch support strap has a ratio of elongate-to-tensile strength that is less than 0.9 in a longitudinal or transverse dimension." Other patents seeking to do the same refer to the pertinent properties as being "in at least one direction."

234.    The applicant's statements in the background section of Asserted Patents, e.g., do not address the stretch, elongation, or tensile properties of conventional kinesiology tape or Kinesio Tex® tape in the transverse direction. The applicant's statement addressing prior art also do not comment on those reference's stretch, elongation, or tensile properties in the transverse (width) direction. Since Kinesio Tex® tape is not designed to stretch in the transverse (width) direction, applicant would have been unable to distinguish it on that basis. 99. Consideration of the elongation, tensile strength, or extensibility in a transverse (width) orientation is counter to how such properties were discussed by the applicant throughout prosecution. The '818 patent specification defines "elongation" as "the state of being elongated or lengthened," which is not an intuitive way to characterize a property of tape in its transverse (width) direction.

235.    The applicant's statements during prosecution of the parent '511 patent characterizing the invention as operating such that "tension forces applied to the plantar fascia from forces on the arch of the foot which push the bones of the foot downwardly are shared

with the device to restrict stretching of, and reduce tension in, the plantar fascia" give no indication that this could be accomplished using conventional kinesiology tape having pertinent stretch, elongation, and tensile properties in its transverse (width) direction.

236.    On the contrary, applicant's remarks made clear that it considered the structure of prior art taping techniques, including conventional kinesiology tape like Kinesio Tex® tape, as being incapable of functioning in the manner recited in applicant's claims.

## EXCEPTIONAL CASE

237.    The allegations of the foregoing paragraphs are repeated and realleged as if fully set forth herein.

238.    For the reasons alleged above, ABK brought this action with wrongful intent or at least gross negligence, and with knowledge that the accused KT products identified in its Complaint do not infringe the Asserted Patents.

239.    For the reasons alleged above, ABK brought this action with wrongful intent or at least gross negligence, and with knowledge that the claims of the Asserted Patents are invalid for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code, including without limitation, for example, §§ 102, 103 and 112.

240.    The lack of merit for ABK's infringement allegations, its assertion of the Asserted Patents known to be invalid, its assertion of Asserted Patents known to be unenforceable due to inequitable conduct, and its continued litigation in light of Octane Fitness, LLC v. ICON Health & Fitness, LLC, 134 S. Ct. 1749 (2014) renders this case

exceptional against ABK pursuant to 35 U.S.C. § 285, thus warranting an award of reasonable attorneys' fees and costs to KT under either 35 U.S.C. § 285 and/or 28 U.S.C. § 1927.

## DEMAND FOR JURY TRIAL

Defendant and Counterclaimant KT hereby demands a trial by jury on all issues so triable, whether they arise from the Complaint or the Counterclaims.

## KT' PRAYER FOR RELIEF AS TO THE
## COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

WHEREFORE, KT respectfully requests that this Court enter final judgment in KT's favor and against ABK by granting the following relief:

a.　Dismissal of the claims in ABK's Complaint with prejudice;

b.　A judgment entered against ABK and in favor of KT;

c.　A declaration that the claims of the '511, '818, '398, '229 '987, '953, '815, and '894 patents are invalid;

d.　A declaration that KT does not infringe, and has not infringed, any valid, enforceable claim of the '511, '818, '398, '229 '987, '953, '815, and '894 patents;

e.　A declaration that the claims of the '511, '818, '398, '229 '987, '953, '815, and '894 patents, and their families, are unenforceable;

f.　A declaration that ABK takes nothing by its Complaint;

g.　Preliminarily and permanently enjoining ABK, its officers, directors, servants, managers, employees, agents, successors, and assignees and all persons in active concert or participation with any of them, from directly or indirectly charging KT

81

with alleged infringement of the '511, '818, '398, '229 '987, '953, '815, and '894 patents;

h.      A finding that this case is an exceptional case under 35 U.S.C. § 285 and an award to KT of its costs and attorneys' fees incurred in this action; and

i.      Further relief as the Court may deem just and proper.


OF COUNSEL:                          /s/ Frederick L. Cottrell, III
                                     Frederick L. Cottrell, III (#2555)
Larry R. Laycock                     Christine D. Haynes (#4697)
Landon T. Laycock                    Richards, Layton & Finger, P.A.
Dentons                              920 N. King Street
3301 North Thanksgiving Way          Wilmington, Delaware 19801
Suite 400                            (302) 651-7700
Lehi, Utah 84043                     cottrell@rlf.com
                                     haynes@rlf.com
Adam B. Beckstrom
Dentons                              *Attorneys for Defendant KT Health, LLC*
111 South Main Street
Suite 2400
Salt Lake City, Utah 84111


Dated: August 22, 2022

82