IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLIED BIOKINETICS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-638-RGA |
| | ) | |
| KT HEALTH, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS INEQUITABLE CONDUCT
<u>COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSE</u>**

                Andrew E. Russell (No. 5382)
                SHAW KELLER LLP
                I.M. Pei Building
                1105 N. Market St., 12th Floor
                Wilmington, DE 19801
                (302) 298-0704
                arussell@shawkeller.com
                *Attorney for Plaintiff*
                *Applied Biokinetics LLC*

Dated: September 6, 2022

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| II. | SUMMARY OF ARGUMENT | 1 |
| | A. Legal Standards for Inequitable Conduct Allegations | 2 |
| | B. Another Court has Dismissed Very Similar Allegations Against ABK | 4 |
| III. | FACTS AND ARGUMENTS | 4 |
| | A. KT Has Accused Inequitable Conduct Without Sufficiently Pleading Underlying Facts | 4 |
| | B. KT Failed to Allege Facts Regarding the "What" Element Required by Exergen | 6 |
| | 1. The "What" Element - Introduction | 6 |
| | 2. The "What" Element – Paragraph by Paragraph | 7 |
| | 3. The "What" Element – Conclusion | 12 |
| IV. | CONCLUSION AND PRAYER | 13 |

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ............................................................................. 3, 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 3

*EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2016 WL 1291757 (D. Del. Mar. 31, 2016) ............................................................................................................................... 3

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ...................... passim

*Impact Engine, Inc. v. Google LLC*, No. 3:19-CV-01301-CAB-BGS, 2020 WL 3414627 (S.D. Cal. June 22, 2020) ............................................................................................... 13

*R2 Invs. LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005) .......................................................... 4

*XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376 (D. Del. 2012) .......................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1

Fed. R. Civ. P. 12(f) ............................................................................................................ 1, 2

Fed. R. Civ. P. 9(b) ............................................................................................................. 1, 2

Plaintiff Applied Biokinetics LLC ("ABK") moves, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), to dismiss Defendant's counterclaim asserting inequitable conduct, and under Rule 12(f) to strike Defendant's affirmative defense of inequitable conduct, because they are legally insufficient, and fail to meet the heightened pleading requirements of Rule 9(b).

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On May 13, 2022, ABK filed suit against Defendant KT Health, LLC ("KT") for patent infringement. On July 13, 2022, KT answered ABK's Complaint (D.I. 8). On August 1, 2022, ABK filed its First Amended Complaint (D.I. 10, "FAC") adding additional patents. On August 21, 2022, KT answered ABK's FAC (D.I. 17, "Ans."), asserting an affirmative defense of inequitable conduct (fifteenth defense, Ans. ¶¶ 38-78) and a counterclaim (seventeenth counterclaim, Ans. ¶¶ 217-236) seeking a declaratory judgment of unenforceability based on alleged inequitable conduct.

## II.    SUMMARY OF ARGUMENT

In almost every patent infringement case, the parties have disagreements regarding both the scope of the invention and the scope of what is disclosed by the prior art. This case is no exception. KT claims that ABK claimed features that were contained in the prior art. While KT is free to raise the defense of invalidity (which this motion does not seek to dismiss or strike), an invalidity defense is not enough to allege fraud. As explained in detail below, while KT makes many broad conclusory allegations, KT fails to plead facts which, taken as true, are sufficient for the Court to reasonably infer any fraudulent misconduct.

KT's inequitable conduct affirmative defense should be stricken as insufficient under Rule 12(f) and also because it does not meet the heightened pleading requirements of Rule 9(b). Similarly, KT's counterclaim for inequitable conduct, which comprises an allegation of fraud or intentional misrepresentation, should be dismissed pursuant to Rule 12(b)(6) for failing to state a

1

claim for which relief can be granted and pursuant to Rule 12(f) for failing to meet the heightened pleading requirements of Rule 9(b). Dismissal of KT's counterclaim and striking of its inequitable conduct affirmative defense will streamline this litigation and avoid unnecessary, costly forays into immaterial matters that have not been sufficiently pleaded.

A.  **Legal Standards for Inequitable Conduct Allegations**

As this Court is aware, the Federal Circuit raised the pleading standard for inequitable conduct due to its acknowledgement that "[l]eft unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system … [because] allegations of inequitable conduct are routinely brought on 'the slenderest grounds ...'" *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1288 (Fed. Cir. 2011) (*en banc*) (finding "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague" … "discourages settlement" … [and] "increases the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost.").

A district court evaluating the sufficiency of a pleading alleging inequitable conduct applies the law of the United States Court of Appeals for the Federal Circuit, rather than the law of the regional circuit court. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Inequitable conduct is a species of fraud so it must be pleaded with particularity under Rule 9(b). *Id.* In order to meet these pleading requirements, the pleader must set forth a particularized factual basis that supports its inequitable conduct defense. *Id*. at 1326-27. To sufficiently plead inequitable conduct, a defendant must "identify the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328. Moreover, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may *reasonably* infer that a *specific individual* (1) knew of the withheld material information or of the falsity of the material misrepresentation,

2

and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29 (emphasis added).

To prevail on an inequitable conduct defense, a defendant must prove by clear and convincing evidence that the patentee "misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense,* 649 F.3d at 1288. "Intent and materiality are separate requirements that must be proved by clear and convincing evidence." *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2016 WL 1291757, *3 (D. Del. Mar. 31, 2016). The Federal Circuit has held that there are heightened standards required to prove both materiality and specific intent. *Therasense,* 649 F.3d at 1289. This heightened standard affects what facts a pleader must plead in order to meet the *Iqbal/Twombly* plausibility standard. Materiality must be shown to be but-for materiality, meaning the "PTO would not have allowed a claim" but for the omission." *Id*. at 1291. Similarly, specific intent now requires a showing that a specific intent to deceive the PTO is the "single most reasonable inference able to be drawn from the evidence." *Id*. at 1290.

Rule 12(b)(6) requires the dismissal of actions that fail to state a claim upon which relief can be granted. Although a complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, the complaint must incorporate "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-

moving party. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truth. *Id.* at 1940. Further, a court is not required to strain to find inferences and should not accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

**B.   Another Court has Dismissed Very Similar Allegations Against ABK**

In *Applied Biokinetics LLC v. CVS Pharmacy, Inc., et al.*, No. 6:21-CV-555 -556 -557 - ADA, D.I. 80 (W.D. Tex. Apr. 21, 2022), the *CVS* court considered substantially similar inequitable conduct allegations against ABK.[1] The *CVS* court granted ABK's motion to dismiss CVS's inequitable conduct allegations. Ex. 1. For very similar reasons, this Court should also grant this motion.

**III.   FACTS AND ARGUMENTS**

**A.   KT Has Accused Inequitable Conduct Without Sufficiently Pleading Underlying Facts**

KT has failed to meet the pleading requirements under *Exergen* because it has pleaded no "underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *See Exergen*, 575 F.3d at 1328-29. In *Exergen*, the Federal Circuit identified three fatal flaws in the defendants' pleading: (1) it failed to name the specific individual associated with the filing or prosecution of the application at issue (the "who" information); (2) it failed to identify to which claims, and which limitations in those claims, the withheld references were relevant (the "what

---

[1] The Texas order considered the inequitable conduct counterclaims and defenses in CVS's original answer *and* its amended answer. *See* Ex. 2 (CVS's original answer) and Ex. 3 (CVS's amended answer).

and where" of the material omissions); and (3) it did not identify which claim limitations or combination thereof were supposedly absent from the information of record ("why" the withheld information was material and not cumulative and "how" an examiner would have used this information). *Id.* at 1329. The *Exergen* court found, in addition to the factual deficiencies, that the facts alleged did not give rise to a reasonable inference of scienter. "The pleading . . . provide[d] no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the patent, knew of the specific information in the [prior art references] that was alleged to be material to the claims of the [patent at issue]." *Id*. at 1330.

As for the "who" element, KT has alleged that Donald Bushby, the inventor of the patents-in-suit, committed inequitable conduct.  Specifically, KT repeatedly identifies only Mr. Bushby and attributes all inequitable conduct allegations to Mr. Bushby.  Ans. ¶¶ 38-40, 43, 48-50, 52-58, 60-66, 68-72, 75, and 77-78.  Accordingly, to adequately plead inequitable conduct, *Exergen* requires that KT must allege facts that support a plausible inference that Mr. Bushby *both knew of* material information *and deliberately withheld or misrepresented it*." *Exergen*, 575 F.3d at 1329 (emphasis added).

KT made substantially the same inequitable conduct allegations in its affirmative defense (¶¶ Ans. 38-78) as it did in its counterclaim (¶¶ Ans. 217-236).  Accordingly, ABK will address the affirmative defense allegations, which are slightly lengthier, and appear to encompass the counterclaim allegations.  KT's counterclaim and affirmative defense of inequitable conduct rise or fall together.  *XpertUniverse, Inc. v. Cisco Sys., Inc*., 868 F. Supp. 2d 376, 379-83 (D. Del. 2012) (assessing the sufficiency of counterclaims and affirmative defenses of inequitable conduct together).

5

**B.     KT Failed to Allege Facts Regarding the "What" Element Required by Exergen**

      **1.   The "What" Element - Introduction**

As a preliminary matter, KT's pleadings are so vague, that it is not clear whether KT is alleging that Mr. Bushby made a false statement or an omission to the patent office. KT uses a "shotgun" approach, alleging that Mr. Bushby provided "materially false and misleading statements" (Ans. ¶38); "material omissions" (Ans. ¶39); and "misrepresentations" (Ans. ¶40). However, the pleaded facts fail to support a plausible inference of any of such allegations.

As explained above, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may *reasonably* infer that a *specific individual* (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29 (emphasis added). Thus, to meet its pleading burden, KT must include sufficient allegations of underlying facts from which a court may reasonably infer that Mr. Bushby (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

Here, KT pleaded no facts which a court may reasonably infer that Mr. Bushby knew of any withheld material information or was aware of some falsity of any alleged material misrepresentation. Furthermore, KT failed to plead facts sufficient to support an inference that there was an omission. That is, KT has failed to identify a single pertinent fact of which Mr. Bushby was aware, that was relevant to the prosecution of the patents, and that Mr. Bushby intentionally withheld from the USPTO. KT also failed to plead facts sufficient to support an inference that there was a false statement made to the USPTO.

## 2. The "What" Element – Paragraph by Paragraph

Analyzing KT's allegations, the first inequitable conduct allegations with any specificity appear where KT alleges that Mr. Bushby "characterized his purported invention … based on … [properties] in the lengthwise direction … [and] omitt[ed] any mention of such properties in the transverse (widthwise) direction." *See* Ans. ¶49. KT fails to identify the "when" of the alleged act, instead alleging that it occurred "throughout the prosecution of the '511 patent". *Id*. This is insufficient to meet the level of specificity for alleging fraud. *See Exergen*, 575 F.3d at 1328 (defendant must "identify the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO."). It also does not meet the "what" element because KT does not plead facts from which the Court could reasonably infer that Mr. Bushby was aware of "properties in the transverse direction" involving the prior art. KT does not identify a single article, a single publication, or a single fact from which the Court could infer that Mr. Bushby was in possession of such information during the prosecution of the patents.

Next, KT alleges that Kenneth A Roddy as "Agent for Applicant" made a "representation" on August 3, 2007 that "characterized" certain prior art as "teaching 'the opposite' of the alleged invention, 'which is to restrict stretching and reduce tension in the plantar fascia.'" Ans. ¶¶55-56. However, KT has failed to plead facts from which a Court can reasonable infer that (1) the statements were attributable to Mr. Bushby, (2) that the statements were false, and (3) that Mr. Bushby knew that the statements were false. Indeed, KT did not even plead sufficient facts regarding the alleged statements.

KT pleads that Mr. Bushby made "similar remarks" on January 22, 2008, "omitting any mention of the prior art's stretch properties in the widthwise direction." Ans. ¶57-58. However, KT has failed to plead facts from which a Court can reasonable infer that (1) the statements were attributable to Mr. Bushby, (2) that Mr. Bushby *was aware of* the "prior art's

stretch properties in the widthwise direction", (3) that the statements were false, and (4) that Mr. Bushby knew that the statements were false.

KT alleges that Glenn L Webb as "Agent for Applicant" stated on December 3, 2008 that the Desnoyers prior art reference "fails to disclose, suggest or teach an orthotic device that has a stretch resistant sole member having an adhesive layer that restricts stretching and extension of an outer skin tissue to prevent excessive damaging tensile stress in plantar fascia" and that "Desnoyers actually teaches away from such a device as shown in column 4, lines 67 – 70 'These tapes, preferably, have an extensibility at break of 45% or more in the lengthwise direction'. Further, as disclosed in claim 1 of Desnoyers, column 7, lines 3 – 4, 'tape having a relatively high longitudinal extensibility', Desnoyers clearly teaches away from the presently claimed invention." Ans. ¶¶60-61. Although KT fails to allege any omission or false statement, KT alleges that the foregoing "illustrates Mr. Bushby's representation to the USPTO that the pertinent stretch properties are in the lengthwise direction" and that "Mr. Bushby consistently made such arguments all the way through appeal to issuance of the '511 patent." Ans. ¶¶62-63. First, there was no "characterization" of Desnoyers as alleged because the information was taken directly from the Desnoyers reference.[2] Second, the applicant *did* refer to Desnoyers' properties in both the crosswise and lengthwise direction. For example, it ABK's pre-appeal brief, ABK stated:

> Desnoyers does not discuss a ratio of elongation to tensile strength, but instead discloses at column 3, lines 20- 26 that the ratio of elongation in the **lengthwise** direction to the elongation in the **crosswise** direction being 10 to 1 and the ratio of tensile strength in the **lengthwise** direction to the tensile strength in the **crosswise** direction to be about 3 to 1. Desnoyers does not discuss any ratio of elongation to tensile strength.

Ex. 6 at pp. 4-5, Pre-appeal brief, dated Sep. 16, 2009 (emphasis added).

---

[2] *See* Ex. 4 ("Desnoyers") at col. 7, ll. 3-4.

8

Furthermore, KT does not mention that (1) the Examiner, having not been persuaded, rejected the claims at issue, and (2) subsequently, the Examiner's interpretation of the prior art was reviewed and rejected by the PTAB:

> *3. Rejection 3: Claims 45, 72, 75, 76, 78, and 80 under 35 U.S.C. §103(a) for unpatentability over Burgess, Holden, and Desnoyers*
>
> The Examiner found that Burgess in view of Holden discloses all limitations of claim 45 except the requirement that the sole member have a ratio of elongation to tensile strength (lb/in-width) that is less than 0.9. Ans. 9. The Examiner further found that Desnoyers describes a pressure sensitive tape made of material having a ratio of elongation to tensile strength of "at least about 3 to 1." *Id*. (quoting Desnoyer, col. 3, 1. 26). The Examiner took the position that Desnoyers's "at least about 3-to-1 ratio" if read in "broadest term" would meet the required limitation. *Id*. Appellant argues that Desnoyers's "at least about 3 to 1" ratio is a tensile-strength-to-tensile strength ratio, not the elongation-to-tensile-strength ratio claimed. App. Br. 36.
>
> We find Appellant's argument persuasive. A fair reading of Desnoyer does not bear out the Examiner's interpretation. We find no disclosure or suggestion in Desnoyer of any "elongation to tensile strength ratio."
>
> We reverse the rejections of claim 73 and 74 for unpatentability over Burgess, Holden, and Desnoyers, and of claims 77 and 79 for unpatentability over Burgess, Holden, Desnoyers, and Huddleston, for similar reasons.

Ex. 7, *Ex parte* Bushby, decision of the Patent Trial and Appeal Board - Appeal 2010-009439, dated Oct. 16, 2012, pp. 13-14.

Contrary to KT's allegations, the claims cited by KT were allowed not because of arguments that ABK made to the Examiner, but because the Examiner's interpretation was rejected by the PTAB. Because the PTAB rejected the Examiner's conclusion, there also could be no materiality involving an alleged statement made to the Examiner regarding Desnoyers.

KT alleged that ABK distinguished prior art, including Desnoyers, by omitting "any mention of the prior art's stretch properties in the widthwise direction. *See* Ans. ¶58. Not so. As explained above, the record reveals that ABK argued to the Examiner properties involving both lengthwise and *crosswise* (widthwise) directions.

9

KT alleges that "Mr. Bushby only provided the elasticity of the Kinesio Tex® tape in the lengthwise direction, omitting any mention of its elasticity in the widthwise direction." Ans. ¶66.  KT is mistaken.  The cited excerpt makes no reference to whether the elasticity is lengthwise or crosswise.  *See* Ans. ¶65.  Moreover, ABK was very careful to disclose all prior art of which it was aware during prosecution.  ABK even disclosed, and the Examiner considered, the product literature for its own tape and for the Kinesio Tex® tape that was cited by KT.  There was nothing misleading, let alone false or fraudulent, regarding ABK's actions.

KT alleges that "Mr. Bushby therefore misrepresented the claimed invention".  Ans. ¶¶70-71.  However, KT fails to specifically allege a statement containing a misrepresentation. *See generally* Ans. ¶¶ 38-69.  KT's legal conclusion is not accepted as true for the purposes of a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1949.

KT alleges that Mr. Bushby "introduced the notion that the pertinent stretch, elongation, and tensile properties of the alleged invention are not limited to the lengthwise direction" on February 2, 2012.  Ans. ¶72.  Not so.  First, the statements to which KT cites do not suggest anything about what features are pertinent, nor do they suggest that any referenced properties are in the lengthwise direction.  Second, the CIP application (Application No. 11/165,304), filed June 23, 2005, states "The materials of the support layer 508 is substantially stretch resistant *in at least one direction*.  By way of example only, the support layer 508 may exhibit less than 15 percent total elongation *in at least one direction* when subjected to a 25lb tensile load under test conditions specified in ASTM (American Society for Testing and Materials) D3759."[3]  The statements "in at least one direction" means that said properties may apply to any one direction. Thus, a reasonable examiner would not have come to the conclusion alleged by KT.

---

[3] *See, e.g.*, Ex. 5, '162 Patent at 12:21-26 (emphasis added).  The '162 Patent is in the priority chain of one or more of the asserted patents.

KT alleges that claims in the application leading to the '818 patent included claims involving properties in the "longitudinal or transverse" dimension. Ans. ¶74. To the extent KT believes that certain claims of the '818 patent were disclosed or suggested by the prior art, KT's complaints are better suited to a motion for summary judgment of invalidity. KT fails to plead facts sufficient to support an allegation involving an intentional omission or a material false statement. Similarly, KT's allegations involving its understanding of the term "elongation" are more appropriate for claim construction briefing. *See* Ans. ¶¶ 75-76. Furthermore, as explained above, the CIP application (Application No. 11/165,304), filed June 23, 2005 states "The materials of the support layer 508 is substantially stretch resistant **in at least one direction**. By way of example only, the support layer 508 may exhibit less than 15 percent total elongation **in at least one direction** when subjected to a 25lb tensile load under test conditions specified in ASTM (American Society for Testing and Materials) D3759."[4] The statements "in at least one direction" means that the stated properties are not limited to the lengthwise direction.

KT also finds a statement in the prosecution of the '511 patent objectionable, alleging that statements describing how an embodiment of the invention works "give no indication that this could be accomplished using [prior art]". Ans. ¶77. However, KT failed to plead facts from which a court could reasonably infer that (1) the prior art *actually could* accomplish the steps, (2) that Mr. Bushby was aware of such facts, (3) that the information was purposefully omitted, and that (4) such omission was attributable to Mr. Bushby. In short, KT pleads virtually no factual basis to support its broad allegations. *See* Ans. ¶78. KT's allegations are conclusions draped in the guise of factual allegations and are not entitled to the presumption of truth.

---

[4] *See, e.g.*, Ex. 5, '162 Patent at 12:21-26 (emphasis added). The '162 Patent is in the priority chain of one or more of the asserted patents.

### 3. The "What" Element – Conclusion

As a threshold issue, to allege a misrepresentation, KT must plead facts that support a finding that any of ABK's alleged statements were actually false. *Exergen,* 575 F.3d at 1327. KT has not done so. KT fails to specifically allege a single false statement. KT's legal conclusion is not accepted as true for the purposes of a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1949. KT has even failed to allege a specific misleading statement. KT fails to state any *factual* misrepresentation or omission – let alone one made with the specific intent to deceive the PTO.

Despite making broad accusations, KT points to nothing in its pleadings from which a court can reasonably infer that anyone involved with the ABK patents knew of anything that was withheld from the PTO, or that there was an affirmative mischaracterization of any reference (all of which were before the examiner). Indeed, upon close examination of KT's pleadings, there is no allegation that ABK made inconsistent arguments, or failed to disclose any prior art. As explained in detail above, none of KT's pleadings provide the requisite factual basis to infer that any specific individual knew of material information and deliberately withheld or misrepresented it.

In sum, the circumstances alleged by KT "do not plausibly suggest any deliberate decision to withhold a known material reference or to make a knowingly false misrepresentation—a necessary predicate for inferring deceptive intent." *Exergen*, 575 F.3d at 1331 (quotations omitted). Consequently, KT's allegation of falsity, which is an essential element of its inequitable conduct claim, does not withstand scrutiny under the *Iqbal/Twombly* plausibility pleading standard. Thus, KT's inequitable conduct claims fall at the first hurdle and should be dismissed.

Even if KT had sufficiently pleaded the required element of falsity, however, KT's claim of inequitable conduct must nevertheless be dismissed because KT has not pleaded sufficient facts to establish that a specific individual (1) had the requisite knowledge of the alleged falsity regarding the time the invention was made or (2) knew of, or had the specific intent to withhold information. *See Exergen*, 575 F.3d at 1329.  KT has not alleged facts that give rise to a reasonable inference of falsity or scienter. Consequently, the inequitable conduct allegations in KT's counterclaim must be dismissed. Similarly, KT's inequitable conduct affirmative defense should be stricken.

Further, because KT's theories fail as a matter of law, no amount of factual elaboration could cure its deficient allegations.  Leave to amend would thus be futile and should be denied. *See Impact Engine, Inc. v. Google LLC*, No. 3:19-CV-01301-CAB-BGS, 2020 WL 3414627, at *2 (S.D. Cal. June 22, 2020) (granting plaintiff's motion to dismiss without leave to amend).

## IV.   CONCLUSION AND PRAYER

During the validity phase of this case, ABK is going to explain what it believes the prior art discloses, and KT is going to explain what it believes the prior art discloses.  It is a near certainty that the parties will not agree on what the prior art discloses.  However, the fact that each side has a different belief regarding the scope of the prior art does not mean that one side or the other is "misrepresenting" the scope of the prior art.  Put another way, this Court is unlikely to tolerate one party accusing the other of committing fraud on the Court based on its explanation of what the prior art covers.  Similarly, during the infringement phase of this case, ABK is going to explain what is believes ABK's invention covers, and KT will do the same.  Again, it is a near certainty that the parties will not agree on the scope of what the invention covers.  But such near-inevitable disagreements do not amount to a perpetration of fraud.  The purpose of raising the

13

pleading standards for inequitable conduct was to stop the same type of assertions being made in the context of patent prosecution.

ABK understands that KT has certain contentions regarding the scope of the prior art, and the scope of ABK's invention.  KT will have the opportunity to articulate its arguments during the invalidity and infringement phases of this case.  However, the facts of this case do not support the need for a separate determination on the issue of inequitable conduct.

WHEREFORE, ABK respectfully requests that the Court GRANT its Motion, strike KT's affirmative defense of inequitable conduct and dismiss KT's counterclaim alleging inequitable conduct. Plaintiff requests that the Court grant it any further relief to which it may show itself justly entitled.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Andrew E. Russell |
|  | Andrew E. Russell (No. 5382) |
|  | SHAW KELLER, LLP |
|  | I.M. Pei Building |
|  | 1105 N. Market St., 12th Floor |
|  | Wilmington, DE 19801 |
|  | (302) 298-0704 |
|  | arussell@shawkeller.com |
|  | *Attorney for Plaintiff* |
| Dated: September 6, 2022 | *Applied Biokinetics LLC* |