## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APPLIED BIOKINETICS LLC,                )
                                        )
                                        )
                    Plaintiff,          )
                                        )
                                        )   C.A. No. 22-638-RGA-JLH
        vs.                             )
                                        )
                                        )
KT HEALTH, LLC,                         )
                                        )
                                        )
        Defendant/Counterclaim Plaintiff. )
                                        )
                                        )

**KT HEALTH, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF STANDING AND, ALTERNATIVELY, FOR A STAY PENDING THE
FEDERAL CIRCUIT'S REVIEW OF OVERLAPPING ISSUES AFFECTING
STANDING IN RELATED CASES**

OF COUNSEL:
Jeanne M. Gills
R. Spencer Montei
Thomas A. James
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for KT Health, LLC*

Dated: November 17, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ii

I.  INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ........................... 4

III.  SUMMARY OF ARGUMENT .................................................................................. 4

IV.  STATEMENT OF FACTS ........................................................................................ 5

  A.  ABK Files Multiple Related Lawsuits Involving The Same
      Patents and KT Health Products ..................................................................... 5

  B.  Judge Albright Dismisses the CVS Lawsuits for Lack of Standing
      and Improper Venue in W.D. Texas ................................................................ 6

  C.  ABK Appeals Judge Albright's Dismissal of the CVS Lawsuits to
      the Federal Circuit .......................................................................................... 8

  D.  Judge Albright Stays the Walmart Lawsuits.................................................... 9

  E.  ABK Sues KT Health in this Lawsuit............................................................... 9

V.  LEGAL STANDARDS ........................................................................................... 10

  A.  Rule 12(b)(1).................................................................................................. 10

  B.  Motions to Stay............................................................................................... 11

VI.  ARGUMENT........................................................................................................... 12

  A.  This Lawsuit Should be Dismissed for Lack of Constitutional
      Standing .......................................................................................................... 13

    1.  ABK Lacks Statutory Standing, Yet Failed To Join MSM ............... 16

  B.  If Not Dismissed, This Lawsuit Should Be Stayed ....................................... 18

    1.  A Stay Promotes Judicial Efficiency ................................................. 18

    2.  A Stay Causes No Prejudice or Unfair Advantage............................ 20

VII.  CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
No. 2:21-cv-172, D.I. 179 (E.D. Tex. Feb. 2, 2022)...............................................19

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014)........................................................................15, 16, 17

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016)........................................................................................10

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990)..................................................................................11

*Enhanced Security Research, LLC v. Cisco Sys., Inc.*,
No. 09-cv-571, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) ..................12

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
357 F.3d 1266 (Fed. Cir. 2004).....................................................................................11

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000).........................................................................................10

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017).........................................................................................10

*Laufer v. T & C Inn, LLC*,
No. 20-cv-3237, 2021 U.S. Dist. LEXIS 211522 (C.D. Ill. Nov. 2, 2021) .............19

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015)..........................................................................................10

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)....................................................................................11

*Monsanto Co. v. Aventis Cropscience SA*,
No. 00-cv-1013-SLR, 2001 U.S. Dist. LEXIS 8891 (D. Del. May 16, 2001)...............3, 12, 19

*Monsanto Co. v. Syngenta Seeds, Inc.*,
No. 04-cv-305, 2006 U.S. Dist. LEXIS 84963 (D. Del. Nov. 8, 2006)...................11

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)..........................................................................11, 13, 16, 17

4894-6650-7326

*Propat Int'l Corp. v. RPost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007)..............................................................................16

*San Rocco Therapeutics, LLC v. Bluebird Bio, Inc.*,
    No. 21-cv-1478-RGA, 2022 U.S. Dist. LEXIS 132269 (D. Del. July 26, 2022) ...................20

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000)..................................................................14, 15, 16

*Uniloc USA, Inc. v. Apple, Inc.*,
    No. 18-cv-358, 2020 U.S. Dist. LEXIS 228257 (N.D. Cal. Dec. 4, 2020)..........................15

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.S.*,
    944 F.3d 870 (Fed. Cir. 1991)..................................................................13, 14, 16

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................................10

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010)..........................................................................10, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)..............................................................................1, 10, 11, 20

4894-6650-7326

## I.    **INTRODUCTION**

Defendant KT Health, LLC ("KT Health") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff Applied Biokinetics LLC's ("ABK") First Amended Complaint for lack of constitutional standing or, alternatively, to stay this lawsuit pending the Federal Circuit's decision in a co-pending appeal.[1] This case involves overlapping legal issues currently on appeal following dismissal for lack of constitutional standing of ABK's related lawsuits against CVS Pharmacy, Inc. ("CVS") involving the same portfolio of patents and accused KT Health products as the instant case. On June 2, 2021, ABK first filed suit against CVS in the Western District of Texas ("CVS Lawsuits[2]"), followed by a second suit on November 4, 2021 against Walmart Inc. ("Walmart Lawsuits[3]"), asserting patents overlapping with those asserted here, and accusing the same KT Health products that are accused here. The Texas court stayed the Walmart Lawsuits following its dismissal of the CVS Lawsuits. The law compels dismissal (or minimally a stay) of this lawsuit as there is no reason it should be allowed to proceed when the others cannot.

Indeed, none of these lawsuits should have been filed in the first place. Not only does ABK lack standing to assert the patents, but ABK also knows these lawsuits lack merit as the asserted patents are neither valid, nor infringed. The Texas court granted CVS' motion to dismiss due to lack of standing and improper venue, and based its holding on a contract between ABK and Mueller Sports Medicine, Inc. ("MSM") that vested MSM with all the exclusionary and substantial rights in the asserted patents.[4] The Texas court held that ABK "has a contract dispute with [MSM]

---

[1] *Applied Biokinetics LLC v. CVS Pharmacy, Inc.*, Case Nos. 2022-2038 (lead); 2022-2039; 2022-2040 (Fed. Cir.) ("CVS Appeal"). Citations are to the lead case docket.

[2] *Applied Biokinetics LLC v. CVS Pharmacy, Inc.*, Case Nos. 6:21-cv-555-ADA; 6:21-cv-556-ADA; and 6:21-cv-557-ADA (W.D. Tex.). Citations are to the -555 case docket.

[3] *Applied Biokinetics LLC v. Walmart Inc.*, Case Nos. 6:21-cv-1132-ADA; 6:21-cv-1133-ADA; and 6:21-cv-1134-ADA (W.D. Tex.). Citations are to the -1132 case docket.

[4] Ex. 1 (CVS Lawsuits, D.I. 40, CVS' Motion to Dismiss).

regarding who has the right to enforce the asserted patents, and according to that contract, that dispute must be heard in Wisconsin."[5] As sworn declarations submitted by MSM in Texas confirm, ABK and MSM dispute the scope of the asserted patents, with MSM testifying that it "does not believe that ABK's infringement claims . . . have merit."[6] Despite MSM's unfettered right to initiate infringement claims, it clearly declined to bring any of the pending lawsuits, and indeed opposed ABK's efforts to involuntarily join MSM as a plaintiff to the CVS Lawsuits.[7] Rather than suing MSM in Wisconsin to resolve their contractual dispute, ABK sued KT Health here on May 13, 2022—a mere ten days after the May 3, 2022 motion hearing in Texas, where Judge Albright stated his intent to dismiss the CVS Lawsuits for lack of standing.[8] Dismissal of the CVS Lawsuits occurred on July 7, 2022. Thereafter, Walmart likewise moved to dismiss its cases on August 12, 2022, leading Judge Albright to grant a stay of those cases in the interests of "judicial efficiency," pending final resolution of ABK's appeal in the CVS Lawsuits.[9]

Dismissal here is further warranted given ABK's withholding of key facts from this lawsuit. None of ABK's Complaints mention MSM's status as effective patentee or the ongoing dispute regarding the Agreement or validity and enforceability of the asserted patents.[10]

---

[5] Ex. 2 (CVS Lawsuits, D.I. 91, July 7, 2022 Order) at 1.

[6] Ex. 3 (CVS Lawsuits, D.I. 54-1, Mueller Decl.) at ¶8; *see also* Ex. 4 (CVS Lawsuits, D.I. 69, Second Mueller Decl.), at ¶¶4-5.

[7] CVS Lawsuits, D.I. 57, MSM Opposition to ABK's Motion to Realign.

[8] Ex. 5 (CVS Lawsuits, D.I. 89, May 3, 2022 Hearing Transcript) at 25.

[9] Ex. 6 (Walmart Lawsuits, D.I. 25, August 16, 2022 Order). Walmart's Motion principally directed the Texas court to CVS' Motion to Dismiss, as Walmart apparently did not have the underlying evidence and declarations in the Walmart Lawsuits.

[10] ABK represented in all of its original Complaints that it owns all right, title, and interest in the asserted patents. *See, e.g.*, D.I. 1, 10 (Complaints); CVS Lawsuits, D.I. 1 at ¶¶18, 28); Walmart Lawsuits, D.I. 1 at ¶¶17, 27). In the CVS Lawsuits, ABK recognized MSM as the effective patentee if the Agreement was found to be in force by attempting to add MSM as an involuntary plaintiff in response to CVS' Motion to Dismiss. *See* CVS Lawsuits, D.I. 54, MSM Opposition to ABK's Motion to Realign. On appeal, ABK states it did so "to ensure no party was potentially prejudiced by MSM's absence." KT Health denies that ABK has constitutional standing, but the same

Importantly, ABK failed to inform this Court of its pending appeal following dismissal of the CVS Lawsuits. Even if ABK contends that it somehow has standing in this lawsuit (notwithstanding the Texas ruling), it cannot ignore that the Federal Circuit is currently considering overlapping legal issues that clearly implicate standing and related issues in this lawsuit. ABK itself confirmed this overlap in its appellate brief as ABK's own "Statement of the Issues" is consistent with what the Federal Circuit will be reviewing given the Texas ruling and the parties' respective motions below:

- Does ABK have constitutional standing to sue third parties?[11] This question necessarily implicates MSM's exclusionary rights under the "right to sue" provision of the Agreement and whether the "consent" provision (*i.e.*, MSM's discretionary right to grant ABK a secondary ability to sue in its absence) confers an exclusionary right to ABK or is illusory (as CVS argued in Texas).

- Does MSM have substantial rights in the asserted patents such that even if ABK has constitutional standing, MSM is still a necessary party?[12]

- Can MSM be forced to join a lawsuit involving the asserted patents against its will (or where its interests diverge with ABK)?[13]

- Given that the Agreement's forum selection clause requires ABK to sue MSM in Wisconsin, can ABK circumvent this clause by bringing a lawsuit against a third party and involuntarily joining MSM as a plaintiff?[14]

- If standing is ultimately premised on whether the Agreement is in force (given ABK's argument in Texas that the Agreement was terminated), can a court outside of Wisconsin decide that question?[15]

Where the Federal Circuit is reviewing issues that affect a pending case, courts in this district have held that the pending case should minimally be stayed. *See, e.g.*, *Monsanto Co. v. Aventis Cropscience SA*, No. 00-cv-1013-SLR, 2001 U.S. Dist. LEXIS 8891, at *18-19 (D. Del. May 16, 2001).

---

prudential concern would exist in this lawsuit, yet ABK never joined MSM.

[11] Ex. 7 (CVS Appeal, D.I. 24, ABK Appellate Brief), at 24-40.

[12] *Id.* at 41-45.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 9-15.

## II.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On May 13, 2022, ABK filed suit against KT Health for alleged patent infringement. D.I.
1. On July 13, 2022, KT Health answered ABK's Complaint. D.I. 8. On August 1, 2022, ABK
filed its First Amended Complaint adding additional patents. D.I. 10. On August 21, 2022, KT
Health answered ABK's Amended Complaint. D.I. 17. KT Health's Answers to both Complaints
included Affirmative Defenses and Counterclaims relating to, *inter alia*, non-infringement,
invalidity, and unenforceability of the asserted patents. D.I. 8; D.I. 17. On September 6, 2022,
ABK moved to dismiss KT Health's affirmative defense and counterclaim of inequitable conduct.
D.I. 20. That motion is fully briefed and pending. The deadline to file motions to join other parties
expired November 7, 2022. D.I. 13. Discovery is still in its very early stages and is not scheduled
to complete until on or before June 9, 2023. *Id.* Trial date is set for June 17, 2024. *Id.*

## III.   SUMMARY OF ARGUMENT

The Court should dismiss ABK's Complaint for lack of constitutional standing for the same
foundational reason Judge Albright dismissed it in Texas: there is a contractual dispute between
ABK and MSM that governs whether ABK has constitutional standing to sue third parties and that
dispute must be heard in Wisconsin. The threshold question of whether that Agreement is still in
force remains, and the Federal Circuit's potential resolution of that question (or affirmance of the
Texas court and directing ABK to pursue resolution with MSM in Wisconsin) necessarily impacts
this case and who might be deemed the proper plaintiff(s). Moreover, even if the Federal Circuit
determines that the Agreement (if in force) conferred some exclusionary right to ABK, the Federal
Circuit must still resolve other related issues, including whether MSM must be joined to any ABK
lawsuit asserting the patents, whether joinder can occur against MSM's will or where ABK's and
MSM's interests diverge, and whether a court outside of Wisconsin can resolve any underlying

-4-

4894-6650-7326

dispute between ABK and Mueller over the scope of their rights and obligations under the Agreement. This Court would likewise have to resolve those same legal issues. As the court in *Monsanto* observed, courts should avoid spending judicial resources addressing issues already under review by other courts. *See id.* Because the Federal Circuit's decision in ABK's appeal of the CVS Lawsuits will resolve or significantly affect the standing issues presented here (as ABK's own briefing illustrates), the law minimally compels a stay.

## IV.   STATEMENT OF FACTS

### A.   ABK Files Multiple Related Lawsuits Involving The Same Patents and KT Health Products

Over the last two years, ABK has filed multiple related lawsuits for alleged patent infringement involving overlapping patents and the same accused KT Health kinesiology tape products (as shown below) and with each defendant denying ABK's allegations and asserting defenses and counterclaims of non-infringement, invalidity, and unenforceability.

| Lawsuit | Asserted U.S. Patent Nos. | Accused Products[16] |
|---|---|---|
| *ABK v. KT Health* (D. Del.) | 8,414,511; 8,814,818; 8,834,398; 8,968,229; 10,212,987; 10,299,953; 11,096,815; and 11,206,894 | • KT Tape (original) <br> • KT Tape Gentle <br> • KT Tape Pro <br> • KT Tape Pro Extreme |
| *ABK v. CVS* (W.D. Tex.) | 8,414,511; 8,814,818; 8,834,398; 8,968,229; 10,212,987; 10,299,953; [and 8,216,162] | • KT Tape (original) <br> • KT Tape Gentle <br> • KT Tape Pro <br> • KT Tape Pro Extreme <br><br> (among others) |
| *ABK v. Walmart* (W.D. Tex.) | 8,414,511; 8,814,818; 8,834,398; 8,968,229; 10,212,987; 10,299,953; and 11,096,815 | • KT Tape (original) <br> • KT Tape Gentle <br> • KT Tape Pro <br> • KT Tape Pro Extreme |

---

[16] *Compare* D.I. 10, at ¶13, *with* CVS Lawsuits, D.I. 33, at ¶24, *and* Walmart Lawsuits, D.I. 1, at ¶15. Even though this lawsuit involves one patent not asserted in the CVS or Walmart Lawsuits, the Agreement controls assertion of any of these related patents. Ex. 8 (Agreement) at 1 and Exhibit A.

| Lawsuit | Asserted U.S. Patent Nos. | Accused Products[16] |
|---|---|---|
| | | (among others) |

### B. Judge Albright Dismisses the CVS Lawsuits for Lack of Standing and Improper Venue in W.D. Texas

During discovery in the CVS Lawsuits, counsel for CVS (newly appointed counsel for KT Health here) learned that ABK had given MSM an exclusive license to ABK's entire patent portfolio that made MSM the effective patentee (the "Agreement"). Ex. 8 at 1 and Ex. A; *see also* Ex. 9 (1st Amendment); Ex. 10 (2nd Amendment). Under that Agreement, MSM acquired "a worldwide exclusive license . . ., including (without limitation) any and all rights to directly or indirectly make, use, sell, distribute, promote, and import" kinesiology tape products. *Id.* at 1. The Agreement also gave MSM the exclusive right to freely commence infringement lawsuits (and recover monetary damages), and the exclusive right to sublicense. Ex. 10 at 1. ABK did not retain any right to make, use, sell, distribute, promote, and import products, did not retain a right to sublicense, and did not retain a right to freely commence infringement lawsuits. *See* Ex. 8 at 1, 5 (requiring ABK to sell off existing inventory); Ex. 4 at ¶3. Ex. 10 at 1. The rights ABK did retain were *de minimis*. For example, ABK may receive royalty payments from MSM and ABK may veto sublicenses, but only if reasonable to do so. *See* Ex. 8 at 1, 2. In addition, if MSM does not commence a lawsuit within 120-days' notice of suspected infringement, ABK may only commence such a lawsuit if MSM provides consent. *See* Ex. 10 at 1.

Upon learning of the Agreement (including key communications among ABK and MSM relating to the same), CVS moved to dismiss the CVS Lawsuits, *inter alia*, for lack of constitutional standing, arguing that the Agreement divested ABK of all exclusionary rights in the asserted patents. CVS Lawsuits, D.I. 32, CVS First Motion to Dismiss.[17] In response, ABK rushed to file

---

[17] CVS' Motions to Dismiss in each of the CVS Lawsuits were identical.

Amended Complaints seeking to add MSM as a defendant (CVS Lawsuits, D.I. 33), followed by motions to realign MSM as an involuntary plaintiff (CVS Lawsuits, D.I. 38). CVS filed new motions to dismiss the CVS Lawsuits for lack of constitutional standing, improper venue, and improper joinder. Ex. 1; Ex. 11 (CVS Lawsuits, D.I. 65, CVS Reply ISO Second Motion to Dismiss); Ex. 12 (CVS Lawsuits, D.I. 40-1, Declaration of J. Gills); Ex. 13 (CVS Lawsuits, D.I. 67, Second Declaration of J. Gills). CVS argued that ABK transferred all exclusionary rights in the asserted patents to MSM and accordingly lacked constitutional standing. Ex. 1 at 16-17. Since constitutional standing cannot be cured, CVS argued that ABK's attempt to join MSM as an involuntary plaintiff was futile. *Id.* at 16-18; *see also* Ex. 14 (CVS Lawsuits, D.I. 54, CVS Opposition to Motion to Realign) at 6-16. MSM, for its part, also opposed realignment. CVS Lawsuits, D.I. 57, MSM Opposition to Motion to Realign.

CVS and MSM also moved to dismiss for improper venue. Ex. 1 at 25-26; CVS Lawsuits, D.I. 56, MSM Motion to Dismiss. The Agreement includes a forum selection clause that requires any lawsuit brought by ABK against MSM to be filed in Wisconsin. Ex. 8 at 5. Opposing CVS' motion to dismiss, ABK made the pre-textual argument that MSM had breached the Agreement by failing to mark its products with ABK's patent numbers and ABK had accordingly terminated the Agreement and was now free to file lawsuits on its own, anywhere, including against MSM in Texas. CVS Lawsuits, D.I. 58, ABK Opposition to CVS Motion to Dismiss, at 3-15. CVS argued that ABK and MSM disputed whether the Agreement was in force and, pursuant to the forum selection clause, that dispute must be decided by a court in Wisconsin prior to any lawsuit brought by ABK against CVS anywhere else.

On May 3, 2022, the Texas court held a hearing on CVS' motion to dismiss and agreed with CVS and MSM, dismissing the CVS Lawsuits without prejudice. Ex. 5 at 25. The court stated:

"The Court is going to dismiss this case without prejudice to it being refiled after the case has been resolved by the Wisconsin court." *Id.* ABK asked the court to stay the case, rather than dismiss it, in order for it to "resolve this with [MSM]." *Id.* at 25-26. The court agreed to do so, and stayed the case for 60 days. *Id.* For reasons discussed *supra*, CVS disagreed that the standing issues could be resolved with MSM, but nonetheless, 60 days came and went. On July 5, 2022, counsel for CVS emailed the court seeking dismissal (Ex. 15 (CVS Lawsuits, 7/5/22 email)); and on July 7, 2022, the court formally dismissed the case, concluding based on the Agreement that ABK lacked standing and venue was not proper in Texas (Ex. 2 at 1). The court concluded:

> After considering the arguments and briefing, the Court decided to dismiss the [CVS Lawsuits] for lack of standing and improper venue. Plaintiff Applied Biokinetics LLC has a contract dispute with Mueller Sports Medicine, Inc. regarding who has the right to enforce the asserted patents in this case, and according to the contract, that dispute must be heard in Wisconsin.

*Id.* To date, ABK has not sought resolution of the MSM contractual dispute in Wisconsin.

**C.      ABK Appeals Judge Albright's Dismissal of the CVS Lawsuits to the Federal Circuit**

ABK appealed dismissal of the CVS Lawsuits to the Federal Circuit. Consistent with what KT Health contends are overlapping legal issues for this Court (*see supra* discussion at Section IV.B), in its appellant brief, ABK presents the following issues for review:

(1)      Did the district court err in ruling that ABK did not have standing to bring the patent infringement lawsuit against CVS?

(2)      Did the district court err in ruling that venue was improper?

(3)      Did the district court err in dismissing the case instead of realigning MSM as co-plaintiff with ABK? and

(4)      Did the district court err by not using ancillary jurisdiction to resolve disputes involving the ABK-MSM license agreement?

Ex. 7 at 1-2 (abbreviated for clarity). ABK admits in its appellate brief that the Federal Circuit's decision will affect the Walmart Lawsuits (*id.* at xi), but never mentions this lawsuit.

-8-

### D.    Judge Albright Stays the Walmart Lawsuits

Following Judge Albright's dismissal of the CVS Lawsuits, ABK and Walmart jointly moved to stay the Walmart Lawsuits, noting the case "involve[d] many of the same patents and some of the same issues as the CVS [Lawsuits]." Walmart Lawsuits, D.I. 21, Joint Motion to Stay, at 1. The court granted the stay. Upon its conclusion, Walmart filed a motion to dismiss the Walmart Lawsuits for lack of standing, improper joinder, and improper venue, expressly incorporating the arguments, law, and exhibits from the CVS Lawsuits by reference as Walmart apparently did not have access to the same evidence relied upon by CVS. *See* Ex. 16 (Walmart Lawsuits, D.I. 24, Walmart Motion to Dismiss), at 4. Shortly after Walmart filed the Motion to Dismiss, the Texas court stayed the Walmart Lawsuits in the interest of judicial efficiency, noting the complete identity of dismissal arguments in both cases and the pending Federal Circuit appeal. *See* Ex. 6. The court ordered the parties to submit a joint scheduling order within 10 days of final resolution of the CVS Lawsuits. *Id.*

### E.    ABK Sues KT Health in this Lawsuit

Rather than taking heed from the Texas court and seeking resolution of its contractual dispute with MSM in Wisconsin, ABK sued KT Health in this lawsuit on May 13, 2022 (within ten days of Judge Albright first concluding there was a dispute as to whether ABK or MSM had the right to enforce the patents at issue and directing ABK to settle that issue in Wisconsin). D.I. 10. Indeed, in its Complaints in this lawsuit, ABK alleges that it "is the owner of all right, title, and interest in and to" the patents "with full right to bring suit to enforce the patent, including the right to recover for past infringement damages and the right to recover future royalties, damages, and income." D.I. 1 at ¶¶17, 27, 37, 47, and 57; D.I. 10 at ¶¶17, 27, 37, 47, 57, 64, 74, and 83. ABK's operative Complaint in this lawsuit fails to disclose the disputed Agreement, Judge

Albright's dismissal of the CVS Lawsuits for lack of standing, or the pending Federal Circuit appeal. *See generally* D.I. 10.

## V.   **LEGAL STANDARDS**

### A.   **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may be treated as either a facial or actual challenge to the court's subject matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the court accepts the well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The party asserting subject matter jurisdiction bears "the burden of proof that jurisdiction does in fact exist." *Id.*

Constitutional standing to sue is a threshold requirement in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). The Patent Act "does not limit the right to sue to only patent owners and assignees" and those with "all substantial rights in the patent," but extends the right to sue to an "exclusive licensee." *Id.* at 1264. An exclusive licensee with "exclusionary rights," but lacking all substantial rights, "cannot bring suit

-10-

in its own name," though "it may still bring suit along with the patentee." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (citation omitted). In contrast, "without granting [licensee] the right to enforce the patent, either explicitly or impliedly, the document conveys no more than a bare license" that does not entitle the licensee to bring suit, even if the patentee joins. *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004). A defendant may move to dismiss suits for lack of constitutional standing pursuant to Rule 12(b)(1). *Lone Star*, 925 F.3d at 1235.

Statutory, formerly referred to as "prudential" standing, considers whether the party or parties owning all substantial rights in the patents are properly joined to the lawsuit. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467 (1926)). Statutory standing ensures that complete relief can be accorded between the parties to the lawsuit and that the defendant cannot be subjected to multiple lawsuits from separate parties each possessing exclusionary rights in the patents at issue. *Morrow*, 499 F.3d at 1340.

### B.  Motions to Stay

Motions to stay invoke the broad discretionary powers of the court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, No. 04-cv-305, 2006 U.S. Dist. LEXIS 84963, at *3 (D. Del. Nov. 8, 2006) (citing *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986)). Three factors inform the court's analysis: (1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete

and a trial date set. *Enhanced Security Research, LLC v. Cisco Sys., Inc.*, No. 09-cv-571, 2010 U.S. Dist. LEXIS 63789, at *3 (D. Del. June 25, 2010) (citing *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, No. 01-cv-557, 2003 U.S. Dist. LEXIS 27397, at *1 (D. Del. Jan. 30, 2003)).

Where issues are being reviewed in co-pending proceedings that resolve or affect issues being considered by a district court, judicial efficiency often warrants a stay. For example, in *Monsanto Co. v. Aventis Cropscience SA*, the district court stated:

> In the case at bar, the question of standing—whether the plaintiffs hold "all substantial rights" in the patents at issue—can only be determined by tracking said rights through the complex series of business transactions described above. To do so is a daunting task in itself. Where, as here, the business transactions are still subject to interpretation in other judicial and arbitral proceedings, the task becomes nugatory and a waste of judicial resources. To put the point differently, when the parties themselves are seeking guidance from other sources as to their respective rights to the patents based on their business agreements, there simply is no principled way for this court, at this juncture, to resolve the issue of standing with any finality. Therefore, the case shall be stayed pending the outcome of the Federal Circuit appeal and the arbitration proceeding.

2001 U.S. Dist. LEXIS 8891 at *18-19.

## VI.   ARGUMENT

The Court should dismiss ABK's Complaint for lack of standing for the same reason Judge Albright dismissed it in Texas: there is a contractual dispute between ABK and MSM that governs whether ABK has standing to sue third parties and that dispute must be first heard in Wisconsin. To the extent the Court declines to dismiss, it should minimally stay the lawsuit pending resolution of ABK's appeal before the Federal Circuit. As the court in *Monsanto* observed, courts should avoid spending judicial resources addressing issues already under review by other courts. *See id.* The Federal Circuit's decision in ABK's appeal of the CVS Lawsuits will resolve or significantly affect the standing issues presented here.

**A.      This Lawsuit Should be Dismissed for Lack of Constitutional Standing**

ABK lacks constitutional standing because it divested itself of all exclusionary rights via the Agreement with MSM. There are three general categories of plaintiffs when analyzing constitutional standing: (1) those that can sue in their own name alone; (2) those that can sue as long as the patent owner is joined in the suit; and (3) those that cannot even participate as a party to an infringement suit. *Morrow*, 449 F.3d at 1339-41. Here, ABK is a third category plaintiff because it holds less than all substantial rights to the patent and lacks exclusionary rights under the patent statutes to meet the injury in fact requirement. ABK is not injured by KT Health making, using, or selling the patented invention because ABK does not hold the necessary exclusionary rights.

The Agreement gave MSM "a worldwide exclusive license . . ., including (without limitation) any and all rights to directly or indirectly make, use, sell, distribute, promote, and import" kinesiology tape products. Ex. 8 at 1. The Agreement also gave MSM the exclusive right to freely commence infringement lawsuits and the exclusive right to sublicense. Ex. 10 at 1. The grant of this exclusive license, exclusive right to freely commence infringement lawsuits, and exclusive right to sublicense constitutes a transfer of all exclusionary rights to MSM. This is precisely what Judge Albright concluded when he dismissed the CVS Lawsuits in Texas. Ex. 2 at 1.

This result is consistent with Federal Circuit case law. For example, in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.S.*, the Federal Circuit determined that an agreement transferring certain patent rights from Markowsky to Vaupel constituted an assignment of all exclusionary rights in the patent at issue. 944 F.3d 870 (Fed. Cir. 1991). Markowsky retained: (1) a veto right on sublicensing by Vaupel; (2) the right to obtain patents on the invention in other

countries; (3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and (4) a right to receive infringement damages. *Id.* at 875. The Federal Circuit stated that it found "particularly dispositive" the provision that transferred the right to sue for infringement of the patent at issue subject only to the obligation to inform Markowsky. *Id.* The Federal Circuit further found the retained veto right "a minor derogation from the grant of rights . . . [that] did not substantially interfere with the full use by Vaupel of the exclusive rights under the patents." *Id.* Here, ABK has less rights than Markowsky. ABK can only withhold consent to MSM's sublicensing if it is reasonable to do so (a "minor derogation from the grant of rights"), MSM's right to sue for infringement is free any obligation to inform ABK; and ABK has no right to MSM's infringement damages.

This result is also consistent with the Federal Circuit's decision in *Speedplay, Inc. v. Bebop, Inc.*, where an agreement transferring certain patent rights constituted an assignment of all substantial rights in the patents at issue. 211 F.3d 1245 (Fed. Cir. 2000). The agreement effected a transfer from Bryne and Zoumaras to Speedplay of the exclusive right to manufacture, have manufactured, distribute, market, use, and sell products covered by the patents. *Id.* at 1250. Bryne and Zoumaras retained the option to initiate legal action against an alleged infringer in their own name, but only if Speedplay failed to bring such a suit within three months. *Id.* at 1251. The agreement did not grant Bryne and Zoumaras the right to participate in an infringement action brought by Speedplay, nor did it limit Speedplay's management of any such action. *Id.* The Federal Circuit determined that Bryne's and Zoumaras' right to sue an infringer was illusory because Speedplay could render that right nugatory by granting the alleged infringer a royalty-free sublicense, and concluded that Speedplay "controls enforcement of [the patent at issue] for all practical purposes." *Id.* Finally, while Speedplay could not assign its interest without consent from

Bryne and Zoumaras, the agreement provided that such consent "shall not be withheld unreasonably," a provision the Federal Circuit deemed "not significantly restrictive of the scope of Speedplay's patent rights." *Id.* at 1252. ABK has less rights than Bryne and Zoumaras. Here, ABK's right to seek permission to sue an infringer is effective only after MSM is given first opportunity to do so (within a 120-day period), and only then if MSM grants ABK permission. Bryne and Zoumaras did not need permission at the end of their 90-day waiting period.

Further, like Bryne and Zoumaras' secondary right to sue, ABK's secondary right to sue is illusory because MSM could render that right nugatory by granting the alleged infringer a sublicense. *Cf. WiAV*, 631 F.3d at 1266 ("[A]n exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it."); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1343, 1347 (Fed. Cir. 2014) ("That same logic applies even if it is the patent owner holding the nonexclusive right and the licensee hold[ing] the exclusionary rights."); *Uniloc USA, Inc. v. Apple, Inc.*, No. 18-cv-358, 2020 U.S. Dist. LEXIS 228257, at *19-20 (N.D. Cal. Dec. 4, 2020) ("A patent licensee's right to grant an unencumbered sublicense renders even the patent owner's right to exclude (and, thus, to sue) illusory." (citing *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010))). Moreover, ABK does not have the right to grant a sublicense and, accordingly, if ABK commenced a lawsuit and desired to settle it on terms including a license, ABK would need to request that MSM grant the sublicense (since MSM's license is exclusive and retains the sole right to sublicense). MSM could deny this request. Thus, like in *Speedplay*, MSM "controls the enforcement of [the patent at issue] for all practical purposes," not ABK.

Since ABK lacks exclusionary rights in the asserted patents by virtue of the Agreement, there is no injury in fact from KT Health's alleged infringement and ABK accordingly lacks

constitutional standing. This defect cannot be cured now and accordingly dismissal is appropriate. *Vaupel*, 944 F.3d at 875 (affirming dismissal for lack of constitutional standing); *Speedplay*, 211 F.3d at 1250-52 (same); *Azure Networks*, 771 F.3d at 1343, 1347 (finding patent owner lacked exclusionary rights because it reserved no right to control, veto, or be notified of litigation activities and lacked all substantial rights despite retaining rights to practice the patents, to receive a portion of enforcement proceeds, and terminate the license); *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193-94 (Fed. Cir. 2007) (stating constitutional standing cannot be cured). At a minimum, a stay is warranted for reasons discussed *supra* because the Federal Circuit is implicitly looking at this issue.

### 1.    ABK Lacks Statutory Standing, Yet Failed To Join MSM

KT Health maintains that ABK lacks constitutional standing but assuming *arguendo* ABK could establish some exclusionary right, ABK would still lack statutory standing to sue in its own name because it holds less than "all substantial rights" in the asserted patents (and is thus at best a second category plaintiff). The statutory standing analysis is only necessary if ABK is determined to have "some" exclusionary rights and accordingly can show injury in fact sufficient for constitutional standing (which it does not have for reasons discussed *infra*). If ABK is determined to have some exclusionary rights, but not all substantial rights to a patent, it can only bring suit with the owner of the patent—which, in this case, is MSM. *See Morrow*, 499 F.3d at 1340 (citing *Indep. Wireless Tel. Co.*, 269 U.S. at 467).

As an initial matter, the Federal Circuit in *Vaupel* and *Speedplay* determined that the transfers at issue in those cases not only divested the licensor of all exclusionary rights, they also divested the licensor of "all substantial rights." Because ABK retained, at best, similar, but in fact fewer, rights than Markowsky (in *Vaupel*) and Bryne and Zoumaras (in *Speedplay*), it likewise

divested itself of "all substantial rights" in the patents in issue. Thus, the constitutional and statutory standing analyses in this case merge and dismissal is required because ABK is indisputably a category 3 plaintiff (those that cannot even participate as a party to an infringement suit). *Morr*ow, 449 F.3d at 1339-41.

However, if the Court decides to consider statutory standing because ABK retained some exclusionary right, ABK still transferred all substantial rights to MSM such that MSM is the effective patentee. For example, MSM's exclusive license to directly or indirectly make, use, sell, distribute, promote, and import kinesiology tape products is substantial. Ex. 8 at 1. MSM's rights to sue infringers and sublicense are substantial. *Id.*; Ex. 10 at 1. Further, MSM's right to seek patent protection on its inventions that relate to the licensed products at its "sole discretion and initiative" and "right to apply for any such patent protection as [MSM] may choose to pursue" are substantial. Ex. 8 at 5. Because the rights to use, enforce, settle, sublicense, and prosecute inventions relating to the patents belong to MSM and are all substantial rights within the bundle of rights contemplated by the patent statutes, MSM is the effective patentee and is therefore an indispensable party in this lawsuit. This is only underscored by the fact that ABK lacks any right directly or indirectly make, use, sell, distribute, promote, and import kinesiology tape products, sublicense, or sue without permission. *Cf. Azure Networks*, 771 F.3d at 1342-47.

Assuming *arguendo* ABK has an exclusionary right, the prudential concern is obvious—without joining MSM to the lawsuit, KT Health could be subject to two separate lawsuits involving the same patents—this lawsuit from ABK and a separate lawsuit from MSM. Statutory standing bars that result and would mandate joinder of MSM to this lawsuit. Since MSM is not joined and the deadline to join has passed, this lawsuit must be dismissed as complete relief is not possible. Again, at a minimum, a stay is warranted for the reasons discussed *supra* because the Federal

Circuit is implicitly looking at this issue.

### B.    If Not Dismissed, This Lawsuit Should Be Stayed

If the Court decides not to dismiss this lawsuit for lack of standing, KT Health respectfully requests that it be stayed while the Federal Circuit decides overlapping issues in the CVS Lawsuits. Indeed, the Walmart Lawsuits are presently stayed because ABK, Walmart, and Judge Albright all acknowledged the complete identity of standing and venue issues in both cases and the pending Federal Circuit appeal made a stay appropriate in the interests of judicial efficiency. *See* Ex. 6. This case should be stayed for the same reason. Further, there is no prejudice to ABK or unfair advantage to KT Health.

### 1.    A Stay Promotes Judicial Efficiency

The threshold issue being decided by the Federal Circuit in the appeal of the CVS Lawsuits is whether the Agreement is in force between ABK and MSM and, relatedly, what patent rights exist between them, and whether those questions must be decided by a court in Wisconsin or may be decided by a court in Texas (or elsewhere). If the Agreement is in force, then the next question the Federal Circuit will decide is whether ABK has any exclusionary rights in the asserted patents. In the Federal Circuit appeal, ABK argues that even if the Agreement is in force, it has exclusionary rights by virtue of, *e.g.*, its allegedly retained right to sue third parties. Ex. 7 at 23-27. But as discussed *infra*, whether or ABK has a right to sue and whether that right is an exclusionary right (or is illusory) is disputed. The Federal Circuit will decide this question and its decision will resolve or minimally guide this Court's determination of the identical issue here.

If the Federal Circuit concludes that ABK has an exclusionary right, it will next decide whether MSM has all substantial rights such that it is the patentee and, therefore, a necessary party in any lawsuit involving the asserted patents. In the Federal Circuit appeal, ABK argues that MSM

does not have any substantial rights in the asserted patents but, if MSM does, it can and should be involuntarily joined as co-plaintiff in the CVS Lawsuits. *Id.* at 30-45. As discussed *infra*, whether or not MSM has substantial rights in the asserted patents is disputed. The Federal Circuit will decide this question and its decision will resolve or minimally guide this Court's determination of the identical issue here.

The Federal Circuit will also decide whether MSM can be joined as an involuntarily co-plaintiff in the CVS Lawsuits. Since ABK did not join MSM to this lawsuit (and the time has passed to do so), MSM's voluntary or involuntary status as a co-plaintiff is not at issue here. But to the extent ABK rushes to seek to join MSM like it did in the CVS Lawsuits, the Federal Circuit will decide whether MSM can be voluntarily or involuntarily joined as a co-plaintiff (including when MSM and ABK have divergent interests and beliefs as to validity and infringement) and its decision would resolve or minimally guide this Court's determination of the identical issue here.

In sum, since the Federal Circuit will resolve or minimally guide this Court's analysis of the Agreement and whether MSM has all, or minimally most, exclusionary rights in the patents at issue, and further whether MSM has substantial rights in the asserted patents, staying this lawsuit to allow resolution or guidance on these issues will promote judicial efficiency. Other courts in this district and elsewhere have reached a similar conclusion in similar circumstances. *See Monsanto*, 2001 U.S. Dist. LEXIS 8891 at *18-19 (staying lawsuit while Federal Circuit decided overlapping issues); Ex. 17, *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-172, D.I. 179 at 2 (E.D. Tex. Feb. 2, 2022) ("Given that it is reasonably likely that the Federal Circuit will issue precedential guidance related to the venue issues in the above-captioned cases . . . the Court finds that a short stay . . . is warranted so as to gain the benefit of such guidance."); *Laufer v. T & C Inn, LLC*, No. 20-cv-3237, 2021 U.S. Dist. LEXIS 211522, at *2-3 (C.D. Ill. Nov. 2,

-19-

2021) (staying case where pending appeal would provide clarity and guidance on plaintiff's standing and decrease the parties' and court's time spent on the case); *San Rocco Therapeutics, LLC v. Bluebird Bio, Inc.*, No. 21-cv-1478-RGA, 2022 U.S. Dist. LEXIS 132269, at *16-17 (D. Del. July 26, 2022) (addressing Rule 12(b)(1) motion to dismiss for lack of constitutional standing and "stay[ing] the case pending resolution of the threshold interpretive disputes pertaining to the license and release provisions" in compelled arbitration).

### 2.      A Stay Causes No Prejudice or Unfair Advantage

A stay will not cause ABK to suffer undue prejudice from any delay or allow KT Health to gain a tactical advantage over ABK. As it stands, a federal district court told ABK that its status as patentee and its ability to enforce the patents at issue is disputed and must be addressed by a Wisconsin court prior to commencing its lawsuit against CVS and there is no reason that holding does not apply equally to ABK's lawsuit here. Allowing the Federal Circuit and/or a Wisconsin court to resolve that issue before permitting ABK to pursue this lawsuit does not prejudice ABK at all, rather it ensures that ABK has the rights it intends to assert before causing the parties and the Court to spend significant time and resources addressing merits issues. The contrasting prejudice to KT Health to defend a case against a party without standing is severe. A stay will also simplify the issues for trial because there will be no trial if the case is dismissed. This case is also in its infancy, discovery is ongoing, and trial is not scheduled until June 17, 2024. *See* D.I. 13.

### VII.   <u>CONCLUSION</u>

For the reasons provided herein, KT Health respectfully requests the Court enter an order dismissing this lawsuit without prejudice for lack of constitutional standing or, in the alternative, staying this lawsuit until the Federal Circuit decides overlapping issues on appeal.

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

OF COUNSEL:
Jeanne M. Gills
R. Spencer Montei
Thomas A. James
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654

***Attorneys for KT Health, LLC***

Dated: November 17, 2022

-21-

4894-6650-7326