**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| APPLIED BIOKINETICS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-638-RGA-JLH |
| | ) | |
| KT HEALTH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION

This is a patent case filed by Plaintiff Applied Biokinetics LLC ("ABK") against Defendant KT Health, LLC ("KT Health"). Presently before the Court are two pending motions. First is ABK's Motion to Dismiss Inequitable Conduct Counterclaim and Strike Affirmative Defense (D.I. 19). Next is KT Health's Motion to Dismiss for Lack of Standing and, Alternatively[,] for a Stay Pending the Federal Circuit's Review of Overlapping Issues Affecting Standing in Related Cases (D.I. 41). I recommend GRANTING ABK's motion to dismiss the inequitable conduct counterclaim and defense. I recommend DENYING KT Health's motion to dismiss or stay.

## I.     BACKGROUND

ABK alleges that it "is the owner of all right, title, and interest in" eight patents: U.S. Patent Nos. 8,414,511 (the "'511 patent"), 8,814,818 (the "'818 patent"), 8,834,398, 8,968,229, 10,212,987, 10,299,953, 11,096,815, and 11,206,894 (collectively, the "Asserted Patents"). (D.I. 10 ¶¶ 17, 27, 37, 47, 57, 64, 74, 83.) The Asserted Patents are generally directed to adhesive systems that are applied to the bottom of the foot to treat plantar fasciitis. ABK alleges that various kinesiology tape products sold by KT Health infringe certain claims of the Asserted Patents. (*Id.*

¶¶ 12–15.)

A.      **ABK/Mueller License Agreement**

Back in 2014, ABK entered into a License Agreement ("Agreement") with a company called Mueller Sports Medicine, Inc. ("Mueller"). (*See* D.I. 43, Ex. 8.) The Agreement states that ABK grants Mueller a "worldwide exclusive license" to "make, use, sell, distribute, promote, and import the Licensed Products" covered by certain of ABK's patents, which include the Asserted Patents in this case. (*Id.* at 1, 6.) The Agreement defines the "Licensed Products" as "plantar fasciitis products whose manufacture, use, sales, distribution, promotion or importation (if performed in the U.S.) would infringe the Patent Rights . . . ." (*Id.* at 1.) The Agreement provides that Mueller will pay ABK a royalty on each Licensed Product sold. (*Id.* at 2.) The Agreement further states that "[n]otwithstanding the exclusive rights granted to [Mueller] under this Agreement, [ABK] shall be permitted to sell its existing inventory of FASCIADERM-branded product, but not to replenish inventory . . ., until August 30, 2014 . . . ." (*Id.* at 5.)

Particularly relevant to the present dispute are the following two provisions in the Agreement (as amended in 2019) regarding the rights of the parties:

> **Grant of rights.** . . . [Mueller] may sublicense the rights granted, provided that [Mueller] shall obtain the written consent of [ABK] to do so (such consent shall not be unreasonably withheld) and terms to [ABK] shall be as favorable as in this Agreement.
>
> . . .
>
> **Infringement by Third Parties.** In the event that either party learns of possible infringements of the Patent Rights . . . that party shall notify the other in writing of the possible infringements . . . . [Mueller] shall have the right to commence lawsuits against third persons arising from infringement of the Licensed Rights . . . .
>
> In the event that [Mueller] does not commence a lawsuit against an alleged infringer . . . within one hundred twenty (120) days of notification by [ABK], [ABK] may commence enforcement action

2

> (including without limitation filing a lawsuit) . . . .  [ABK] shall obtain the written consent of [Mueller] to do so and such consent shall not be unreasonably withheld.
>
> [ABK] will cooperate fully and in good faith with [Mueller] for the purpose of securing and preserving [Mueller's] rights under this Agreement.  Any recovery (including, but not limited to, a judgment, settlement or licensing agreement included as resolution of an infringement dispute) shall be retained by the party commencing the lawsuit.

(*Id.*, Ex. 8 at 1; Ex. 10.)

The Agreement also contains forum selection clauses, which provide that "any litigation between the parties that identifies Mueller as plaintiff" is subject to the exclusive jurisdiction of specified courts in Texas and that "any litigation between the parties that identifies ABK as plaintiff" is subject to the exclusive jurisdiction of specified courts in Wisconsin.  (*Id.*, Ex. 8 at 5.)

## B.   Texas Lawsuits

In 2021, ABK sued retailers CVS Pharmacy, Inc. ("CVS") and Walmart Inc. ("Walmart") in separate actions in the Western District of Texas.  ABK alleged that CVS and Walmart infringed some of ABK's patents—including some of the patents asserted in this case—by, among other things, selling certain kinesiology tape—including the same KT Health products accused in this case. *See, e.g., Applied Biokinetics LLC v. CVS Pharmacy, Inc.*, Nos. 21-555-ADA, 21-556-ADA, 21-557-ADA (W.D. Tex.); *Applied Biokinetics LLC v. Walmart Inc.*, Nos. 21-1132-ADA, 21-1133-ADA, 21-1134-ADA (W.D. Tex.).

After obtaining a copy of the ABK/Mueller Agreement in discovery, CVS moved to dismiss ABK's infringement claims for, among other things, lack of constitutional standing.  CVS argued that the Agreement divested ABK of its rights in the patents such that it could not bring a lawsuit against CVS.  Subsequently, ABK moved to amend to join Mueller as a defendant, and then it moved to "realign" Mueller as an involuntary plaintiff.  CVS again moved to dismiss.

On July 7, 2022, Judge Albright granted CVS's motion to dismiss in a one-page opinion, stating, in relevant part:

> [T]he Court [has] decided to dismiss the above-captioned cases for lack of standing and improper venue.
>
> Plaintiff Applied Biokinetics LLC has a contract dispute with Mueller Sports Medicine, Inc. regarding who has the right to enforce the asserted patents in this case, and according to the contract, that dispute must be heard in Wisconsin. The Court then stayed the case to allow Plaintiff Applied Biokinetics LLC to negotiate with Mueller Sports Medicine, Inc. to cure the issue of standing. The stay has now expired, and the contract dispute remains.
>
> It is hereby ORDERED that this case is dismissed. Applied Biokinetics LLC has leave to re-file this case when and if it cures standing, such as through negotiations with Mueller Sports Medicine, Inc. or through a favorable decision from a Court in Wisconsin.

(D.I. 42, Ex. 2 (No. 21-555, D.I. 91 (W.D. Tex. July 7, 2022)).) ABK appealed the dismissal to the Federal Circuit, and that appeal is pending. *See Applied Biokinetics LLC v. CVS Pharmacy, Inc.*, No. 22-2038 (Fed. Cir., last docket entry March 10, 2023).

Walmart then moved to dismiss the claims against it for lack of standing, incorporating the arguments made by CVS. On August 16, 2022, Judge Albright stayed the Walmart case "[i]n the interest of judicial efficiency" because Walmart's "arguments are now on appeal at the Federal Circuit." (D.I. 42, Ex. 6 (No. 21-1132, D.I. 25 (W.D. Tex. Aug. 16, 2022)).)

C.     **This Litigation**

On May 13, 2022, after oral argument on CVS's motion to dismiss in Texas, ABK filed this action. (D.I. 1.) ABK filed a First Amended Complaint ("FAC") on August 1, 2022. (D.I. 10.) As noted above, the FAC alleges that ABK "is the owner of all right, title, and interest in [the Asserted Patents] by assignment." (*Id.* ¶¶ 17, 27, 37, 47, 57, 64, 74, 83.)

On August 22, 2022, KT Health answered and asserted various defenses and counterclaims.

4

(D.I. 17.)  The "Fifteenth Defense" and the "Seventeenth Counterclaim" allege that the inventor of the Asserted Patents, Mr. Bushby, committed inequitable conduct during prosecution of the '511 and '818 patents, which renders unenforceable all of the Asserted Patents "due to infectious inequitable conduct." (*Id.* ¶¶ 37–78 (affirmative defense), 217–236 (counterclaim).[1])  The relevant allegations are discussed in more detail below.

On September 6, 2022, ABK moved to strike the inequitable conduct defense and dismiss the related counterclaim under Federal Rules of Civil Procedure 12(b)(6) and 12(f).  (D.I. 19.) That motion is fully briefed.  (D.I. 20, 27, 28.)  Then, on November 17, 2022, KT Health moved to dismiss the case under Rule 12(b)(1) for lack of standing or, in the alternative, to stay the case pending the Federal Circuit's decision in the CVS appeal.  (D.I. 41.)  That motion is also fully briefed.  (D.I. 42, 43, 48, 49, 54, 62.)  The Court heard oral argument on both motions on April 12, 2023.  ("Tr. ___.")

## II.    DISCUSSION

### A.    ABK's Motion to Dismiss the Inequitable Conduct Counterclaim and Defense

ABK contends that KT Health's inequitable conduct defense and counterclaim should be dismissed because KT Health fails to plausibly allege that the inventor, Mr. Bushby, made a false statement or material omission to the patent office.  I agree with ABK.

Inequitable conduct must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b), and "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  "[A] pleading of inequitable conduct

---

[1] The inequitable conduct allegations in KT Health's fifteenth defense and its seventeenth counterclaim are substantially the same, but the defense sets forth more background information. The Court will cite primarily to the allegations in the defense.

under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328–29.  An affirmative defense of inequitable conduct must also satisfy Rule 9(b).  Thus, a "counterclaim and affirmative defense for inequitable conduct rise or fall together."  *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441-RGA, 2014 WL 2622240, at *1 n.2 (D. Del. June 11, 2014) (quoting *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013)).

KT Health's theory of inequitable conduct can be summarized as follows.  During prosecution of the '511 patent, the inventor distinguished certain prior art tape products on the basis that they didn't meet certain claim limitations in the then-pending claims because the prior art products were too stretchy in the lengthwise direction.  (D.I. 17 ¶¶ 43–44, 49, 55–61.)  The inventor's arguments, according to KT Health, "put [the examiner] off the trail" of considering those prior art tape products as material.  (Tr. 45; *see also* D.I. 17 ¶¶ 67, 70, 71 (alleging that the inventor's arguments about prior art properties in the lengthwise direction "misdirected," "deceived," and "thr[ew] the Examiner off the scent of material prior art")).  Then, during the prosecution of the '818 patent years later, the inventor pursued broader claims that called for non-stretchiness in the lengthwise "*or*" widthwise direction.  (D.I. 17 ¶ 71–72, 74.)  Having already been "thrown . . . off the scent of material prior art" by the inventor's statements in the earlier '511 patent prosecution that certain prior art tape was too stretchy in the lengthwise direction, the examiner allowed the broader claims notwithstanding the fact that prior art tape was not stretchy in the widthwise direction.  (*Id.* ¶ 71.)

The problem with that theory, as pleaded, is that KT Health fails to sufficiently identify a

false statement or omission.  KT Health does not contend that any of the inventor's statements about the prior art's stretchiness in the lengthwise direction were false, nor does it identify any other statement alleged to be false.  (D.I. 27; Tr. 36–46.[2])

Nor does KT Health plausibly allege a material omission.  KT Health alleges that, during the prosecution of the '511 patent, the inventor only told the examiner about the stretchiness of the prior art in the lengthwise direction and "omit[ed] any mention" of the prior art's properties in the widthwise direction.  (D.I. 17 ¶ 66.)  But KT Health does not plead that the inventor knew about widthwise properties of the prior art that were not discernable from the references already before the examiner, nor does KT Health allege or explain how widthwise stretchiness had anything to do with the claims then pending during the prosecution of the '511 patent.

I am unaware of any post-*Exergen* case (binding or otherwise) where a court has permitted an inequitable conduct claim to go forward on a "thrown off the trail" theory without a plausible allegation that the inventor made a false statement or material omission.  During oral argument, I asked KT Health for its best case supporting its theory and it cited to *Southco, Inc. v. Penn Engineering & Manufacturing Corp.*, 768 F. Supp. 2d 715 (D. Del. 2011).  But that case is distinguishable because the applicant there was alleged to have made a knowingly false representation about the qualities of the prior art.  There is no such allegation here.

If KT Health has a factual basis to believe that the inventor knew and withheld information about the prior art's widthwise stretchiness properties at a time when such properties were material to the patentability of the claims, it can attempt to amend its pleading.  KT Health's current

---

[2] In its Answering Brief, KT Health appeared to concede that it did not allege a misrepresentation.  (*See, e.g.*, D.I. 27 at 14 (arguing that "the Court can infer that Mr. Bushby knew of and withheld material information from the USPTO regardless of whether anything he affirmatively stated was *technically* false.").)  Then, at oral argument, KT Health said it was alleging a misrepresentation, but it failed to identify one.  (Tr. 36–46.)

pleading fails to plausibly allege such a theory.[3]

For these reasons, I recommend that KT Health's inequitable conduct defense and counterclaim be dismissed without prejudice.

**B.     KT Health's Motion to Dismiss for Lack of Standing or, in the Alternative, to Stay**

**1.     Motion to Dismiss**

KT Health moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because "there is a contractual dispute between ABK and [Mueller] that governs whether ABK has constitutional standing to sue third parties and that dispute must be heard in Wisconsin." (D.I. 42 at 4, 12.) I disagree.

Pursuant to 35 U.S.C. § 281, a "patentee," which includes an assignee, can sue for patent infringement. 35 U.S.C. § 281; *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.,* 925 F.3d 1225, 1229 (Fed. Cir. 2019) ("The term patentee includes the original patentee (whether the inventor or original assignee) and 'successors in title.'" (citing 35 U.S.C. § 100(d))). The Federal Circuit has "made clear that whether one qualifies as a patentee under 35 U.S.C. § 281 is a statutory prerequisite to the right to relief in a patent infringement action, but does not implicate the district court's subject matter jurisdiction." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020); *Lone Star*, 925 F.3d at 1235–36 ("We therefore firmly bring ourselves into accord with *Lexmark* [*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)] and our sister circuits by concluding that whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction."). Rather, "[a]s long as a plaintiff

---

[3] The district court in Texas likewise dismissed CVS's inequitable conduct allegations against ABK, which were very similar, for the reason that the allegations did not state a clear theory of misrepresentation or omission. *Applied Biokinetics LLC v. CVS Pharmacy, Inc.*, No. 21-555-ADA, 2022 WL 1192467 (W.D. Tex. Apr. 21, 2022)

alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." *Schwendimann*, 959 F.3d at 1071.

In this case, the FAC alleges that ABK is the assignee of the Asserted Patents.  (*Id.* ¶¶ 17, 27, 37, 47, 57, 64, 74, 83.)  That allegation "support[s] an arguable case or controversy under the Patent Act."  *Schwendimann*, 959 F.3d at 1071.  The Court thus has subject matter jurisdiction to adjudicate the matter.  I recommend that KT Health's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) be denied.[4]

### 2.   Motion to Stay

KT Health alternatively requests that the Court stay the case pending the Federal Circuit's resolution of ABK's appeal in the CVS case.  I recommend that the Court decline to stay the case.

A district court has broad discretion to grant or deny a motion to stay.  *Apotex, Inc. v. Senju Pharma Co.*, 921 F. Supp. 2d 308, 313 (D. Del. 2013).  In exercising their discretion, courts in this district generally consider (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would cause the non-movant to

---

[4] KT Health's brief also suggests that ABK lacks so-called "statutory standing."  (*See, e.g.*, D.I. 42 at 16–18.)  However, "so-called 'statutory standing' defects do not implicate a court's subject matter jurisdiction."  *Lone Star*, 925 F.3d at 1235 ("[M]otions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1).").  ABK filed its motion under Rule 12(b)(1) for lack of subject matter jurisdiction, so I will not further address its statutory standing arguments.  (Had KT Health filed its motion under Rule 12(b)(6), the Court would have been obligated to accept as true ABK's allegation that it is the assignee of the Asserted Patents, and the Court would not have considered KT Health's extra-complaint evidence (such as the ABK/Mueller Agreement).)

KT Health's briefing also appears to suggest that the case should be dismissed because Mueller is a required party.  (D.I. 54 at 3.)  In its reply brief, and at oral argument, KT Health also pointed to Federal Rule of Civil Procedure 19 and argued that "[ABK] cannot be a sole plaintiff under any set of circumstances."  (Tr. 8–9.)  But, again, KT Health has only moved for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).  The Court has subject matter jurisdiction for the reasons already explained.

suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *Id.* at 313–14.

I am skeptical that the Federal Circuit's resolution of the appeal in the CVS case will significantly simplify the issues in this case. I have concluded that the allegations in the FAC in this case support the Court's exercise of subject matter jurisdiction. To the extent the Federal Circuit says something relevant to the issue of statutory standing or ABK's and Mueller's respective rights under the Agreement, the Court can incorporate the Federal Circuit's guidance at the appropriate time, as summary judgment motions will not be filed until April 2024, and trial is currently scheduled for September 2024. (D.I. 96.) The other stay considerations don't move the needle one way or the other.

As I am unconvinced that efficiency will ultimately be served by a stay, I recommend denying KT Health's request to stay.

## IV.   CONCLUSION

For the reasons set forth above, I recommend the following:

1.      ABK's Motion to Dismiss the Inequitable Conduct Counterclaim and Defense (D.I. 19) should be GRANTED. The inequitable conduct counterclaim and defense should be dismissed without prejudice. KT Health should be given leave to amend to fix the deficiencies within 14 days.

2.      KT Health's Motion to Dismiss for Lack of Standing and, Alternatively[,] for a Stay Pending the Federal Circuit's Review of Overlapping Issues Affecting Standing in Related Cases (D.I. 41) should be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any

objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 14, 2022, a copy of which can be found on the Court's website.

Dated: August 31, 2023

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE