IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLIED BIOKINETICS LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | C.A. No. 22-638-RGA-JLH |
| | ) | |
| KT HEALTH, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF APPLIED BIOKINETICS LLC'S OBJECTIONS TO**
**THE MAGISTRATE JUDGE'S DECEMBER 21, 2023 ORDER**


Dated: January 2, 2024

Respectfully submitted,
*/s/ David Holloway*
David Holloway (DE #5762)
AMBURN LAW
1504 N. Broom St., Suite 1
Wilmington, DE 19806
302-285-9485
dholloway@amburnlaw.com

*Attorney for Plaintiff,*
*Applied Biokinetics LLC*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   STANDARD OF REVIEW ...............................................................................1

III.  FACTUAL BACKGROUND .............................................................................1

IV.  ARGUMENT .....................................................................................................3

      A.   Dr. Gagnon's Invalidity Theories Not Previously Disclosed Should Be Stricken .........3

      B.   The Excessive Number of Dr. Gagnon's Invalidity Theories Should Be Stricken.........7

      C.   Striking the Opinions is Appropriate Under the *Pennypack* Factors ...........................9

      D.   After Striking the Paragraphs Requested by ABK, Plenty of Alleged Invalidity Grounds Would Remain .............................................9

      E.   ABK's Need to Serve a Rebuttal Report Does Not Reduce its Hardship ....................9

V.   CONCLUSION ................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2019 WL 4917894 (D. Del. Apr. 23, 2019)........................................................................................................................... 1

*ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ................................................................ 6

*Changzhou Kaidi Elec. Co., Ltd. v. Okin America, Inc.*, 2015 WL 2213694 (D. Md. 2015) . 6

*Chervon (HK) Ltd., et al. v. One World Techs., Inc., et al.*, C.A. No. 19-1293-GBW, 2023 WL 2372938 (D. Del. Mar. 6, 2023)............................................................................ 4

*Finjan, Inc v. Rapid7, Inc*, C.A. 18-1519-MN, 2020 WL 5798545 (D. Del. Sept. 29, 2020) 9

*Galderma Labs, L.P. v. Amneal Pharms., LLC*, C.A. No. 16-207-LPS, 2018 WL 508876 (D. Del. Jan. 22, 2018) ............................................................................................... 9

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, C.A. No. 18-462 (MN), 2019 WL 10248462 (D. Del. Apr. 18, 2019) ................................................................................ 4

*Global Session LP v. Travelocity.com LP*, C.A. No. 6:10-cv-671-LED-JDL,  D.I. 415 (E.D. Tex. Nov. 14, 2012) .................................................................................................. 8

*Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS (D. Del. July 28, 2015) ................. 7, 8

*IOEngine, LLC v. Roku, Inc.*, C.A. No. 6:21-cv-1296-ADA-DTG, D.I. 282 (W.D. Tex. Aug. 22, 2023)................................................................................................................. 8

*IPA Techs. Inc. v. Amazon.com, Inc.*, C.A. No. 16-1266-RGA, D.I. 172 (D. Del. Sep. 24, 2020)........................................................................................................................... 8

*Leo Pharma A/S, et al. v. Actavis Labs. UT Inc.*, C.A. No. 16-430-JFB-SRF (D. Del. Mar. 29, 2018)....................................................................................................................7, 8

*Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 4782062 (E.D. Tex. Dec.8, 2009) ........... 6

*Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983 (Fed. Cir. 2015) . 4

*Tessera, Inc. et al. v. Broadcom Corp.*, C.A. No. 1-16-cv-00380 (D. Del. Oct. 27. 2016) .... 8

*TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA, 2020 WL 4529865 (D. Del. July 31, 2020)........................................................................................................................... 4

**Rules**

FED. R. CIV. P. 16(f) ........................................................................................................... 3

FED. R. CIV. P. 37(b)(2)....................................................................................................... 3

FED. R. CIV. P. 72(a)........................................................................................................... 1

## I.   INTRODUCTION

Deviating from the approach adopted by other judges in this District, Magistrate Judge Hall (1) declined to strike the portions of KT's invalidity expert not supported by KT's invalidity contentions, and (2) declined to count prior art combinations of in accordance with the counting method used by other judges in this District, allowing KT to include a practically unlimited number of obviousness combinations in its expert report.  The numbers are compelling.  ABK was asserting 25 total claims across 8 patents.  KT's opening invalidity report spanned over 1100 pages, 6000 paragraphs, included 17 prior art references (only 5 of which were charted), and roughly 14,000 prior art combinations which had not been charted.

## II.   STANDARD OF REVIEW

A Magistrate Judge's non-dispositive pretrial rulings may be overturned on review if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). A Magistrate Judge's factual findings are "clearly erroneous" if the Court is "left with the definite and firm conviction that a mistake has been committed." *AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2019 WL 4917894, at *1 (D. Del. Apr. 23, 2019). Relevant here, a Magistrate Judge's order is "contrary to law" if "the magistrate judge has misinterpreted or misapplied the applicable law." *Id.*

## III.   FACTUAL BACKGROUND

On December 21, 2023, Magistrate Judge Hall denied the relief sought in ABK's Letter Brief ("Letter Brief," D.I. 120), which was filed on December 8, 2023 in support of ABK's Motion for Teleconference to Resolve Discovery Dispute (D.I. 117).

On May 13, 2022, ABK brought this case for patent infringement.  D.I. 1.  On September 12, 2022, ABK propounded Interrogatory No. 6 which sought the identification of all prior art references and "an explanation of how each claim element is found in the prior art references(s),"

1

KT did not disclose prior art references or combinations, but instead in its October 12, 2022 response (Letter Brief Ex. G[1], D.I. 124-2, pp. 37-38), referred to the Court's "Default Standard," ostensibly planning to rely on its later-produced invalidity contentions.  On December 1, 2022, KT served its invalidity contentions, which included a cover pleading ("Invalidity Contention Cover Pleading," D.I. 120-11, Ex. E) and eight charts, one for each of the patents asserted in the case ("Invalidity Contention Charts," D.I. 120-3 through 120-10, collectively, Ex. D).  Fact discovery closed on June 9, 2023 (D.I. 13, except for completing depositions, which was extended through June 30, 2023 per D.I. 81).  The parties conferred regarding narrowing and on June 26, 2023, KT filed a notice ("Narrowing Letter," D.I. 86, Ex. I) stating:

- No later than July 13, 2023, Plaintiff will reduce the total number of claims asserted to no more than 25 claims.
- No later than August 3, 2023, Defendant will reduce the number of asserted prior art references to no more than 40 references. By the same date, Defendant will reduce the number of asserted prior art combinations to no more than 80 combinations.

On July 13, 2023, ABK filed a "Notice of Asserted Claims" narrowing its infringement allegations to 25 identified claims chosen among the 8 asserted patents.  D.I. 87.  KT served a "Notice of Prior Art References," (D.I. 120-12, Ex. F) on August 3, 2023 fulfilling KT's obligations in its Narrowing Letter, containing a list purporting to limit the number of prior art references and combinations, but which did not tie any invalidity theories to the asserted claims. KT served no additional invalidity contentions.   On November 21, 2023, KT served the invalidity expert report of Dr. David R. Gagnon containing over 6000 paragraphs spanning over 1100 pages (the "Gagnon Report," D.I. 124-1. Ex. A).  On November 27, 2023, ABK timely requested a conference with KT regarding the issues stated herein.

---

[1] All references to Exhibits herein refer to the Exhibits attached to ABK's Letter Brief, D.I. 120. Although the Clerk removed the exhibits owing to their size, ABK later manually refiled the Exhibits in electronic media form.  D.I. 122.

At the discovery conference held on December 21, 2023, Magistrate Judge Hall declined to count KT's invalidity combinations on a per-claim basis, stating that the *Great Batch* and *Leo* cases were not "particularly persuasive here."  Hearing Tr. at 22:5-8 (attached hereto as Appx. 1).  Regarding the counting issue, the Magistrate Judge stated "[t]hat said, I think 80 combinations is ridiculous, too many.  25 claims is ridiculous, it's too many.  But I do not believe on this record that defendant's expert report should be stricken in any way." *Id.* at 23:3-6.  Other than stating her belief that the invalidity report should not be stricken in any way, the Magistrate Judge did not expressly address ABK's first issue, that KT's invalidity report contained invalidity theories and references not previously disclosed in its invalidity contentions.

## IV.    ARGUMENT

Courts have the power to issue "any just orders" to enforce their scheduling orders, including preventing a noncompliant party from presenting arguments or introducing evidence supporting or opposing claims or defenses. *See* FED. R. CIV. P. 16(f); FED. R. CIV. P. 37(b)(2). Although this District currently has no local patent rules, it generally requires the disclosure of infringement and invalidity theories, and limits the number of such theories.

### A.    Dr. Gagnon's Invalidity Theories Not Previously Disclosed Should Be Stricken

KT was required to disclose its invalidity theories prior to the issuance of the Gagnon Report.  ABK's Interrogatory No. 6 sought the identification of all prior art references and "an explanation of how each claim element is found in the prior art references(s)."  Ex. G, pp. 37-38.

Separate and apart from ABK's discovery request, although this District has no local patent rules, it generally requires the disclosure of infringement and invalidity theories, including invalidity contentions.  While there was no schedule deadline for invalidity contentions, the parties generally followed this District's Default Standard.  Although there was not an explicit requirement regarding the contents of invalidity contentions in the schedule or Default Standard,

this Court has held that silence on the required contents of infringement and invalidity contentions does not mean that parties can choose to disclose nothing about their infringement or invalidity theories and then blame the scheduling order.  *See TQ Delta, LLC v. Adtran, Inc.*, C.A. No. 14-954-RGA, 2020 WL 4529865, at *2 (D. Del. July 31, 2020) (Andrews, J.)).  Courts reasonably expect a party's infringement or invalidity contentions to specify what infringement or invalidity theories it is pursuing so that opposing parties can fairly prepare a defense.  *Teashot LLC v. Green Mountain Coffee Roasters, Inc*., 595 F. App'x 983, 987 (Fed. Cir. 2015); *Gavrieli Brands LLC v. Soto Massini (USA) Corp*., C.A. No. 18-462 (MN), 2019 WL 10248462, at *2 (D. Del. Apr. 18, 2019) (Noreika, J.) (in a design patent case, precluding the accused infringer from presenting or relying on any prior references not disclosed in its invalidity contentions, and stating "[i]t is generally the rule in this District that a party must fairly disclose its invalidity theories and supporting evidence during discovery in order to present the same at trial.")

Most Courts require accused infringers alleging obviousness to provide an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness.  *See, e.g.*, N.D. Cal. L. Pat. R. 3-3(b).  Courts in this District have distinguished "(1) prior art combinations that were explicitly charted, and (2) prior art combinations that were not explicitly charted but mentioned in Defendants' Invalidity Contentions."  *Chervon (HK) Ltd., et al. v. One World Techs., Inc., et al.*, C.A. No. 19-1293-GBW, 2023 WL 2372938, at *2 (D. Del. Mar. 6, 2023) (finding the combinations in category (2) "not disclosed" and striking the combinations).

Because KT's invalidity contentions and the Gagnon Report were quite voluminous, ABK created summaries of the prior art references and combinations on a per-asserted-claim basis, and also included the voluminous source materials, in the event that the Court wanted to confirm any information.  Ex. B is organized by the paragraph numbers in KT's invalidity report.

Any support in KT's invalidity contentions for the invalidity theories presented in the report is noted in the "Invalidity Contention Column."[2]  Ex. C is organized by asserted claims.[3]

Of the 17 references cited in the Gagnon Report, only 5 were charted in KT's invalidity contentions:[4]

| Charted References | References in the Gagnon Report |
|---|---|
| Austin | Austin |
| Bodenschatz | Bodenschatz |
| Kase Book, 1st Ed. | Kase Book, 1st Ed. |
| Kinesio/Kase Video | Kinesio/Kase Video |
| Kosmahl | Kosmahl |
| Colman (not used by Gagnon) | Kinesio Tex Tape |
| Davies (not used by Gagnon) | Jaybird EX1 Tape |
| Hertling (not used by Gagnon) | Jaystrap 90/95 Tape |
| Kase 348 (not used by Gagnon) | Mueller Athletic Tape |
| Kase Book, 2nd Ed. (not used by Gagnon) | Mueller Kinesiology Tape |
| Peckham (not used by Gagnon) | KT Tape Original |
| Sanzo (not used by Gagnon) | Bowler's Tape |
| Sun (not used by Gagnon) | Heelspurs |
| | Scholz |
| | Damikolas |
| | Deeb 806 |
| | Oohira |

[2] For example, referring to the top of Ex. B, the Gagnon Report ¶¶ 747-790 alleges why claim 4 of the '511 Patent is anticipated by the "Kase Video" reference. This invalidity theory was disclosed in KT's invalidity contentions at chart [B-01] (at Ex. D, pp. 1911-3261) which refers to KT's Invalidity Contention Charts. As shown in the second row of Ex. B, Dr. Gagnon also alleges at ¶¶ 791-792 that the same claim is obvious in view of the same single reference. As shown in the third row, Dr. Gagnon alleges at ¶¶ 793-794 that the same claim is rendered obvious by "Kase Video" in view of "Kinesio Tex." However, as indicated by the empty cell under "Invalidity Contention Support," KT did not explain how each element of the claim was rendered obvious by the asserted combination.

[3] The Gagnon Report is partitioned into reference-by-reference sections, so it is helpful to refer to Ex. B to see all references and combinations asserted against a single claim. For example, beginning with the first asserted claim in Ex. C, row 1 shows claim 1 of the '511 Patent, which is not asserted, but is an independent claim from which the first asserted claim, claim 4, depends. Ex. C shows that the Gagnon Report alleges that claim 4 is invalid based upon (1) "Kase Video" by itself and in view of "Kinesio Tex"; (2) "Kase Book" by itself and in view of "Kinesio Tex"; (3) "Kosmahl" by itself and in view of "Jaybird EX1," "Jaystrap 90," "Mueller Athletic Tape,", "Kase Book," "Bowler's Tape," "Damikolas," and also any of one or more of any of the foregoing in any combination; as well as various (4) and (5) other combinations.

[4] This information is summarized in Exs. B & C.  *See also* Hearing Tr. 5:1-11.

The asterisks in column 2 of Ex. C indicate the prior art references that were not charted in KT's Invalidity Contention Charts.

Similarly, of the thousands of invalidity bases cited in the Gagnon Report, only 100 were charted KT's Invalidity Contention Charts.[5]

Generally, KT's Invalidity Contention Charts disclose individual prior art references as anticipation references. KT cannot use undisclosed *combinations* of the references as obviousness theories. *See, e.g., ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *10 (N.D. Cal. Apr. 11, 2014) ("Because ASUS's Invalidity Contentions only disclose Dodd, Delaluz, and Volk as anticipation references, the Court strikes the portions of Baker's report that use those references in obviousness combinations."). ABK asks the Court to strike those paragraphs of the Gagnon Report for which invalidity combination were not previously disclosed.

KT's Invalidity Charts were served with KT's cover pleading, Ex. E, which includes various "catch-all" and "reservation of rights" language that purports to disclose all prior art references in combination with any other prior art reference, and reserves the right to rely on "uncited portions of the prior art references and on other publications." *See, e.g.,* Ex. E, pp. 4, 26-27, 196. Courts routinely reject statements in cover pleadings that purport to disclose combinations of several prior art references without an explanation of *how* each claim element is met by a specific aspect of the combination. *See, e.g., Changzhou Kaidi Elec. Co., Ltd. v. Okin America, Inc*., 2015 WL 2213694, *1-*8 (D. Md. 2015) (citing *Realtime Data, LLC v. Packeteer, Inc*., 2009 WL 4782062, at *3 (E.D. Tex. Dec.8, 2009) ('[T]he court rejects [the] argument that a defendant has the ability to rely upon language in its invalidity contentions … stating that it

---

[5] This information is summarized in Ex. N which identifies the paragraphs of KT's invalidity report, the claim, the asserted invalidity basis in the invalidity report, and the portion of KT's invalidity contentions where the identified basis appears.

effectively reserves the right to assert obviousness combinations from any of the prior art references that appear in its invalidity contentions.')).

ABK would be unfairly prejudiced if KT were permitted to use its previously-undisclosed invalidity theories because ABK properly relied on KT's invalidity contentions, discovery responses, and case narrowing during fact discovery. Further, as the tables on p. 5 above reflect, most of the uncharted references in the invalidity report are products, not publications or patents. The Magistrate Judge's decision to not strike any portion of KT's invalidity report containing previously undisclosed invalidity theories was clearly erroneous and contrary to law.

**B.      The Excessive Number of Dr. Gagnon's Invalidity Theories Should Be Stricken**

KT committed to limiting the number of asserted prior references to no more than 40, and the number of asserted prior art combinations to no more than 80.  D.I. 86 (Ex. I).  The number of prior art combinations in the Gagnon Report is roughly 14,000 when properly counted.  *See* Ex. B, p. 53; Ex. C, p. 69.  By hiding its core invalidity theories within a multiplicity of possible theories, KT's has not provided ABK adequate notice of the theories KT plans to use at trial. Indeed, the Gagnon Report is nearly worthless to ABK because there is no way for ABK's expert to be prepared to address that number of theories at trial.  The parties dispute how combinations should be counted.  KT has argued that so long as it uses no more than 80 unique combinations, it may apply as many combinations to each asserted claim as it wishes.   ABK's proposed definition of how to count prior art combinations – *i.e.*, a "prior art combination" is a combination of two or more prior art references per claim– is consistent with prior orders in this District. The language comes directly from Judge Stark's order in *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS (D. Del. July 28, 2015) (Exhibit J), and was also adopted as part of the Court's order in *Leo Pharma A/S, et al. v. Actavis Labs. UT Inc.*, C.A. No. 16-430-JFB-SRF (D. Del. Mar. 29, 2018) (Ex. K); *MQ Gaming*, C.A. No. 19-905-MN, D.I. 33, n. 1 (D. Del. Jan. 23,

2020); and *Tessera, Inc. et al. v. Broadcom Corp.*, C.A. No. 1-16-cv-00380 (D. Del. Oct. 27. 2016).  Other districts count the same way.  *See., e.g.*, N.D. Ill. L. Pat. R. 3.1(b).

During the hearing, ABK explained that it expected KT to limit its invalidity obviousness combinations to 80 across the 25 asserted claims, for an average of 3.2 combinations per asserted claim, which was comparable to *Greatbatch*, in which 4 combinations per asserted claim were allowed, and *Leo*, in which 5 combinations per asserted claim were allowed.  Hearing Tr. 10:2-17; 20:2-13.  Nevertheless, the Magistrate Judge stated "I just don't believe that defendant was agreeing that it was only going to assert three combinations per claim approximately."  Hearing Tr. 22:18-20.  Instead, the Magistrate Judge indicated that KT should be held to 80 combinations *per asserted claim* which, for 25 asserted claims, would allow for 2,000 combinations.  Even still, the Magistrate Judge noted that KT's expert report included undisclosed combinations within *that* number, but declined to even strike those.  Hearing Tr. 17:10-18:7.  The Magistrate Judge also stated "*Great Batch* and *Leo* had to do with the Court ordering the parties to narrow the case and then the Court said how stuff was going to be counted.  I don't think they're particularly persuasive here."  Hearing Tr. 22:5-8.  While the statement is unclear to ABK, regardless of *when* the counting is established, the *method* that is used to *commit* to a number of combinations should be the *same method* used to *enforce* the limit.

An average of 3.2 combinations per claim is reasonable.  *IPA Techs. Inc. v. Amazon.com, Inc.*, C.A. No. 16-1266-RGA, D.I. 172 (D. Del. Sep. 24, 2020) ("Plaintiff reduced the number of asserted claims to thirty. No problem there. [] Defendant now has <u>four</u> combinations for each asserted claim."); *IOEngine, LLC v. Roku, Inc.*, C.A. No. 6:21-cv-1296-ADA-DTG, D.I. 282 (W.D. Tex. Aug. 22, 2023) (limiting to <u>two</u> prior art combinations per asserted claim); *Global Session LP v. Travelocity.com LP*, C.A. No. 6:10-cv-671-LED-JDL, *slip op.* at 1, D.I. 415 (E.D. Tex. Nov. 14, 2012) ("The Court will count a combination as a single prior art reference.

Accordingly, Defendants are order to limit their prior art references to <u>two to three</u> per claim.") Allowing 80 combinations per claim is contrary to this District's normal practice and case law.

The Magistrate Judge's decision to not strike any portion of KT's invalidity report containing roughly 14,000 combinations may set a high-water mark; put ABK in the unrealistic and unfair position of needing to address those combinations; and was clearly erroneous and contrary to law.

### C.  Striking the Opinions is Appropriate Under the *Pennypack* Factors

ABK addressed the *Pennypack* factors in its Letter Brief.

### D.  After Striking the Paragraphs Requested by ABK, Plenty of Alleged Invalidity Grounds Would Remain

ABK included a proposed order (Ex. L) with its Letter Brief identifying the paragraphs in the Gagnon Report that should be stricken because they contain invalidity theories not previously disclosed by KT.  ABK also identified the invalidity bases that would *remain* in the case upon entry of the proposed order (Ex. N), the last row of which indicates that one hundred invalidity bases would remain in the case (besides the dozens of §112 bases KT raised), which averages out to four bases per asserted claim, a reasonable number for this advanced stage of the case.

### E.  ABK's Service of a Rebuttal Report Does Not Change its Hardship

Although ABK may have already served a rebuttal report when these objections are considered, such report would have been diluted across a vast number of new invalidity theories. ABK's generation of a report does not reduce or provide any indication of the prejudice imposed upon ABK.  *Accord Finjan, Inc v. Rapid7, Inc*, C.A. 18-1519-MN, 2020 WL 5798545, at *3 (D. Del. Sept. 29, 2020) (citing *Galderma Labs, L.P. v. Amneal Pharms., LLC*, C.A. No. 16-207-LPS, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018) (noting that a party in this position is faced with 'two bad options: either scramble to have an expert respond … or offer no response and risk not preserving an opinion for trial if the [ ] Motion to Strike [is] denied')).

## V.     CONCLUSION

For the foregoing reasons, ABK respectfully requests that the Court sustain its Objections to the Magistrate Judge's ruling and to strike the requested portions of KT's invalidity report.


Dated: January 2, 2024

Respectfully submitted,
*/s/ David Holloway*
David Holloway (DE #5762)
AMBURN LAW
1504 N. Broom St., Suite 1
Wilmington, DE 19806
302-285-9485
dholloway@amburnlaw.com

*Attorney for Plaintiff,*
*Applied Biokinetics LLC*


**Standing Order for Objections Filed Under Fed. R. Civ. P. 72, Paragraph 5 Certification**

The undersigned hereby certifies pursuant to Paragraph 5 of the Standing Order for Objections Filed Under Fed. R. Civ. P. 72 that the objections raised herein do not raise new factual or legal arguments.

*/s/ David Holloway*
David Holloway (DE #5762)

10